# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MATTHEW DALY, on behalf of himself and all others similarly situated,** )<br>*Plaintiff,* )<br>)<br>**v.** )<br>)<br>**WEST MONROE PARTNERS, INC., et al.** )<br>*Defendants.* )<br>)<br>)<br>) | **Case No. 1:21-cv-6805 (RAG/SMF)** |

<u>**DECLARATION OF MATTHEW DALY**</u>

I, Matthew Daly, hereby declare as follows:

1.      I was a Senior Consultant and later a Principal in West Monroe Partners' Energy and Utilities Practice from May 2015 through November 2020, when I left the company voluntarily. I am now Manager of Smart Streetlight Deployment at Baltimore Gas and Electric (BG&E), a role for which I am contracted through nTech Workforce.

2.      I participated in the West Monroe Partners, Inc. ("West Monroe") Employee Stock Ownership Plan ("Plan") for approximately five years. As of December 31, 2020, I was vested in 313.2370 shares of West Monroe stock allocated to my account in the Plan.

3.      On or around April 16, 2021, West Monroe announced that the Plan trustee had determined that the value of the company shares held in the Plan, assessed as of December 31, 2020, was $515.18 per share.

4.      In May 2021, I received notice that West Monroe planned to redeem the company stock in my ESOP account, along with the stock of 146 other former employees (for a total of

1

147).[1] In various emails from May to August of 2021, West Monroe urged me and these other former employees to elect to receive the value of our shares in cash and/or as a rollover to an IRA during a 60-day election window lasting from June 11 to August 9, 2021. As a result, I elected a cash distribution within the election window. On around September 22, 2021, I received a cash payment in exchange for my approximately 313 shares at a price of $515.18 per share.

5.      On October 7, 2021, I learned that West Monroe made an internal announcement about an acquisition of a portion of the firm by an outside investor. The details of the transaction were not made available to the public. Based on social media posts, however, it was clear that ESOP shares would be purchased for significantly more than the value paid to 146 participants (including me) just two weeks earlier. On October 14, 2021, West Monroe publicly announced that the firm had entered an agreement to sell a 50% stake in the firm to MSD Partners, a private equity firm. That same day, Bloomberg reported that the deal valued the firm at about $2.5 billion.

6.      On or around October 25, 2021, I learned the current participants in the ESOP would receive value equal to roughly nine times the previous share price as a result of the transaction.

7.      Based on the information I learned, it seemed highly likely that West Monroe had significantly underpaid me and approximately 145 other former employees for our shares.

8.      I began to reach out to attorneys I know to gauge whether my concerns were well-founded. One of these lawyers, an experienced litigator who represents employers in class actions, referred me to Sanford Heisler Sharp, LLP ("SHS"). He noted that he had been opposing counsel against the firm in the past and that he had great respect for their work and professionalism. I researched SHS and noted that the firm has a history of successfully representing employees

---

[1] A later email from the company indicated that the number had dropped to 146.

harmed by their employers, which is exactly what has occurred in this case.

9. On October 26, 2021, I contacted SHS. In the ensuing weeks, I had multiple calls with the litigation team to discuss their insights on the case. Based on our conversations, it was evident that they were extremely knowledgeable about ERISA, ESOPs, the valuation of private companies, and class action litigation in general. I had no doubt that they would pursue the case with the utmost zeal and dedicate the necessary resources to see it through for me and the class. As a result, I retained the firm on November 12, 2021.

10. Between November 12, 2021, and December 22, 2021, I provided SHS with as much information as I had available or could find in the public domain. SHS was able to find additional ESOP filings and data to supplement my information. While my attorneys prepared the complaint, I discussed the allegations through multiple conversations with them, reviewed multiple drafts, and approved the final complaint before it was filed.

11. In February 2022, my counsel informed me that they had received outreach from Bailey & Glasser, LLP and Izard, Kindall, & Raabe, LLP, counsel for Nathan Ulery, who had prepared another complaint on behalf of Mr. Ulery and requested an agreement under which they would receive two thirds of any attorney's fees awarded in this case. I did not believe that Mr. Ulery's counsel's offer was a fair one given the hours and resources that SHS had put into investigating the case and preparing the initial complaint. I told my attorneys they should reject the offer and instructed them to file a motion for SHS's appointment as interim class counsel.

12. Based on my experience at West Monroe, moreover, I have serious concerns about Mr. Ulery acting as the class representative for this lawsuit. Mr. Ulery was a member of the Board of Directors and a high-ranking Managing Director at West Monroe, meaning that he was one of only a few executive team members that made high-level decisions for the business. Mr. Ulery's

high-ranking position would have given him access to information about the company's finances and business plans that was not available to other employees including me. In addition, Mr. Ulery has known and worked with several of the defendants for more than 20 years; as is well known, he was one the first consultants to come from Arthur Andersen to West Monroe in 2002 when the firm was founded. In my view, Mr. Ulery's position within the firm and his relationship with the defendants creates an apparent conflict of interest with the rest of the class.

13.     After reviewing the motion prepared by Mr. Ulery's counsel, including their experience and qualifications, I continue to believe that my counsel at SHS is best positioned to fairly and zealously represent the class, and I urge the court to appoint them as interim class counsel.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of May 2022 in Stamford, Connecticut.


*/s/ Matthew Daly*
Matthew Daly