# Exhibit I

## STATEMENT OF UNANIMOUS CONSENT TO
## ACTION TAKEN IN LIEU OF A SPECIAL MEETING OF THE
## BOARD OF DIRECTORS OF
## WEST MONROE PARTNERS, INC.

In lieu of a Special Meeting of the Board of Directors (the "Board") of West Monroe Partners, Inc., a Delaware corporation (the "Company"), the undersigned, being all of the directors of the Company, consent to and adopt the following resolutions effective as of November 9, 2021:

WHEREAS, the Company is the sponsor of the West Monroe Partners, Inc. Employee Stock Ownership Plan (the "ESOP") and, pursuant to Section 14.1 of the ESOP, the Company reserved the right to amend the ESOP at any time and from time to time;

WHEREAS, the Company is the sponsor of the West Monroe Partners, Inc. 401(k) Plan (as amended, the "401(k) Plan"), and the Company reserved the right to amend the 401(k) Plan at any time and from time to time;

WHEREAS, as previously approved by the Board, the Company is a party to that certain Stock Purchase Agreement dated October 5, 2021 (the "SPA") by and among West Monroe Partners, Inc. Employee Stock Ownership Trust ("ESOT"), as established and maintained pursuant to the terms of the ESOP, acting through Argent Trust Company, not in its corporate capacity, but solely in its capacity as trustee of the ESOT (the "ESOP Trustee"), the Company, WMC IntermediateCo, Inc., a Delaware corporation (the "Buyer") and WMC Bidco, Inc., a Delaware corporation (the "Buyer Parent"), whereby the Buyer will purchase all of the issued and outstanding Shares of the Company from the ESOT as of the closing thereunder (the "SPA Closing");

WHEREAS, in connection with the transactions contemplated by the SPA, the Company engaged Argent Trust Company to act as independent discretionary ESOP Trustee of the ESOT pursuant to an engagement letter dated September 24, 2021 (the "Argent ESOT Engagement Letter") and also engaged Argent Trust Company to act as independent discretionary trustee of the KFund portion of the 401(k) Plan (the "KFund") pursuant to an engagement letter dated October 5, 2021 (the "Argent KFund Engagement Letter"); and

WHEREAS, in order to further implement the transactions contemplated by the SPA, the Board has determined that it is in the Company's best interests to take the following actions;

NOW, THEREFORE, BE IT RESOLVED, that Amendment No. 16 to the ESOP, by which the ESOP will be terminated effective as of the SPA Closing, in the form attached hereto as Exhibit A is hereby adopted and approved in all respects;

80602883.1

FURTHER RESOLVED, that that an Amendment to the ESOT trust agreement to be consistent with the ESOP Trustee's role as an independent discretionary trustee in connection with the transactions contemplated by the SPA, in the form attached hereto as <u>Exhibit B</u> is hereby adopted and approved in all respects;

FURTHER RESOLVED, that that an Amended and Restated 401(k) Plan of the Company to be effective as of the SPA Closing, which among other things creates and the KFund required under the terms of the SPA, in the form attached hereto as <u>Exhibit C</u> is hereby adopted and approved in all respects;

FURTHER RESOLVED, that that Trust Agreement with respect to the KFund between the Company and Argent Trust Company establishing the trust to hold the assets of the KFund in the form attached hereto as <u>Exhibit D</u> is hereby adopted and approved in all respects;

FURTHER RESOLVED, that the Company's officers are each authorized and directed to take any and all action necessary or appropriate, in such officer's opinion, to implement the foregoing resolutions; and

FURTHER RESOLVED, the Secretary of the Company is hereby directed to include this unanimous consent with the corporate records of the Company.

This statement of unanimous consent has the same force and effect as a unanimous vote of the Company's directors at a duly held meeting of the Board. This instrument may be executed in any number of counterparts, each of which will be deemed to be an original and all of which, together, will constitute one and the same instrument. A signed copy of this consent delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this consent. This consent may be executed by DocuSign or other electronic signature process, which shall have the same legal effect as an original manually executed signature.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, this consent will have the same force and effect as a unanimous vote of the directors at a Special Meeting of the Board of Directors duly held.

*[signature]*
Kevin McCarty

*[signature]*
Doug Armstrong

*[signature]*
Susan Stelter

*[signature]*
Tom Bolger

*[signature]*
Gil Mermelstein

*[signature]*
Mazen Ghalayini

*[signature]*
Tom Hulsebosch

*[signature]*
Barbara Duganier

*[signature]*
Barbara Bennett

[Signature Page to Unanimous Written Consent of the
Board of Directors of West Monroe Partners, Inc.]

DocuSign Envelope ID: 87049F56-27A5-447A-BA29-8F64542140C8

# EXHIBIT A

## Amendment No. 16 to ESOP

See attached

# EXHIBIT B

## Amendment to ESOT Trust Agreement

See attached

DocuSign Envelope ID: 87049F56-27A5-447A-BA29-8F64542140C8

# EXHIBIT C

## Amended and Restated 401(k) Plan

See attached

# EXHIBIT D

## KFund Trust Agreement

See attached

# AMENDMENT NUMBER SIXTEEN
# TO THE
# WEST MONROE PARTNERS, INC.
# EMPLOYEE STOCK OWNERSHIP PLAN

West Monroe Partners, Inc. (the "Company") hereby adopts this Amendment to the West Monroe Partners, Inc. Employee Stock Ownership Plan (the "Plan").

**WHEREAS**, the Company has previously adopted the Plan effective as of January 1, 2012 for the benefit of its employees; and

**WHEREAS**, pursuant to Section 14.1 of the Plan, the Company reserved the right to amend the Plan, at any time and from time to time; and

**WHEREAS**, the Company has determined that it is necessary to amend the Plan at this time in connection with the transactions (the "Transactions") contemplated under that certain Stock Purchase Agreement dated October 5, 2021 (the "SPA") by and between the West Monroe Partners, Inc. Employee Stock Ownership Trust (the "ESOP Trust"), as established and maintained pursuant to the terms of the Plan, acting through Argent Trust Company, not in its corporate capacity, but solely in its capacity as trustee of the ESOP Trust, the Company, WMC IntermediateCo, Inc., a Delaware corporation (the "Buyer"), and, the Buyer's parent, WMC Bidco, Inc., a Delaware corporation.

**NOW, THEREFORE**, contingent upon the occurrence of and effective immediately prior to the closing of the Transactions in accordance with the SPA, the Plan is hereby amended as follows:

1. The following is hereby added to the end of Section 6.2 of the Plan:

    Proceeds with respect to Company Stock held in the Suspense Account as a result of the sale or redemption of Company Stock in connection with the Transactions shall be first applied to the repayment of any outstanding ESOP Loan with respect to such Company Stock in the Plan Year in which such proceeds are received by the Trust, and any remaining proceeds shall be allocated as earnings in the Plan Year received by the Trust. For clarification purposes, redemption of Company Stock in this paragraph includes reference to any transaction involving the redemption, by the Company, of shares of Company Stock in exchange for the cancellation of all amounts reflected under the ESOP Loan. Unless specifically agreed to, in writing, by the Trustee, no dollars paid or contributed to the ESOP shall be used to repay the ESOP Loan if there are unallocated shares of Company Stock available for satisfaction of such amounts.

2. The following is added to the end of the first paragraph of Section 9.4(a) of the Plan:

    Notwithstanding the foregoing, any Accounts in the Plan of Participants who terminated employment with the Company during the Plan Years beginning on January 1, 2020 or January 1, 2021 and, as of the time immediately preceding the date of the Stock Sale Closing (as defined in Section 16.1 of the Plan as amended), are 0% vested shall be deemed

80263138.6

distributed and forfeited as of that date immediately preceding the date of such Stock Sale Closing.

3. The following new Article XVI is added to the Plan:

Article XVI – BIDCO SALE AND PLAN TERMINATION

16.1 <u>BidCo Sale</u>. The Trust has entered into that certain Stock Purchase Agreement dated October 5, 2021 (the "SPA") by and between the Trust, the Company, WMC IntermediateCo, Inc., a Delaware corporation (the "Buyer"), and the Buyer's parent, WMC Bidco, Inc., a Delaware corporation ("BidCo"). At the closing (the "Stock Sale Closing") of the transactions contemplated by the SPA (the "Transactions") all of the Company Stock held by the ESOP Trust will be sold to the Buyer (the "Company Stock Sale"). Of the proceeds from the Company Stock Sale received by the Trust pursuant to the SPA (the "Total ESOP Sale Proceeds"), the SPA requires that the Trust transfer to the KFund portion of the 401(k) Plan (the "KFund") an amount (the "Total KFund Transfer Amount") equal to (x) 25% of the Total ESOP Sale Proceeds (the "Mandatory KFund Transfer Amount") *plus* (y) the Elective KFund Transfer Amount (as defined below).

16.2 <u>KFund Transfers</u>. (a) <u>Mandatory KFund Transfer</u>. The Administrator shall direct the Trustee to transfer the Mandatory KFund Transfer Assets to the KFund portion of the 401(k) Plan. The Mandatory KFund Transfer Amount shall be credited to an account maintained in the KFund for each "Company Sale Eligible Participant" who remains employed by the Company in proportion to the pro forma balance in his or her Company Stock Account as of such time (after giving effect to this Amendment of the Plan). The pro forma balance of a Participant's Company Stock Account shall be determined by using the balance in his or her Company Stock Balance as of the Valuation Date immediately prior to the date of the Stock Sale Closing and increasing such balance by the shares of Common Stock allocable thereto from the Suspense Account upon the release of shares as described in Section 16.5(b) and by the forfeited shares of Common Stock allocable thereto as described in Section 16.5(b).

For purposes of this Article XVI, a "Company Sale Eligible Participant" means a Participant in this Plan who, as of the Valuation Date immediately prior to the date of the Stock Sale Closing, held shares of Company Stock in his or her Company Stock Account, and who has not received a complete distribution of his or her entire vested Accounts or a deemed distribution pursuant to Section 9.4(a). Optional forms of benefits and any other benefits protected under Section 411(d)(6)(C) of the Code and the regulations interpreting Section 411(d)(6) of the Code with respect to the Mandatory KFund Transfer Amount shall be maintained in the 401(k) Plan.

(b) <u>Elective KFund Transfers</u>. In addition to the transfer of Mandatory KFund Transfer Amount described in Section 16.2(a), the Administrator shall direct the Trustee to transfer an additional portion of the Total ESOP Sale Proceeds based on the direction of Company Sale Eligible Participants as provided below (the "Elective KFund Transfer Amount"), subject to the following:

(1) Within a reasonable period prior to the Stock Sale Closing, BidCo, the Company and the Administrator shall provide each Company Sale Eligible Participant

who remains employed by the Company with a set of written materials (the "Elective BidCo Investment Materials") describing his or her right to make an elective transfer of up to all of his or her "Share of the Elective KFund Portion of this Plan", and such information regarding BidCo and an investment in the common stock of BidCo ("BidCo Stock") in the KFund portion of the 401(k) Plan as BidCo and the Company deems necessary to comply with ERISA, the Code and federal and state securities laws. For such purposes, a Company Sale Eligible Participant's "Share of the Elective KFund Portion of this Plan" shall be that amount determined by a pro forma allocation of the Total ESOP Sale Proceeds to each such Company Sale Eligible Participant in proportion to the balance in his or her Company Stock Account as of the Valuation Date immediately preceding the date of the Stock Sale Closing and increasing such balance by the shares of Common Stock allocable thereto from the Suspense Account upon the release of shares as described in Section 16.5(b) and by the forfeited shares of Common Stock allocable thereto as described in Section 16.5(b). Such materials described herein shall also explain that the transfers elected by a Participant will be transferred to the KFund portion of the 401(k) Plan to be invested primarily in the BidCo Stock. Optional forms of benefits and any other benefits protected under Section 411(d)(6)(C) of the Code and the regulations interpreting Section 411(d)(6) of the Code with respect to the Elective KFund Transfer Amount shall be maintained in the 401(k) Plan.

(2) Following the Company's delivery of the Elective BidCo Investment Materials and within the time period set by the Company, a Company Sale Eligible Participant who wishes to make an elective transfer must do so in the manner designated by the Company. The Company and the Administrator shall establish procedures to ensure that appropriate confidentiality is maintained with respect to all elective transfers, but shall be permitted to furnish the outside recordkeeper for the Plan and/or ESOP Trustee with such information as is necessary to effectuate such transfers.

(3) If, with respect to any elective transfer elected by a Company Sale Eligible Participant, he or she terminates employment with the Company prior to the date of the end of the time period prescribed by the Administrator for making an elective transfer pursuant to this Section 16.2(b), then such termination of employment shall be deemed to immediately revoke such person's election under this paragraph (b).

(4) In the aggregate, the total value of the transfer elections made by all Company Sale Eligible Participants pursuant to this paragraph (b), when combined with the Internal Plan Transfers to the KFund made pursuant to the terms of the 401(k) Plan during the same election opportunity as described in this Section 16.2(b), shall not exceed an amount equal to the total amount necessary to purchase Bidco Stock equal to 12% of the issued and outstanding common stock of Bidco. To the extent necessary, each Company Sale Eligible Participant's election hereunder and under the elected Internal Plan Transfers to the KFund in the 401(k) Plan shall be reduced, pro rata, so that such limit will not be exceeded.

(5) Notwithstanding anything herein to the contrary, the aggregate amount of all elective transfers made under this paragraph (b) shall be limited to the extent necessary to comply with the U.S. Securities and Exchange Commission ("SEC") Rule 701 and any similar requirements of state securities law taking into account any other sales of

3

BidCo Stock that must be combined with transfers made under this Section 16.2 for purposes of SEC Rule 701 and any state securities law limits. To the extent the Administrator determines that the aggregate amount of elective transfers, if implemented, would exceed one or more of such limits, then the amount of the elective transfer of each Company Sale Eligible Participant who is not an "accredited investor" (as such term is defined in Rule 501(a) of Regulation D under the Securities Act of 1933) shall be proportionately reduced so that such limit(s) will not be exceeded.

(6) To the extent practicable and consistent with applicable law, one or more of the above procedures may be carried out through the use of electronic media; provided, however, that sufficient safeguards are established to ensure that appropriate confidentiality is maintained and record retention requirements are satisfied.

16.3 Capital Accumulation Plan. Effective as of the Stock Sale Closing, the Plan shall become a capital accumulation plan and its name shall be changed to the "West Monroe Partners, Inc. Frozen Capital Accumulation Plan". The Plan will no longer be designed to invest primarily in Qualifying Employer Securities, or to qualify as an "employee stock ownership plan" within the meaning of Section 4975(e)(7) of the Code and Section 407(d)(6) of ERISA. Furthermore, effective as of the Stock Sale Closing, no shares of Company Stock shall be subject to an ESOP Loan and the following Plan provisions shall no longer be in effect and shall no longer apply to Participants' Accounts:

(a) The special limitations described in Section 7.7;

(b) The special limitations described in Section 7.8;

(c) The transfer provisions described in Section 7.9;

(d) The diversification provisions described in Section 10.6; and

(d) The put option provisions described in Section 11.3.

16.4 Frozen CAP Accounts. (a) Allocation of Stock Sale Cash Proceeds. The Administrator shall establish and maintain a "Frozen CAP Account" for each Company Sale Eligible Participant. Following the KFund transfers described in Section 16.2, the entire amount of the Company Sale Cash Proceeds shall be allocated to the Frozen CAP Account of each Company Sale Eligible Participant in proportion to the pro forma balance in his or her Company Stock Account as of such time (after giving effect to this Amendment of the Plan). The pro forma balance of a Participant's Company Stock Account shall be determined by using the balance in his or her Company Stock Balance as of the Valuation Date immediately prior to the date of the Stock Sale Closing and increasing such balance by the shares of Common Stock allocable thereto from the Suspense Account upon the release of shares as described in Section 16.5(b) and by the forfeited shares of Common Stock allocable thereto as described in Section 16.5(b).

(b) Investment of Frozen CAP Accounts. Each Participant may direct the investment of the amounts credited to his or her Frozen CAP Account among the Plan investments alternatives, other than the KFund Portion of this Plan, selected by the Administrator and in accordance with procedures prescribed by the Administrator. In the absence of any investment

4

direction by the Participant, a Participant's Frozen CAP Account shall be invested in the non-KFund Portion of this Plan investment as the Administrator may direct.

  16.5 <u>Plan Termination</u>. Effective as of the Stock Sale Closing, the Plan is hereby terminated. In accordance with such termination of the Plan, the following shall apply:

    (a) <u>Frozen Participation</u>. No new Participants shall become eligible under Article III of the Plan on or after January 1, 2021.

    (b) <u>Contributions Ceased</u>. No contributions shall be made to the Plan with respect to any Plan Year beginning on or after January 1, 2021. Forfeitures remaining in the Plan shall be allocated among the Other Investments Accounts and Company Stock Accounts, respectively, of each Company Sale Eligible Participant in proportion to the balance of each such Account as of the Valuation Date immediately preceding the date of the Stock Sale Closing. In connection with the Transactions, the ESOP Loan shall be repaid in full and shares of Common Stock then remaining in the Suspense Account, or proceeds attributable thereto, shall be allocated among the Accounts of Company Sale Eligible Participants pro rata based on each such Participant's Company Stock Account balances as of the Valuation Date immediately preceding the date of the Stock Sale Closing.

    (c) <u>Vesting</u>. The Accounts of each Company Sale Eligible Participant shall be 100% vested and the vesting schedules described in Article IX of the Plan shall no longer apply regardless of such Participant's actual Years of Service.

    (d) <u>Administrative Committee</u>. The Company shall appoint a Committee consisting of up to three (3) individuals to act as Administrator hereunder and in accordance with Section 12.1 of the Plan and Section 6.2(f) of the SPA (the "Administrative Committee"). The Administrative Committee will carry out the Administrator's responsibilities under this Plan with respect to the winding down, termination and liquidation of the Plan.

    (e) <u>Liquidation Distributions</u>. Notwithstanding any provision of the Plan to the contrary, as soon as reasonably practicable following the termination of the Plan, each Participant may elect to receive a lump sum distribution of the balance of his or her Other Investments Accounts and a lump sum distribution of the balance of his or her Frozen CAP Account balance provided, however, that the aggregate of $50,000,000 must remain within the Plan until the later of (i) the Company's receipt of a favorable determination letter from the Internal Revenue Service in connection with the termination of the Plan or (ii) the second anniversary of the date of the Stock Sale Closing so long as there have not been any claims pertaining to the administration or operation of the Plan by such date and, if such have been claimed, the later date upon which such claims have been resolved, or as soon as administratively practicable thereafter (the "Final Distribution Date"). In the event that distributions elected by Participants, if implemented, would result in less than $50,000,000 remaining in the Plan, each Participant's election shall be reduced, pro rata, to the extent necessary so that a total amount of $50,000,000 will remain in the Plan. Upon the Final Distribution Date, the remaining balance in each Participant's Frozen CAP Account shall be distributed in a lump sum. Each Participant and Beneficiary will be given a notice of his or her liquidation distribution to be paid from the Plan and will be given at least thirty (30) days during which to elect a rollover of such balance. If a Participant or Beneficiary cannot be

located, or does not respond to such notice of liquidation distribution, the Administrator shall direct that the distribution of the Account balance of such Participant or Beneficiary shall be transferred to the "ESOP transfer account" established on behalf of such Participant or Beneficiary in the 401(k) Plan.

(f) <u>Secure Act</u>. (1) <u>RMDs</u>. An "Affected Participant's" "RBD" shall not be earlier than April 1 of the calendar year following the year the "Affected Participant" attains age 72. For purposes of determining an "Affected Participant's" "RBD", an "Affected Participant" will be treated as a more than 5% owner if he or she was a 5-percent owner (as defined in Code §416(i)(B)) as to the Plan Year ending in the calendar year the Participant attains age 72.

If an "Affected Participant" dies prior to the Participant's "RBD", and the Participant's sole Designated Beneficiary is the Participant's surviving spouse, then the "RMDs" to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 72, if later.

For such purposes: (i) a Participant is an "Affected Participant" if the Participant was born after June 30, 1949, (ii) an "RMD" is a Required Minimum Distribution as described in Code §401(a)(9) and Section 10.5 of the Plan, and (iii) a Participant's "RBD" is the Participant's Required Beginning Date as described in Code §401(a)(9)(C) and Section 10.5(a)(iii) of the Plan..

(2) <u>Beneficiary RMDs</u>. With respect to Participants who die on or after January 1, 2020, the following shall apply:

(A) If the distributee of a deceased Participant's account is a Designated Beneficiary (as described in Section 10.5(a)(i) of the Plan) who is not an "Eligible Designated Beneficiary," then the Plan will distribute the Participant's Account in full no later than December 31 of the 10th year following the year of the Participant's death.

(B) If an "Eligible Designated Beneficiary" dies before receiving distribution of the Beneficiary's entire interest in the Participant's Account, the Plan will distribute that interest in full no later than December 31 of the 10th year following the year of the "Eligible Designated Beneficiary's" death. Similarly, if a Participant died before January 1, 2020, the limitations described in the paragraph (2) shall apply to distributions to the beneficiary of the Participant's Designated Beneficiary.

(C) An individual is an "Eligible Designated Beneficiary" of a Participant if the individual qualifies as a designated beneficiary under Code §401(a)(9)(E) and is (1) the Participant's spouse, (2) the Participant's child who has not reached the age of majority (as defined for purposes of Code §401(a)(9)(F), (3) an individual not more than 10 years younger than the Participant, (4) a disabled individual, as defined in Code §72(m)(7), or (5) an individual who has been certified to be chronically ill (as defined in Code §7702B(c)(2)) for a reasonably lengthy period, or indefinitely. Certain trusts may be treated as Eligible Designated Beneficiaries pursuant to Code §401(a)(9)(H)(iv) and (v). When a child of the Participant reaches the age of Majority, the Plan will distribute the child's account in full no later than 10 years after that date.

(g) CARES Act. (1) RMDs. Payment of "2020 RMDs" or "Extended 2020 RMDs" will be governed by the terms of the Plan without regard to the waiver permitted by the CARES Act. (i.e., no election is available to Participants or Beneficiaries). "2020 RMDs" means required minimum distributions the Plan would have been required to distribute in 2020 (or permitted to pay in 2021 for the 2020 calendar year for a Participant with a required beginning date of April 1, 2021) but for the enactment of Code §401(a)(9)(I). "Extended 2020 RMDs" means one or more payments in a series of substantially equal distributions (that include the 2020 RMDs) made at least annually and expected to last for the life (or life expectancy) of the Participant, the joint lives (or joint life expectancy) of the Participant and the Participant's designated Beneficiary, or for a period of at least 10 years.

(2) Coronavirus-related distribution. The Plan does not provide any of the Coronavirus-related Distribution relief described in the CARES Act.

[Signature page follows].

**IN WITNESS WHEREOF**, the Company has caused this Amendment to be executed by its duly authorized officer on this 9th day of November, 2021.

WEST MONROE PARTNERS, INC.

By: _____

Name: _____

Title: _____

# AMENDMENT
# TO THE
# WEST MONROE PARTNERS, INC. EMPLOYEE STOCK OWNERSHIP TRUST

THIS AMENDMENT, hereby made and entered into this 9th day of November 2021 to be effective as of September 24, 2021 by and between WEST MONROE PARTNERS, INC., an Delaware corporation (herein referred to as the "Company") and ARGENT TRUST COMPANY (herein referred to as "Argent" or the "Trustee").

## W I T N E S S E T H:

WHEREAS, the Company has previously established an employee stock ownership plan known as the West Monroe Partners, Inc. Employee Stock Ownership Plan effective as of January 1, 2012 (the "Plan") pursuant to which the assets of the Plan are to be held in the West Monroe Partners, Inc. Employee Stock Ownership Trust (the "Trust") as described in the Trust Agreement; and

WHEREAS, Argent has been serving as Trustee of the Trust; and

WHEREAS, in connection with the transactions contemplated under that certain Stock Purchase Agreement dated October 5, 2021, by and between the Trust, the Company, WMC IntermediateCo, Inc., a Delaware corporation (the "Buyer"), and, the Buyer's parent, WMC Bidco, Inc., a Delaware corporation ("BidCo"), all of the common stock of the Company will be sold to the Buyer and a portion of the proceeds may be used to reinvest in BidCo stock (the "Proposed Transactions"); and

WHEREAS, pursuant to that certain engagement letter dated September 24, 2021, the Company has engaged Argent to serve as an independent, discretionary trustee of the Trust for purposes of evaluating the Proposed Transactions, with the power and authority to negotiate and execute such documents as may be necessary or required in order to consummate the Proposed Transactions; and

WHEREAS, with Argent's consent, the Company has determined that it is necessary to amend the Trust Agreement.

NOW, THEREFORE, effective as September 24, 2021, the Company and Argent, solely in its capacity as Trustee of the Trust, do hereby agree to amend the Trust Agreement as follows:

1. The last sentence of Section 2-3 of the Trust Agreement is revised so as to now read as follows:

> The Trustee, in its discretion, may invest and reinvest the assets of the Trust, such as cash that is not already invested in Company Stock, in personal property of any kind, including, but not limited to, bonds and debentures, closed-end or open-end mutual funds, certificates of deposit ("CDs"), collective investment funds or group trusts, equipment trust certificates, guaranteed investment contracts, investment trust certificates, mortgages, notes, common or preferred stock, and savings accounts. With respect to an investment in collective investment funds or group

trusts, the instrument creating such collective investment trusts or group trust together with any amendments or supplements, are made a part hereof as fully as if set forth herein in their entirety.

2. The last sentence of Section 2-4 of the Trust Agreement is hereby deleted.

This Amendment to the Trust Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

**COMPANY**

**WEST MONROE PARTNERS, INC.**

By: _____

Name: _____

Title: _____

**TRUSTEE**

**ARGENT TRUST COMPANY**

By: _____
Mark L. Hansberger, Senior Vice President, Not in his individual capacity, but solely in his capacity as an officer of Argent Trust Company