IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW DALY, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>WEST MONROE PARTNERS, INC.; THE BENEFITS COMMITTEE OF WEST MONROE PARTNERS, INC.; THE BOARD OF DIRECTORS OF WEST MONROE PARTNERS, INC.; ARGENT TRUST COMPANY; and DOES 1-30<br><br>    Defendants. | Case No. 1:21-cv-06805-RAG |
| NATHAN A. ULERY, on behalf of himself and on behalf of a class of all other persons similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>WEST MONROE PARTNERS, INC.; KEVIN MCCARTY; TOM BOLGER; GIL MERMELSTEIN; BARBARA DUGANIER; BARBARA BENNETT; DOUG ARMSTRONG; TOM HULSEBOSCH; SUSAN STELTER; and ARGENT TRUST COMPANY,<br><br>    Defendants. | Case No. 1:22-cv-00781-RAG |

**PLAINTIFF ULERY'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR APPOINTMENT
OF INTERIM CLASS COUNSEL**

Plaintiff Nathan Ulery submits this reply memorandum of law in support of his motion for appointment of Bailey & Glasser, LLP ("BG") and Izard Kindall & Raabe, LLP ("IKR") (together "Ulery Counsel") as Interim Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3).

**I.     Introduction**

Sanford Heisler Sharp ("SHS") spoke with 17 former employees, Daly Reply at 9, yet none of them have come forward to support SHS as counsel.[1] Indeed, three of the employees solicited by SHS said "no," preferring that BG and IKR lead this case. Declaration of David A. Mollin; Declaration of Elizabeth Kitto; Declaration of Clinton Victor Scott-Williams, Exhibits G-I hereto. The people have spoken. They want BG and IKR to represent them. The reason is obvious.

BG and IKR are much more qualified to serve as lead counsel in this complex employee stock ownership plan lawsuit about valuing a privately held company. Ulery's Counsel have successfully prosecuted dozens of such ESOP class actions, not to mention dozens more ERISA class actions. Ulery's Counsel won the key case establishing ESOP pleading standards in the Seventh Circuit. *See Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016). Ulery's counsel won among the largest trial judgments in a private company ESOP case and won affirmance of that judgment in the Fourth Circuit on all fronts, establishing key valuation and fiduciary process standards for ESOP transactions. *Brundle v. Wilmington Trust*, 241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019), and *aff'd*, 919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019).

---

[1] Technically, SHS has not opposed Ulery's Motion for appointment of BG and IKR as co-lead counsel, styling their opposition brief as Plaintiff Daly's Reply in Support of Motion to Appoint Sanford Heisler Sharp as Interim lass Counsel. ECF 54. ("Daly Reply"). Ulery will treat the Reply as an Opposition to his Motion.

In contrast, Daly's counsel has never litigated an ESOP case. And, between them, Daly's various counsel have a total of seven ERISA cases (all the same type of cases), only one of which yielded a recovery for their clients. None of those cases involve ESOPs and private company valuation. The lack of experience shows in Daly's superfluous claims for relief, misstatements of fact, and misunderstanding of law.

SHS rests much of its argument on Ulery's supposed conflict of interest.[2] Those arguments show a fundamental misunderstanding of key ERISA tenets, as explained below. Moreover, while SHS disparages the more accurate fact allegations in the Ulery complaint as "insider" information, several of Ulery's more accurate fact allegations are obvious from a reading of the plan documents—facts that should have been apparent to any reader. And Ulery's superior knowledge is a good thing, which will lead to a more thorough and efficient discovery process and resolution of this case.

Even if there were anything to Ulery's purported conflicts (there are none), a class member, Daniel P. Williams, has agreed to join Ulery's lawsuit as a named plaintiff represented by BG and IKR. That moots any conflict issue.

## II. Argument

### A. Litigating Spurious Claims Does Not Serve The Class And Shows A Lack of Relevant Experience.

Daly argues his counsel is better-suited to pursue this lawsuit because they will pursue legal claims that Ulery's counsel do not. This is a case where less is more. Rather than pursue

---

[2] SHS did not appear troubled by any supposed conflicts when it offered, after seeing Ulery's draft complaint detailing his background, to pay BG and IKR a referral fee if Ulery agreed to be SHS's client, rejecting the proposal of BG and IKR that all three firms serve as co-lead counsel. Supplemental Declaration of Robert A. Izard. Exhibit J hereto.

2

claims that are not actionable or will yield no material benefit to the class, Ulery's counsel focused on claims that will yield meaningful class damages.

While this case concerns whether the West Monroe stock was redeemed from Former Employees at below fair market value in September 2021, Daly's lawyers allege three purported ERISA theories: (1) the December 31, 2020 valuation was below fair market value ("December Undervaluation Theory"); (2) the redemption price was below fair market value ("Stale Valuation Theory"); and (3) defendants failed to disclose the "undervaluations" and impending investment by private equity, which were "material" to Former Employees' elections to cash out of the Plan before the private equity investment ("Disclosure Claim"). Daly Reply at 3-5. Ulery, in contrast, claims that Defendants caused Former Employees to receive less than fair market value for their West Monroe stock on September 21, 2021 (the "Redemption Date"). Ulery's claim is closest to Daly's "Stale Valuation Theory." Daly's other ERISA claims add nothing.

Daly's December Valuation Theory is not an independent claim for relief. Fair Market Value is determined as of the transaction date, here the September 21, 2021 Redemption Date, over nine months after December 31, 2020 valuation. *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 937 (N.D. Ill. 1998) ("[F]air market value is to be determined as of the date of the transaction."); *see also* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17,632, 17,634, 17,637 (proposed May 17, 1988) (to be codified at 29 C.F.R. § 2510.3-18(b)(2)(ii)) ("The fair market value of an asset for the purposes of section 3(18)(B) of the Act … must be determined as of the date of the transaction involving that asset."); *Neil v. Zell*, 767 F. Supp. 2d 933, 944 (N.D. Ill. 2011) (loss is measured as the difference between what the ESOP paid for the stock and its fair market value at the time of the transaction). Although an older valuation may or may not be relevant to Fair Market Value as of the transaction date, but it does not dictate it. Rather, the value as of the transaction date is what

matters. Daly's December Valuation Theory simply alleges facts possibly relevant to fair market value on the transaction date. If the fact-finder decides Former Employees received fair market value on the Redemption Date, it won't matter if Daly proves the December 31, 2021 valuation was wrong because there won't be any damages if Former Employees received fair market value on the Redemption Date. Accordingly, the December Valuation Theory isn't a claim, and it adds nothing to the relief available to Former Employees. Pleading the claim demonstrates lack of ERISA, ESOP, and valuation expertise.

Daly's Disclosure Claim also adds nothing. Daly's claim, like the usual disclosure claim, says defendants failed to disclose "material" information about a stock transaction. Disclosure claims like this presume that the investor decided to buy or sell stock in reasonable reliance on material statements or omissions. But Former Employees did not have any choice in the Stock Redemption; they made no buy or sell decision. It was forced on them by Defendants when the Defendants required Former Employees to redeem their shares. As e-mails to Former Employees (presumably reviewed by Daly's lawyers) explain, Former Employees had to choose how to receive their distribution and those who did not would have their shares converted to cash. July 23, 2021 e-mail, Exhibit N hereto. Former Employees could not decide to hold West Monroe stock. Moreover, as discussed at pages 8-9 below, Former Employees had no right under the Plan terms to make any decision that would allow them to receive additional allocations of stock, regardless of what was disclosed to them. No decision by Former Employees means there could be no reliance on the improper disclosures and no claim for improper disclosure.

Moreover, even if reliance on information were an issue, and it is not, certifying a class based on reasonable reliance in a case involving private securities, where there is no public market on which plaintiffs can presumptively rely, would be challenging. Finally, there is no material remedy under ERISA for Daly's Disclosure Claim. Stated differently, there's no money

4

Former Employees can collect on the Disclosure Claim if the core fair market value claim fails. And, if the fair market value claim succeeds, there is no additional money Former Employees can recover from a non-disclosure. The claim is an ill-considered distraction.

Daly's Delaware claim too is an ill-considered distraction. Daly is wrong that *Halperin v. Richards*, 7 F.4th 534, 550 (7th Cir. 2021), says his Delaware claim is not preempted. *Halperin* concerned "conflict preemption" not "complete preemption," which applies here. Plaintiffs Ulery and Daly and the proposed class members are participants in an ERISA plan who have claims for relief under ERISA. *See* 29 U.S.C. § 1132(a)(2)-(3). Because the plaintiffs may bring claims under ERISA, alternative state law causes of action are completely preempted. *See Halperin*, 7 F.4th at 545 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). In contrast, the plaintiffs in *Halperin* were creditors, not plan participants, so they had no claims under ERISA and complete preemption was not at issue. *Id.* ("This case arises under conflict preemption rather than complete preemption. . . . Here, *Davila* would not preempt the plaintiffs' claims because the plaintiffs cannot sue under ERISA."); *see, also Eckelkamp v. Beste*, 315 F.3d 863, 869-70 (8th Cir. 2002). Daly's reliance on *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 918 (N.D. Ill. 1998) is also misplaced. This old district court decision long preceded *Davila* and includes no analysis of the relevant preemption principles. Once again, Daly's lawyers demonstrate they lack ERISA experience.

   **B. Ulery Has No Conflicts.**

Daly's conflict theory is moot because a Former Employee, Daniel P. Williams, will serve as named plaintiff and class representatives, and will be included in the anticipated consolidated amended complaint. Supplemental Declaration of Daniel P. Williams, Exhibit K hereto. Williams was not a West Monroe director or executive when employed there.

Their initial speculative theories of Ulery's conflicts debunked, Daly's counsel goes deeper down the conflict rabbit hole by saying things Ulery may or may not have done several years ago that may or may not be relevant to deciding liability to which Ulery himself might be exposed because he once served as a plan fiduciary. Daly Reply at 7-8. We are not aware of any decision holding that an ERISA fiduciary is liable for a transaction that occurred years after he stopped serving as a fiduciary. None of the cases cited by Daly say that. Daly Reply at 7-8. This is because "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty … if such breach was committed … after he ceased being a fiduciary." 29 U.S.C. § 1109(b). Here, the only actionable wrong occurred at the time of the Redemption Transaction. Ulery can't be liable for that wrong.[3] Daly's counsel seems not to know this basic ERISA rule.

Daly also cites two cases for the proposition that former fiduciaries are not adequate class representatives. Daly Reply at 5, citing *Radell v. Towers Perrin*, 172 F.R.D. 317, 320-21 (N.D. Ill.1997); *Andrews Farms v. Calcot, Ltd.*, 268 F.R.D. 380, 388 (E.D. Cal. 2010). Those cases are inapposite because in both cases, the former fiduciary/board members served on the board when the board breached its fiduciary duties, unlike here where the violations of ERISA alleged against West Monroe's board members occurred 18 months after Ulery stopped being a board member and fiduciary.

---

[3] Daly speculates that Ulery may have been involved in the initial decision to appoint the trustee. Daly Reply at 1,2,7. Even if that were true, there is no claim in this case that fiduciaries failed to follow a prudent process in initially appointing the trustee. The same is true of the speculation that Ulery may have been involved in adopting imprudent policies and procedures concerning stock valuation and redemption. Daly Reply at 2,7,8. No one has made any claim regarding any improper policies or procedures allegedly adopted by Ulery, much less whether those policies and procedures were followed in connection with the Transaction. Indeed, these speculations appear to be weak attempts to manufacture a conflict that does not exist (and did not exist when SHS wanted to represent Ulery.) More important, they are a meaningless distraction from what matters in this case—whether class members received fair market value when their shares were redeemed.

### C. Daly's Counsel's Investigation.

Daly argues his counsel is better-suited to represent the class because they filed their first complaint and did a lot of work in the case. Daly Reply at 9. Assuming first to file has any weight, it goes only to one of the four factors in Fed. R. Civ. P. 23(g)(1)(A), the work counsel has done in identifying or investigating potential claims in the action. On the other factors, counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class, Ulery's counsel are far more superior.

The work counsel has done in identifying or investigating potential claims in the action is not based on who got to the courthouse first. Quality and thoroughness matter more. As discussed above, Daly's counsel proposes superfluous, if not spurious, claims for relief that will do nothing to advance the interests of the class and distract from the claims that matter.

As to their fact investigation, Daly's lawyers claim to have spent hundreds of hours reviewing hundreds of pages of documents, doing legal research, and preparing the complaint. But Daly's complaint has basic errors, as detailed in Part D, *infra*. Moreover, it is hard to see how Daly's lawyers spent hundreds of hours to research and draft the Daly complaint. Only small portions of voluminous ERISA plan documents and Forms 5500 are relevant and can be quickly identified by experienced ERISA counsel. In any event, although BG and IKR reviewed the Daly complaint as a matter of course, we did not rely on SHS's work, particularly because of the factual errors and questionable claims for relief. Instead, BG and IKR relied on facts provided by a client with specific knowledge and a thorough and informed review of plan documents. More important, the question under Rule 23 (g) is not the number of hours churned in preparing a complaint, it is the quality of the work done to successfully advance the case.

### D. Errors in the Daly Complaint.

Daly's lawyers try to explain the errors in their complaint as misunderstandings. Daly Reply at 10-12. To the contrary, they are basic factual errors that are the basis of the claims in this case.

For example, SHS claims it named the Benefits Committee as a defendant based (1) on public filings saying the committee administered the ESOP and (2) emails sent to Former Employees "indicat[ing] that the Benefits Committee approved the challenged transaction." Daly Reply at 10. The controlling plan document, however, expressly states that West Monroe and the Board of Directors are the "named fiduciaries" for the ESOP. West Monroe Partners, Inc., Employee Stock Ownership Plan (2012 Restatement with Amendments One through Twelve), at §§ 12.1, 12.2, Exhibit L hereto. And the summary plan description, which Daly's lawyers submitted as an exhibit, names West Monroe as the Plan Administrator. Dkt 54-6, at 19. Daly's lawyers appear to have missed these essential facts in basic plan documents. As to e-mails to Former Employees, Ulery also received those e-mails. None received by Ulery mention the Benefits Committee. To the contrary, the only e-mail identifying any decision-maker on the Redemption Transaction says the "board approved the distributions." September 9, 2021 e-mail re ESOP Distributions, Exhibit M hereto. Daly's lawyers didn't see the relevant e-mails or they misread them.

SHS says it chose not to name the individual board members because they need discovery to identify them. Daly Reply at 11. But the identity of the board members is a matter of public record. First Ulery Decl., ¶ 19; Daly Compl. ¶ 17.

SHS says its estimates of West Monroe's stock price were reasonable based on the information available to it. Daly Reply at 11. Maybe so, but this shows why Ulery's superior knowledge of the facts makes him a better class representative.

8

SHS compounds its errors in its Reply Brief, arguing that existing employees received "an allocation of *additional* stock from the Plan's suspense account due to the sale and Plan's resulting liquidation, a distribution in which [Former Employees] could have shared if Defendants had disclosed the impending deal." Daly Reply at 5. Wrong. First, as shown above, disclosure would have done nothing to change the Redemption Transaction. Redemption was forced on the Former Employees by the West Monroe Board in September 2021—two months before the Plan amendment cited by SHS was adopted by the Board. Second, SHS argues that nothing in the Plan document prevented Former Employees from receiving new allocations of West Monroe stock. Wrong again. The Plan document explicitly provides that only ESOP participants who were credited with a year of service for the Plan Year *and* were employed by the Company at the end of the year are eligible for allocations. Exhibit L, § 7.5. No Former Employees could have possibly satisfied that eligibility requirement and received additional stock. The only way Former Employees could have received new stock allocations is if the Plan was amended, but amending a plan is not a fiduciary act and, therefore, could not be the subject of a claim in this case. *See Lockheed v. Spink*, 517 U.S. 882, 890-91 (1996). This is one of ERISA's basic rules. SHS's argument demonstrates, once again, that SHS didn't carefully review or understand the Plan documents and fundamental principles of ERISA.

E. **Ulery's Lawyers Are More Experienced, Knowledgeable, and Qualified.**

Daly's layers tout their employment law expertise. Daly Reply at 12. But this case has nothing to do with employment law. Daly's lawyers collectively identify only seven ERISA cases on which they have jointly worked. Dkt. 13-1, Daly Ex. A, ¶13; Dkt. 13-2, Daly Ex. B ¶6;

Dkt. 13-4, Daly Ex. D, ¶ 5.[4] None of those cases are about valuing stock of a private company owned by an ESOP. Moreover, of this handful of ERISA cases, Daly's lawyers claim two "exceptional" ERISA recoveries, for $3.45 million and a yet to be finalized $13.75 million. Daly Reply at 12; Dkt. 13-2, Daly Ex. B, ¶ 6. The sum of SHS's ERISA experience is seven cases with two recoveries and five TBD.

That record pales in comparison to the numerous ESOP recoveries obtained by Ulery's counsel without even considering all the other ERISA cases in which Ulery's counsel has recovered for the ERISA classes. Ulery Motion at 9-14. Moreover, just recently, Gregory Porter was named by Chambers USA as a Top Ranked, Band 1, Plaintiffs' lawyer for Nationwide ERISA Litigation. https://chambers.com/legal-rankings/erisa-litigation-mainly-plaintiffs-usa-nationwide-5:3194:12788:1. Mr. Porter is one of only six lawyers in the country to earn that honor.

Daly's lawyers tout their trial experience. Daly Reply at 13. But none of them have tried an ESOP case, whereas Ulerty's counsel have tried two ESOP cases, one to a $29.7 million judgment and the other settled for $12 million after plaintiffs put on their case. Brian A. Glasser, one of BG's founders, was a lead lawyer in both ESOP trials. Mr. Glasser has tried 35 cases to judgment in 12 different states, including numerous matters involving breach of fiduciary duty, fraud, fraudulent transfer, valuation, and inferences of willful intent. For instance, in the *Yellowstone Mountain Club* case, tried in Montana, he obtained a trial judgment against the owner of the Debtor for fraud, fraudulent transfer, and breach of fiduciary duty for $286 million. Mr. Glasser's resume is attached as Exhibit O hereto. Mr. Glasser will be a member of the trial team in this case should the case go to trial. Mr. Izard also has substantial trial experience,

---

[4] Two of Daly's lawyers have no ERISA experience at all. Dkt. 13-3, Daly Ex. C; Dkt. 13-5, Daly Ex. E.

including a six-month jury trial in federal court, and the IKR team includes Craig Raabe, a Fellow of the American College of Trial Lawyers.

Daly's lawyers apparently scoured PACER to cherry-pick a few losses in the long history of Ulery's lawyers' ERISA practices. Lawyers don't always win. Sometimes a case is dismissed. Critically, Ulery's counsel has never had a dismissal of an ESOP case affirmed on appeal. In *Allen v. GreatBanc*, *supra*, for example, Ulery's obtained reversal of the district court's dismissal of an ESOP case and set Seventh Circuit pleading standards for ESOP cases that govern this lawsuit. In *Stegemann v. Gannett Company, Inc.*, 970 F.3d 465 (4th Cir. 2020), *cert denied*, 142 S.Ct. 707 (2021), Ulery's counsel successfully obtained reversal of the district court's dismissal of an ERISA 401(k) stock fund case. In one case cited by Daly's lawyers, *Anderson v. Intel*, Ulery's counsel took a statute of limitations dismissal to the Supreme Court and won a 9-0 decision in their favor. *Sulyma v. Intel Corp*, 140 S.Ct. 768 (2020).

Daly's lawyers point to the dismissal in *Plutzer v. Bankers Tr. Co. of S.D.*, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022), which is on appeal. *Plutzer* is one of only two courts to have adopted the standing theories it espouses.[5] Indeed, contrary to *Plutzer*, in this Circuit, allegations "the stock value dropped dramatically after the sale (implying that the sale price was inflated) . . . support an inference that [the trustee] breached its fiduciary duty, either by failing to conduct an adequate inquiry into the proper valuation of the shares or by intentionally facilitating an improper transaction." *Allen*, 835 F.3d at 678-79.[6] Moreover, the *Plutzer* court decided standing *sua sponte*, without briefing by the parties or a hearing.

---

[5] These standing issues are fully-briefed in another case pending before this Court. *See Placht v. Argent Trust Co.*, No. 21-cv-05738 (N.D. Ill.).
[6] *See Ahrendsen v. Prudent Fiduciary Servs., LLC*, 2022 WL 294394 (E.D. Pa. Feb. 1, 2022); *Henry v. Wilmington Tr., N.A.*, No. 19-1925, 2021 WL 4133622, at *4 (D. Del. Sept. 20, 2021); *Neil v. Zell*, 767 F. Supp. 2d 933, 950-51 (N.D. Ill. 2011).

11

Plaintiffs have asked the court to amend the complaint in the *Clare v. GreatBanc* case cited by Daly's lawyers (the first such amendment meaning it will undoubtedly be allowed). And dismissal was only as to certain parties, not the entire case.

In *Belknap v. Partners Healthcare System, Inc.*, et al, --F.Supp. 3d--, 2022 WL 658653 (D. Mass. March 4, 2022), contrary to every other court to consider the issue, the court held that ERISA does not require reasonable actuarial assumptions when calculating early retirement benefits but instead permits the use of any assumptions, including those that are fifty-years old. This ruling is on appeal. *Belknap v. Mass General Brigham, Inc. f/k/a Partners Healthcare System, Inc.*, No. 22-1188 (1st Cir.).[7]

Daly's counsel cite "multiple" cases (four) where Ulery's counsels' motions for class certification were denied. Daly Reply at 14. The *Snider* and *Myers* cases are essentially the same case with the same classes. Ulery's counsel tried to add Snider to the *Myers* case, but the judge said it was too late so Snider filed his own case. Moreover, counsel's efforts in representing an additional class plaintiff in a second case and prosecuting the class's claims in that case led to an outstanding result for the class—a $15 million settlement. *Snider v. Admin. Comm. Seventy Seven Energy Inc. Retirement & Sav. Plan*, No. 20-cv-977, Dkt. 41 (W.D. Okla. May 5, 2022). Had counsel not vigorously represented the interests of that class in a second case, the class would have recovered nothing.

In *Bridges v. American Electric Power*, No. 2:03-cv-00067 (N.D. Ohio), a case filed almost twenty years ago, defendants moved to strike plaintiff's class allegations because a motion for class certification was not filed within 120 days of the filing of the complaint as provided for in the local rules or, in the alternative, to permit further discovery on class

---

[7] Appellant's Brief on Appeal describing the flaws in the District Court Opinion is at Document Number 00117878839, May 23,2022.

certification. Plaintiffs contended that filing within 120 days was not practicable within the meaning of F.R.C.P. 23. The Court denied the motion and ordered that the parties meet and confer to provide the court with a proposed discovery and briefing schedule. *Id.* at ECF No. 90 at 4,6-7. In other words, the case was managed consistent with standard class action practice.

In *Wood v. Prudential Retirement and Annuity Company*, 2017 WL 3881007 (D. Conn. August 4,2017), plaintiff moved to certify a class of all plans that invested in the Prudential Guaranteed Income Fund. The Court denied certification based primarily on differences among the various plans and the structure of plan investments.

Comparing SHS's "successes" on seven ERISA cases (none ESOPs and only two in the money) compared to the dozens of ERISA victories and recoveries obtained by BG and IKR is like comparing the batting average of a hitter with seven at bats (of which five at bats are not concluded) to a batting champion for a season. A tiny sample means nothing.

### F.     Other Considerations.

Daly's lawyers claim to have talked to seventeen Former Employees about the case. Daly Reply at 9. Yet not one of those persons submitted a declaration in support of Daly's motion or said they want SHS to represent them. To the contrary, three of those persons support Ulery's motion and want BG and IKR to represent them. Exhibits G-H. Mr. Scott-Williams explains that after he spoke to one of Daly's lawyers, he decided to contact Ulery about his complaint. After talking to Ulery, Scott-Williams decided to support Ulery's motion. Exhibit I. Similarly, Mr. Mollin talked to one of Daly's lawyers, but decided to support Ulery and his chosen counsel. Exhibit G. Ms. Kitto, too, spoke to one of Daly's lawyers, but decided to support Ulery's motion and his chosen counsel. Exhibit H. In sum, six class members support Daly's choice of counsel. Exhibits D-F, G-I. All those class members knew about both Ulery's case and Daly's case. Three

13

of those class members talked to Daly's lawyers and Ulery's lawyers. Exhibits G-I. All three decided to support Ulery and his chosen counsel. *Id.*

Dated: June 3, 2022                                                           Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Patrick O. Muench*
Patrick O. Muench
318 W. Adams Street, Suite 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Ryan T. Jenny
Gregory Y. Porter
Laura Babiak
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
rjenny@baileyglasser.com
gporter@baileyglasser.com
lbabiak@baileyglasser.com

**IZARD KINDALL & RAABE LLP**
Robert A. Izard
Douglas P. Needham
29 South Main St., Suite 305
West Hartford, CT 06107
Telephone: (860) 492-6292
Facsimile: (860) 492-6290
rizardkrlaw.com
dneedham@ikrlaw.com

*Attorneys for Plaintiff Nathan A. Ulery*

## **CERTIFICATE OF SERVICE**

      I certify that on June 3, 2022, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

                                                  */s/ Patrick O. Muench*
                                                  Patrick O. Muench