## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW DALY, on behalf of himself and all others similarly situated, | ) ) | |
| *Plaintiff*, | ) ) | |
| | ) | Case No. 1:21-cv-06805-RAG |
| v. | ) ) | |
| WEST MONROE PARTNERS, INC., et al., | ) | |
| *Defendants.* | ) ) ) | |

| | | |
|---|---|---|
| NATHAN A. ULERY, on behalf of himself and all others similarly situated, | ) ) | Case No. 1:22-cv-00781-RAG |
| *Plaintiff*, | ) ) | |
| v. | ) ) | |
| WEST MONROE PARTNERS, INC., et al., | ) | |
| *Defendants.* | ) ) | |

## PLAINTIFF DALY'S SURREPLY IN OPPOSITION TO PLAINTIFF ULERY'S MOTION TO APPOINT INTERIM CLASS COUNSEL

**INTRODUCTION**

"Every lawyer is an officer of the court and has a duty of candor to the tribunal." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 209 (D. Mass. 2020); *see Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000). "Candor with the court is not only an ethical obligation, it is a necessity for the proper administration of justice." *White v. Emp. Ret. Plan of Amoco Corp.*, No. 96 C 4298, 2001 WL 1204193, at *4 (N.D. Ill. Oct. 10, 2001). Judges "need to rely on [class] counsel," especially, to provide the complete and accurate information needed to ensure that class-wide settlements and fee awards are fair to absent class members. *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 25 F.4th 55, 65 (1st Cir. 2022) (discussing the "elevated level of candor" required of class counsel in the "ex parte proceedings" required to adjudicate unopposed petitions to approve class-wide settlements and awards of attorney's fees).

Bailey & Glasser ("B&G") and Izard, Kindall &Raabe, LLP ("IKR")'s Reply seeking their appointment as Interim Class Counsel (Dkt. 57) calls into serious question their competence to meet that basic criterion. The filing is replete with misrepresentations, errors, and baseless charges. These false statements include unfounded charges that Daly's counsel, Sanford Heisler Sharp, LLP ("SHS"), solicited plaintiffs, offered referral fees, lack experience, lack evidence, and do not oppose the appointment of B&G and IKR. All of these statements are false. Daly and SHS file this sur-reply to correct the record and respond to new arguments unveiled in Ulery's Reply.

I. **B&G and IRK Make Numerous Misrepresentations in their Reply**

*First*, just two sentences into their Reply, B&G and IKR tell the court that SHS "solicited" three class members to support SHS as counsel and that those individuals declined. Ulery Reply at 1 (citing Ulery Exs. G–I). **That statement is false**, and B&G and IKR have no basis to make it. All three declarations B&G and IKR cite attest that the *class members contacted SHS*, not the other

1

way around. *See* Ulery Ex. G ¶ 6; Ulery Ex. H ¶ 6; Ulery Ex. I ¶ 6. In response to their outreach

for advice, SHS explained each class member's options and told them about Ulery's complaint.

*See id.* None of the declarations references anything approaching "solicitation." *Compare id. with*

Ill. Sup. Ct. R. 7.3, cmt. 1 ("A solicitation is a targeted communication *initiated by the lawyer* that

is directed to a specific person and that offers to provide … legal services") (emphasis added).

Indeed, as B&G and IKR have not disputed, only two firms involved in this litigation have been

found to have solicited a plaintiff, and they are B&G and IKR. *See Snider v. Admin. Comm.*, No.

5:20-cv-00977, 2020 WL 7630700, at *1, n.2 (W.D. Okla. Dec. 22, 2020) (where the plaintiff "did

not reach out to counsel but, instead, was solicited to act as a [class] representative").

     ***Second***, B&G and IRK represent that SHS "offered … to pay BG and IKR a referral fee if

Ulery agreed to be SHS's client, rejecting the proposal of BG and IKR that all three firms serve as

co-lead counsel." Ulery Reply at 2 n.2; *see also* Ulery Ex. J, Izard Decl. ¶ 3 (stating that "SHS

proposed that it would simply pay a referral fee to IKR and B&G for referring Mr. Ulery as an

additional client but that they would not work actively on the case"). **That statement is false.**

B&G and IRK made a fee-sharing proposal under which B&G and IKR would receive 2/3 of any

fees awarded in this case.[1] SHS countered with an alternative co-counsel fee split that would more

fairly recognize SHS for its work in building this case. *See* Ex. M, Field Decl. ¶ 7. SHS did not

ask B&G and IKR that Ulery be referred to SHS as a client. *Id.* SHS did not ask the firms to

terminate their retainer with him, did not state that B&G and IRK would "not work actively on the

case" if they accepted the counterproposal, and certainly did not offer to pay a "referral fee." *Id.*

---

[1] Mr. Izard also falsely states in his declaration that "Mr. Daly's suggestion that B&G and IKR proposed that they would receive 'two thirds of any attorneys fees' is not accurate," but corrects this in the next clause, which confirms that B&G and IKR proposed an arrangement with "each firm … sharing one third of any fees that might be awarded." Ulery Ex. J, Izard Decl. ¶ 2.

2

*Third*, B&G and IKR **falsely state** that "Daly's various counsel have a total of seven ERISA cases … only **one** of which yielded a recovery for their clients." Ulery Reply at 2 (emphasis added). In fact, SHS has achieved multi-million-dollar recoveries in three ERISA class actions, as B&G and IKR could have easily determined if they had reviewed SHS's declarations or the cases they list. *See* Daly Ex. B, Field Decl. ¶ 5; Daly Ex. H, Sharp Decl. ¶ 6; Ex. M. Field Decl. ¶ 10.

*Fourth*, B&G and IKR **falsely state** that West Monroe's "emails to Former Employees," which "Ulery also received," do not "mention the Benefits Committee." Ulery Reply at 8. But an August 13, 2021 email to all 146 Class members not only mentioned the "Benefits Committee," but suggested that that Committee would make a "formal recommendation" to the Board of Directors regarding the challenged transaction. *See* Ex. M, Field Decl. ¶ 11.

*Fifth*, B&G and IKR **falsely state** that "SHS has not opposed Ulery's Motion for appointment of BG and IKR as co-lead counsel." Ulery Reply n.1. *See* Daly Reply at 15 ("[T]he Court should … deny Ulery's motion to appoint B&G and IKR as interim class counsel.").

**This is not the first time that B&G and IKR have misrepresented facts to serve their own interests.** In *Snider*, B&G falsely stated that the plaintiff had "reached out" to counsel to join the case, when in fact it was *counsel* who contacted the plaintiff and "solicited" him to serve as a plaintiff. *See* Daly Reply at 14 & n.6 (quoting *Snider*, 2020 WL 7630700, at *1, n.2). **B&G and IKR do not dispute that they did this**. *See* Ulery Reply at 12 (discussing *Snider* but not disputing the misrepresentation). Indeed, these are not even the first misrepresentations B&G and IKR have made in this case. In their opening brief, they also misrepresented that Sean Ouellette, one of Daly's lawyers, had "no identified ERISA experience"—even though the same webpage they cited *and* Mr. Ouellette's declaration both identified two major ERISA class actions that Mr. Ouellette has litigated. *See* Ulery Mot. (Dkt. 50) at 12 (citing https://www.sanfordheisler.com/team/sean-ouellette/); Daly Ex. D, Ouellette Decl. ¶ 5.

The Court should appoint counsel it can trust. Other courts have recognized SHS lawyers for their forthrightness. In *Jane Doe 2 v. The Georgetown Synagogue et al.*, C.A. No. 2014-CA - 008073-B, for example, the court appointed David Sanford and SHS as class counsel over two other firms based not only on his "experience and foresight in contemplation of the proposed class action litigation," but also his "candor with the Court." Daly Ex. A, Sanford Decl. ¶ 17. B&G and IKR's representations in this matter have shown that they do not meet that basic qualification.

## II. B&G and IKR's New Arguments Only Confirm That They Will Undermine (Not Advance) the Best Interests of the Class

B&G and IKR also unveil several arguments for the first time in their Reply, some of which contain yet more misleading statements about the applicable law. These statements only confirm that B&G and IKR would not serve the Class's best interests.

### A. B&G and IKR's New Client Does Not "Moot" Their Conflict of Interest

B&G/IKR's retention of Ulery's longtime colleague (Daniel Williams) as an additional named plaintiff does not "moot" the firms' conflict of interest. B&G and IKR still represent a client with an interest adverse to the Class. That conflict disqualifies them as class counsel because B&G and IKR's obligations to Ulery would materially limit their ability to advocate for the best interests of the Class. *See* 1 Newberg on Class Actions § 3:75 (5th ed.) ("[A] class action attorney may not simultaneously represent two clients if those clients' interests are directly adverse or if there is significant risk that the dual representation will materially limit the lawyer's representation of one

4

client" or the Class.); Ill. Sup. Ct. Rule 1.7(a)(2); Daly Reply at 3. B&G and IKR cannot erase a

conflict of interest between two clients (Ulery and the Class) by simply retaining a third.[2]

Nor does 29 U.S.C. § 1109(b) (stating that past fiduciaries are not liable for their

successors) extinguish Ulery's conflict. *Contra* Ulery Reply at 6. Ulery does not deny that he

appointed the Defendant Trustee or that he voted on policies that governed the valuation and

redemptions challenged in this case. *See* Daly Reply at 7–8; Ulery Reply at 6 & n.3. If Ulery made

imprudent decisions concerning those policies, those decisions would have breached ERISA's

duty of prudence *while* Ulery was a fiduciary—even if the harm occurred later.  *See*, *e.g.*, *Tussey*

*v. ABB, Inc.*, 850 F.3d 951, 958 n.5 (8th Cir. 2017) (explaining that breach is a "separate" issue

from the harm the breach eventually causes); *Liss v. Smith*, 991 F. Supp. 278, 296 (S.D.N.Y. 1998)

(holding that fiduciaries' failure to adopt prudent policies was breach); Daly Reply at 8.

### B. **B&G/IKR Misrepresent Controlling Cases, Which Do Not Hold that ERISA Preempts Parallel Corporate-law Claims Against Fiduciaries**

B&G and IKR next state that under *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004),

ERISA preempts a plaintiff's state corporate law claims when the plaintiff "may bring claims

under ERISA." Ulery Reply at 5. That is not the law. *See Franciscan Skemp Healthcare, Inc. v.*

*Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 598 (7th Cir. 2008) (holding that

plaintiff's claims were not preempted under *Davila* even though the plaintiff "*could* bring ERISA

claims")**.** In *Davila*, the Supreme Court established a "**two**-part" test for complete preemption:

ERISA preempts a state-law claim only if [1] the plaintiff "could have brought his claim under

ERISA § 502(a)(1)(B), **and** [2] **where there is no other independent legal duty** that is implicated

---

[2] Even if a second client *could* somehow mitigate B&G/IKR's conflict of interest with the Class, there are serious reasons to doubt that Williams would provide an independent check on Ulery: Williams has known Ulery for 15 years, Ulery Ex. D ¶ 8, and his latest declaration still indicates that he still believes that *Ulery* should serve as the "*lead plaintiff*" in this case. Ulery Ex. K ¶ 2.

by a defendant's actions." *Id.* (quoting *Davila*, 542 U.S. at 210) (emphasis added). **Both** prongs must be satisfied for a claim to be completely preempted under *Davila*. *See id.*

Daly's state-law claim against West Monroe's Directors—for breach of their *corporate* fiduciary duties to shareholders—easily avoids preemption under this test. In *Halperin v. Richards*, the Seventh Circuit held that the same type of claims were not preempted because "the shareholder-director relationship … impose[s] special duties **wholly independent from any parallel ERISA duties**," 7 F.4th 534, 542–43 (7th Cir. 2021) (quoting *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1468 (5th Cir. 1986)), and because "**ERISA expressly contemplates parallel corporate liability against directors and officers who serve dual roles as both corporate and ERISA fiduciaries**." *Id.* at 539, 542. While the appellants in *Halperin* were not plan participants, the court's reasoning dictates the same result for the Class's state-law claims, which rely on the same "independent duties" that the court held "ERISA is written to invite": the duties the Board owed as corporate directors. *Id.* at 545.

This is not some novel concept. "**Most**" cases that "squarely address the problem … hold that **ERISA does not preempt corporation-law claims against dual-hat directors and officers**," such as the claim Daly alleges. *Id.* at 542. *Montgomery v. Aetna Plywood, Inc.*, *See* 39 F. Supp. 2d 915, 918 (N.D. Ill. 1998), cited in Daly's Reply at 6, is just one such case. *Id.* (citing decisions by the First and Fifth Circuits). In *Sommers Drug Stores*, cited in *Halperin*, the Fifth Circuit held that an ERISA plan could bring both ERISA and state corporate-law claims for breach of fiduciary duty against corporate directors, which the court held were not preempted. *See* 793 F.2d at 1468. In fact, the weight of authority is so one-sided that, in the words of the Seventh

6

Circuit, the defendants in *Halperin* were "left without any firm precedent supporting the position that ERISA preempts corporation-law claims against dual-hat directors." *See* 7 F.4th at 544.[3]

Nonetheless, B&G and IKR represent that their unsupported position is so well-established that Daly and SHS's assertion of the Class's state corporate-law claim shows that SHS "lack[s] ERISA experience." Ulery Reply at 5. B&G and IKR's argument **misrepresents the law** at the expense of the Class. This does not bespeak candid or loyal advocacy for the Class.

### C.  Ulery Confirms that He Will Forfeit Alternative Theories under ERISA

After B&G and IKR's opening brief failed to explain why Ulery's complaint eschewed two ERISA theories that Daly asserts, *see* Daly Reply at 3–6, they now argue that they did not assert the December Valuation Theory or the Disclosure Claim because they believe those theories "add nothing" to the case. Ulery Reply at 2–4. They are mistaken, and their continuing rejection of these theories confirms that B&G and IKR would subordinate the Class's interests to their own.

As to the December Valuation Theory, B&G and IKR argue that "fair market value is to be determined as of the date of the transaction," citing two authorities referenced in *Daly's* Complaint. Ulery Reply at 3 (quoting *Montgomery*, 39 F. Supp. 2d at 937, and Proposed Regulation Re: Adequate Consideration, 53 Fed. Reg. 17,632, 17,634, 17,637). Daly and SHS agree. *See* Daly Compl. ¶¶ 27, 42. But good lawyers do not put all their eggs in one basket. If Defendants can show that they properly relied on the December 2020 valuation for the challenged redemptions, Ulery's counsel would lose this case, and the Class would get nothing. *See* Daly

---

[3] Even the one out-of-circuit case that B&G/IKR cite preceded *Davila* and did not apply its two-part test, meaning it did not determine whether the plaintiff's state-law claims arose from legal duties independent of ERISA. *See Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002).

Reply at 13–14 (noting four Rule 12(b)(6) dismissals of ERISA cases brought by Ulery's counsel just this year).[4] Daly could still prevail by showing that the December 2020 valuation was too low.

B&G/IKR's new arguments likewise do nothing to undermine Daly's Disclosure Claim. *See* Daly Reply at 4–5. B&G and IKR are correct that West Monroe told class members that those who did not elect distributions "would have their shares converted to cash." Ulery Reply at 4. But they omit the rest of the sentence, which reads in full: "If you fail to make a timely election, your shares will be converted to cash and invested in a mutual fund *in the ESOP* before the end of 2021." Ulery Ex. N at 2 (emphasis added). In other words, if class members had not elected distributions, they would have retained a balance in the ESOP (whether or not in the form of stock), which would have qualified them for proceeds from the coming Stock Sale and liquidation. *See* Daly Reply at 5, 11; Ex. I, Plan Am. 16 §§ 16.2(a), 16.4(a), 16.5(b).[5]

### D. **Boilerplate Fill-in-the-Blank Declarations from Ulery's Former Colleagues Do Not Favor B&G and IKR's Appointment**

B&G and IKR's form declarations from six class members do not weigh in favor of appointing them class counsel, either. All three declarations submitted with Ulery's opening brief

---

[4] Finding B&G and IKR's streak of losses in a span of only three months did not require "scour[ing] PACER" or to "cherry-pick[ing]" through their longer histories, Ulery Reply at 11, which include more. *See, e.g., Wilson v. Fid. Mgmt. Tr. Co.*, 755 F. App'x 697, 698 (9th Cir. 2019).

[5] Ulery also now argues that former employees could *not* have received allocations of additional shares of company stock or the proceeds thereof as a result of the 2021 stock sale because Plan § 7.5(a), which governed annual allocations, did not provide for allocations to former employees. *See* Ulery Reply at 9. But § 16 (added by Amendment 16), not § 7.5, governed the allocations from the 2021 Stock Sale and liquidation of the Plan. *See* Daly Reply at 5; Daly Ex. I, Plan Am. 16 §§ 16.2(a) (defining "Company Sale Eligible Participant" as "a Participant in this Plan who, as of the Valuation Date immediately prior to the date of the Stock Sale Closing [i.e., December 31, 2020, *see* Ulery Ex. L § 1.28], held shares of Company Stock in his or her Company Stock Account, and who ha[d] not received a complete distribution of his or her entire vested Accounts or a deemed distribution."); *see also id.* §§ 16.4(a) (allocating Stock Sale proceeds to Company Sale Eligible Participants based on the balance in their Stock Accounts as of the prior Valuation Date (year-end 2020) and allocating additional shares of stock "**as described in § 16.5(b)**," not § 7.5(a)).

contain identical language and were obviously prepared by Ulery's counsel. *See* Ulery Exs. D–F.[6] The same goes for the three new declarations submitted with Ulery's Reply. All three state: "I chose to support Ulery's case instead of Daly's because I have known Ulery for a long time ["several years" for Ms. Kitto], did not know Daly, and decided that Ulery and his lawyers were likely to do better for the class members than Daly and his lawyers." Ulery Exs. G–I. Courts "strongly disfavor the use of such boilerplate declarations, as they lack specificity and cast doubt on the declarants' personal knowledge about the matters contained therein." *Bernstein v. Town of Jupiter*, No. 21-81215-CV, 2021 WL 6135185, at *2 (S.D. Fla. Oct. 13, 2021); *Alaniz v. City of Los Angeles*, No. CV-048592, 2014 WL 12694157, at *5 (C.D. Cal. May 21, 2014). Moreover, the declarants do not indicate that they reviewed Daly's motion or declarations. The fact that they know Ulery better than Daly does not make Ulery a better class representative. And of course, six longtime colleagues of Ulery (only 4% of the 146-person class)—only one of whom has volunteered to be a proposed class representative—do not speak for the Class.

In contrast, SHS did not *ask* any of the class members who sought advice from SHS to "support SHS as counsel." Ulery Reply at 1. Instead, SHS responded to each member's questions, explained their options candidly, and told them about Ulery's complaint, so that each could make informed decisions for themselves. *See* Ulery Exs. G–I ¶ 6 (describing those conversations). This is as is should be: Class counsel should serve the Class, not the other way around.

### E. B&G and IKR's Absentee "Team Members" Do Not Show Commitment

To compensate for their lack of trial experience relative to David Sanford and former federal judge Kevin Sharp, B&G and IKR now tout two of their named partners, Brian Glasser

---

[6] One of B&G/IKR's declarants seems to have overlooked one of the blanks B&G/IKR left for him. *See* Ulery Ex. E, Wiggs Decl. ¶ 3 ("While employed by West Monroe, I served as ." [sic]).

and Craig Raabe. *See* Ulery Reply at 10-11. But Mr. Glasser and Mr. Raabe do not bother to enter their appearances, submit declarations for the court to consider, or even sign Ulery's brief. Instead, B&G points the court to Mr. Glasser's webpage, *see* Ulery Ex. O, and promises that he will materialize if "the case go[es] to trial." Ulery Reply at 10. But as David Sanford and former judge Kevin Sharp understand, prevailing at trial requires building a case through effective depositions and discovery practice. That is why they are *on* the SHS team *here and now*. B&G and IKR's "eventually" assurances do not show they will commit the resources necessary to win. *See* Fed. R. Civ. P. 23(g)(1)(A). To the contrary, they exemplify a cavalier "approach to litigating a complex, putative class action." *Snider*, 2020 WL 7630700, at *1 (referring to B&G and IKR).

### III.     B&G and IKR's Continued Attacks on Daly's Complaint Lack Merit

Ulery's remaining claims of "factual errors" in Daly's Complaint still lack merit:

- *First*, while Ulery now appears to concede that Daly's estimate of the increase in West Monroe's share price is reasonable, he still does not provide any evidence to support his lower estimate of the increase (3x vs. 4.8x). *See* Ulery Reply at 8.

- *Second*, Daly properly names the Benefits Committee as a defendant. The Plan Document provides that West Monroe may "delegate authority and duties" under the Plan. Ulery Ex. L § 12.3(g). Public filings suggest that the Board delegated duties to the Benefits Committee, *see* Daly Ex. L (Form 5500) at 28, and (contrary to B&G and IKR's representations) emails to the Class referenced the Benefits Committee as a participant in the challenged redemption decision. *See* Ex. M, Field Decl. ¶¶ 11–12.

- *Third*, Daly does not name West Monroe's individual directors pending confirmation of the Board's *historical* membership at all *relevant times*, as explained in Daly's Reply at 11. This information is not available on the public website Ulery cites, which only shows the Board's *current* membership. *See* Ulery Decl. ¶ 19.[7] It does not show past members of the Board such as Plaintiff Ulery.

- *Fourth*, Ulery claims that (a) proper disclosures by West Monroe would have "done nothing to change the Redemption Transaction," and (b) former employees could not have received allocations from the 2021 Stock Sale. *See* Ulery Reply at 9. Both

---

[7] There are also strategic reasons not to name the individual directors in the complaint. For example, defendants can be willing to make concessions in discovery and other negotiations to the benefit of the class in exchange for not naming individuals in an amended complaint.

statements ignore Amendment 16, which made participants eligible for proceeds if they remained invested in the Plan, whether or not their accounts held company stock (as opposed to, e.g., cash) and whether or not they were current employees. *Supra* n.6.

**IV.      SHS Remains Best Positioned to Represent the Class**

SHS remains best positioned to represent the Class. As the briefs have by now made clear, SHS not only filed the first complaint and beat the path that Ulery's counsel followed, but also performed a more thorough investigation of the relevant Plan Documents and public records and a more discerning review of the caselaw in this circuit and the theories the Class could assert. It is well established that counsel who "have been involved in [the] litigation for the longest time period," "have performed the most work in identifying and investigating potential claims," and who assert "all theories and claims" available to the Class are better positioned "to represent the class fairly and adequately than [other counsel] who did not undertake those tasks'" and who omit various claims. *Walker v. Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at *4 (N.D. Ill. May 26, 2011) (quoting Moore's Federal Practice § 23.120(3)(a)); *see* Daly Reply at 9 (citing more cases). Ulery cites nothing to the contrary. *See* Ulery Reply at 8.

Finally B&G and IKR are plain wrong to suggest that Daly's counsel "lack ERISA, ESOP, and valuation expertise." Ulery Reply at 4. In addition to the team's extensive ERISA litigation experience—already reviewed at length—and Mr. Field's many years of experience with securities valuation, Mr. Sharp has tried several cases involving company valuation issues and oversaw a complex ESOP case as a federal judge. *See* Ex. M, Field Decl. ¶ 13. There is no question that SHS possesses the qualifications, commitment, and integrity demanded to prosecute this case to verdict with the vigor and candor required of Class counsel.

## CONCLUSION

The Court should be troubled that, faced with conflicts that afflict their client (and therefore themselves) and their failure to plead several theories and claims for relief available to the Class, B&G and IKR have now resorted to misrepresentations and baseless attacks to obtain their appointment as Class counsel. If the Court needed further evidence as to why B&G and IKR are unfit to serve as Class Counsel, it need look no further: Left unchecked, B&G and IKR will put their own interests ahead their duties to both this Court and the Class. The Class deserves better.

The Court should grant Daly's motion (Dkt. 12) and deny Plaintiff Ulery's (Dkt. 50).


Dated: June 7, 2022                                    */s/ Charles Field*

Charles Field*
**SANFORD HEISLER SHARP, LLP**
2550 Fifth Avenue, 11th Floor
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

David Sanford*
Russell Kornblith*
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Fl.
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
rkornblith@sanfordheisler.com

Kevin Sharp*
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com

12

Sean Ouellette\*
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, D.C. 20003
Phone: (646) 402-5644
Facsimile: (202) 499-5199
souellette@sanfordheisler.com

Matthew J. Singer
**MATT SINGER LAW, LLC**
77 W. Wacker Dr., Suite 4500
Chicago, IL 60601
Telephone: (312) 248-9123
matt@mattsingerlaw.com

*Attorneys for Plaintiff Daly*

\*   *Admitted pro hac vice*

13

## CERTIFICATE OF SERVICE

I, Charles Field, hereby certify that on June 7, 2022, I caused the foregoing to be filed using the CM/ECF system for the United States District Court for the Northern District of Illinois, which will send notification of such filing to all registered participants.

*/s/ Charles Field*
Charles Field
