**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **MATTHEW DALY,** | Case No. 1:21-cv-6805 |
| *Plaintiff*, | Hon. Ronald A. Guzman |
| **v.** | |
| **WEST MONROE PARTNERS, INC.,** *et al.*, | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND AND FACTUAL ALLEGATIONS ...................................................... 3

LEGAL STANDARD........................................................................................................ 6

ARGUMENT .................................................................................................................... 6

    I.    Plaintiff has not exhausted administrative remedies under the Plan as required before he may bring his claims in court. ................................................. 6

    II.    Even assuming administrative exhaustion is not required, Plaintiff fails to plausibly allege that most Defendants were acting as ERISA fiduciaries or breached any fiduciary responsibility with respect to the actions subject to complaint.................................................................................................................. 10

        A.    Plaintiff fails to plausibly allege that West Monroe was acting as a fiduciary. ................................................................................................. 11

        B.    Plaintiff fails to plausibly allege that the Board, Individual Board Defendants, or Individual Committee Defendants were acting as fiduciaries................................................................................................. 12

        C.    Plaintiff fails to plausibly allege that Argent, as directed trustee, had the legal authority—much less a fiduciary obligation—to disobey the direction to distribute shares of West Monroe stock from the Plan................................................................................................... 13

    III.    Plaintiff fails to state a prohibited transaction claim. ........................................ 16

        A.    The complaint does not plausibly allege transactions prohibited under 29 U.S.C. § 1106.................................................................................. 17

        B.    The complaint does not plausibly allege that Argent or the Individual Board or Committee Defendants "caused" the challenged transactions. .......................................................................... 19

    IV.    The complaint does not plausibly allege that Argent's process for rendering the 12/31/20 Valuation was flawed. .................................................... 20

    V.    The complaint does not state a disloyalty claim against Argent........................ 22

    VI.    Plaintiff's unsupported, derivative failure to monitor claim also fails. .............. 23

    VII.    The complaint does not state a claim for co-fiduciary liability. ......................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Acosta v. Chimes D.C., Inc.*,
2019 WL 931710 (D. Md. Feb. 26, 2019) ............................................................. 12

*Ahr v. Commonwealth Edison Co.*,
2005 WL 6115023 (N.D. Ill. Feb. 24, 2005) ........................................................... 7

*Ames v. Am. Nat. Can Co.*,
170 F.3d 751 (7th Cir. 1999) ................................................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................. 6

*Atwood v. Burlington Indus. Equity, Inc.*,
1994 WL 698314 (M.D.N.C. Aug. 3, 1994)............................................................ 25

*Baker v. Universal Die Casting, Inc.*,
725 F. Supp. 416 (W.D. Ark. 1989) ....................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................. 6

*Bunch v. W.R. Grace & Co.*,
555 F.3d 1 (1st Cir. 2009)..................................................................................... 21

*Chao v. Hagemeyer N. Am., Inc.*,
2006 WL 8443663 (D.S.C. Oct. 20, 2006) ...................................................... 18, 19

*Chao v. Merino*,
425 F.3d 174 (2d Cir. 2006) ................................................................................. 22

*Chesemore v. All. Holdings, Inc.*,
886 F. Supp. 2d 1007 (W.D. Wis. 2012) ............................................................... 20

*Chi. Hous. Auth. v. J.A. Hannah Inv. Advisory Serv., Inc.*,
1996 WL 328033 (N.D. Ill. May 9, 1996)............................................................. 25

*Coyne & Delany Co. v. Selman*,
98 F.3d 1457 (4th Cir. 1996) ................................................................................ 24

*DeBruyne v. Equitable Life Assur. Soc. of the U.S.*,
920 F.2d 457 (7th Cir. 1990) ................................................................................ 22

*DiFelice v. U.S. Airways, Inc.*,
397 F. Supp. 2d 735 (E.D. Va. 2005) .................................................................... 25

*DiFelice v. US Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) .......................................................................... 20, 21

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) .............................................................................. 15

*F.W. Webb Co. v. State St. Bank & Tr. Co.*,
2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010)........................................................ 15

## TABLE OF AUTHORITIES

(continued)

| Cases | Page(s) |
|---|---|

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ........................................................................................................... 6

*Gallegos v. Mount Sinai Med. Ctr.*,
210 F.3d 803 (7th Cir. 2000) ............................................................................................ 9

*Harley v. Bank of N.Y. Mellon*,
2017 WL 78901 (S.D.N.Y. Jan. 9, 2017) ...................................................................... 16

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000) ......................................................................................................... 19

*Howell v. Motorola, Inc.*,
633 F.3d 552 (7th Cir. 2011) ........................................................................... 12, 16, 23

*In re Citigroup ERISA Litig.*,
662 F.3d 128 (2d Cir. 2011) ........................................................................................... 22

*In re Fid. ERISA Float Litig.*,
829 F.3d 55 (1st Cir. 2016) ............................................................................................ 18

*In re Lehman Bros. Sec. & ERISA Litig.*,
2012 WL 6021097 (S.D.N.Y. Dec. 4, 2012) ................................................................ 14

*In re Mut. Fund Inv. Litig.*,
403 F. Supp. 2d 434 (D. Md. 2005) ............................................................................... 11

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
2009 WL 3246994 (W.D. Wash. Oct. 5, 2009) ........................................................... 25

*In re Wells Fargo ERISA 401(k) Litig.*,
331 F. Supp. 3d 868 (D. Minn. 2018) ............................................................................ 22

*Jenkins v. Yager*,
444 F.3d 916 (7th Cir. 2006) ......................................................................................... 22

*Keach v. U.S. Tr. Co.*,
240 F. Supp. 2d 840 (C.D. Ill. 2002) ............................................................................ 25

*Korchek v. Nichols-Homeshield, Inc.*,
1997 WL 619869 (N.D. Ill. Sept. 30, 1997) ................................................................. 7

*Kross v. W. Elec. Co.*,
701 F.2d 1238 (7th Cir. 1983) ...................................................................................... 8, 9

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248, 259 ............................................................................................................... 7

*Lauth v. Prudential Ins. Co., of Am.*,
2006 WL 1302355 (N.D. Ill. May 5, 2006) ................................................................... 9

*Lingis v. Motorola, Inc.*,
649 F. Supp. 2d 861 (N.D. Ill. 2009) ........................................................................... 23

iii

# TABLE OF AUTHORITIES
(continued)

| Cases | Page(s) |
|---|---|

*Lively v. Dynegy, Inc.*,
   420 F. Supp. 2d 949 (S.D. Ill. 2006)................................... 11

*Martin v. CareerBuilder, LLC*,
   2020 WL 3578022 (N.D. Ill. July 1, 2020)............................ 21

*Mason v. Cont'l Grp., Inc.*,
   474 U.S. 1087 (1986).................................................. 7

*Moyer v. Michaels Stores, Inc.*,
   2014 WL 3511500 (N.D. Ill. July 14, 2014)........................... 4

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009), *as amended* ................ 24

*Oplchenski v. Parfums Givenchy, Inc.*,
   2007 WL 495289 & n.1 (N.D. Ill. Feb. 12, 2007) ..................... 4

*Orr v. Assurant Emp. Benefits*,
   786 F.3d 596 (7th Cir. 2015) ........................................ 8

*Patterson v. Morgan Stanley*,
   2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)............................. 23

*Pegram v. Herdrich*,
   530 U.S. 211 (2000).................................................. 11

*Powell v. A.T.& T. Commc'n, Inc.*,
   938 F.2d 823 (7th Cir. 1991) ..................................... 1, 2, 7

*Reilly v. Cont'l Cas. Co.*,
   2013 WL 12448095 & n.6 (N.D. Ill. Dec. 17, 2013).................... 7

*Rogers v. Baxter Int'l Inc.*,
   710 F. Supp. 2d 722 (N.D. Ill. 2010) ............................... 23

*Romero v. Nokia, Inc.*,
   2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) .......................... 24

*Schultz v. Quaker Oats Co.*,
   1999 WL 90629 (N.D. Ill. Feb. 9, 1999) ........................... 7, 10

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
   2018 WL 1384300 (N.D. Ill. Mar. 19, 2018).......................... 11

*Spivey v. S. Co.*,
   427 F. Supp. 2d 1144 (N.D. Ga. 2006) ............................... 9

*Springer v. Wal-Mart Associates' Grp. Health Plan*,
   908 F.2d 897 (11th Cir. 1990) ...................................... 9

*Summers v. State St. Bank & Tr. Co.*,
   453 F.3d, 404 (7th Cir. 2006) ...................................... 14

# TABLE OF AUTHORITIES
(continued)

**Cases**                                                              **Page(s)**

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ................................................................. 19

*Tracey v. MIT*,
   2017 WL 4478239 (D. Mass. Oct. 4, 2017) ........................................ 19

*Tuhey v. Illinois Tool Works, Inc.*,
   2017 WL 3278941 (N.D. Ill. Aug. 2, 2017) .......................................... 7

*U.S.A., Inc.*,
   541 F. Supp. 3d 496 (D.N.J. 2021) ...................................................... 13

*White v. Chevron Corp.*,
   2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ..................................... 23

*Williams v. Rohm & Haas Pension Plan*,
   2003 WL 22271111 (S.D. Ind. Sept. 26, 2003) ..................................... 9

*Zhou v. Guardian Life Ins. Co. of Am.*,
   295 F.3d 677 (7th Cir. 2002) ........................................................ 1, 6, 7

**Statutes**

29 U.S.C. § 1002(16) ............................................................................. 12

29 U.S.C. § 1102(a) .......................................................................... 11,12

29 U.S.C. § 1103(a)(1) .......................................................................... 11

29 U.S.C. § 1104(a) .................................................................... 21, 22, 25

29 U.S.C. § 1105 ........................................................................... 24, 25

29 U.S.C. § 1106 ............................................................................ 16-20

29 U.S.C. § 1107(d)(6)(A) ...................................................................... 3

29 U.S.C. § 1108 ........................................................................... 15. 19

Del. Code Ann. tit. 8, § 141 ................................................................... 13

**Regulations**

29 C.F.R. § 2520.102–3(t)(2) ................................................................... 9

**Other Authorities**

DOL Field Assistance,
   Bulletin No. 2004-03 (Dec. 17, 2004) ................................................. 14

## INTRODUCTION

Plaintiff Matthew Daly worked for Defendant West Monroe Partners, Inc. ("West Monroe") between 2015 and 2020, during which time 313 shares of West Monroe stock were allocated to his account in the West Monroe Partners Employee Stock Ownership (the "Plan"). Plaintiff voluntarily terminated his employment with West Monroe on November 9, 2020. In the summer of 2021, Plaintiff elected to receive a full distribution of his account with the Plan. Accordingly, after receiving directions from West Monroe, the Plan's trustee, Argent Trust Company, Inc. ("Argent"), distributed Plaintiff's stock in the Plan to him in September 2021, and West Monroe then immediately redeemed Plaintiff's shares for cash, at a share price based on the most recent annual valuation of West Monroe as of December 31, 2020 (which Argent completed in April 2021) (the "12/31/20 Valuation"). Although Plaintiff received precisely what he expected—and exactly what he was owed—based on the valuation that had been completed only months earlier, he has now sued under the Employee Retirement Income Security Act ("ERISA"). Plaintiff alleges that West Monroe should have repurchased his shares at a higher price because a private equity firm, MSD Partners L.P. ("MSD"), subsequently purchased 50% of West Monroe at a higher share price after West Monroe redeemed his shares.

"As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies" where a plan document requires such administrative exhaustion, as the Plan Document here requires. *See Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002). "This requirement furthers the 'goals of minimizing the number of frivolous lawsuits'[,]" *id.*, and "enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies." *Powell v. A.T.& T. Commc'n, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). Plaintiff did not file a claim with the Plan prior

to filing this lawsuit, and he cannot circumvent the Plan's exhaustion requirement by characterizing his claims as statutory violations for ERISA breach of fiduciary duty. *See id.* at 825 ("[T]the strong federal policy encouraging private resolution of ERISA-related disputes mandates the application of the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA."). Plaintiff's complaint should, accordingly, be dismissed on this basis alone.

In addition to his failure to exhaust administrative remedies, Plaintiff fails to state a claim against most of the Defendants. To begin with, most of the Defendants were not acting as ERISA fiduciaries with respect to the actions at issue in the complaint. Among the West Monroe Defendants,[1] only the Committee acted in an ERISA fiduciary capacity as the Plan's administrator. West Monroe and the Board retained, at most, a limited duty to monitor the Committee, a duty which they are not plausibly alleged to have breached. And the Individual Committee Defendants and Individual Board Defendants did not function as ERISA fiduciaries with respect to the actions at issue in the complaint. With respect to Plaintiff's distribution in 2021, Argent functioned only as a "directed trustee," and had no legal authority—much less a fiduciary obligation—to disobey a proper direction from the West Monroe Defendants to distribute shares to Plaintiff.

Although Argent conducted the 12/31/20 Valuation (on which the repurchase price was based), Plaintiff fails to plausibly allege that Argent acted imprudently in making that valuation. Prudence is judged by the diligence of a fiduciary's process, and the complaint does not identify any asserted flaw in Argent's valuation process. Instead, Plaintiff's challenge to the valuation rests exclusively on the hindsight observation that MSD later agreed to buy West Monroe's stock at a

---

[1] "West Monroe Defendants" collectively refers to West Monroe, the Benefits Committee of West Monroe Partners, Inc. ("Committee"), the Board of Directors of West Monroe Partners, Inc. ("Board"), and thirty unidentified individual members of the Committee and the Board (the "Individual Committee Defendants" and the "Individual Board Defendants," respectively).

2

substantially higher price. But it is black letter law that imprudence claims must be based on the facts available to a fiduciary at the time a challenged decision was made, and later shifts in stock price—even significant ones—cannot establish a claim for breach. In the absence of any allegation that Argent overlooked or unreasonably misjudged reasonably knowable facts at the time it rendered the 12/31/20 Valuation, the complaint's challenge to that valuation must be dismissed.

Plaintiff's prohibited transaction, monitoring, and co-fiduciary claims all also fail to state a claim. Given that West Monroe repurchased shares from Plaintiff, not from the Plan, ERISA's prohibited transaction rules do not apply. And Plaintiff's monitoring and co-fiduciary allegations are conclusory and ignore the circumscribed roles of each Defendant.

Given his failure to exhaust administrative remedies, Plaintiff's complaint should be dismissed in its entirety on that basis alone. In the alternative, all of Plaintiff's ERISA claims should be dismissed under Rule 12(b)(6) as against all Defendants other than the Committee; and the prohibited transaction, monitoring, and co-fiduciary claims should also be dismissed as against the Committee.

## BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiff brings this lawsuit purportedly on behalf of himself, the Plan, and a proposed class of terminated Plan participants against the West Monroe Defendants and Argent. *Id*. ¶ 12. The Plan was an employee stock ownership plan, or "ESOP," that invested primarily in "qualifying employer securities" (i.e., West Monroe stock). *See id*. ¶ 27; 29 U.S.C. § 1107(d)(6)(A). West Monroe sponsored the Plan and, along with the Board, is a named fiduciary of the Plan. *Compl*. ¶¶ 13-14. Plaintiff alleges that the Committee is "appointed by the Board" and "administers the Plan on behalf of the Company." *Id*. ¶ 15. West Monroe employees were automatically enrolled in the Plan, and West Monroe stock was allocated to participants' accounts over time. *Id*. ¶ 33.

In the relevant period, Argent served as the Plan's trustee. *Id*. ¶ 16. In that capacity,

Argent was responsible for annually determining, with the assistance of an independent appraiser, the value of the West Monroe stock held in the Plan as of the end of each calendar year. *Id.* ¶¶ 16, 39. In April 2021, Argent completed the 12/31/20 Valuation, placing the value of West Monroe's stock at $515.18 per share at that time. *Id.* ¶ 43. The 12/31/20 Valuation indicated a 19.2% appreciation in the stock's value in 2020. *Id.* ¶¶ 53-54.

After the 12/31/20 Valuation was completed, Plaintiff elected sometime between June 11 and August 9, 2021 to receive a full distribution of his Plan account. *Id.* ¶ 76. The Committee approved former participants' distribution elections in August 2021, and recommended that the Board authorize West Monroe's repurchase of participants' shares immediately following the distribution, which the Board did in September 2021. *See id.* ¶¶ 77-78. Under the Plan, Argent was charged with distributing shares credited to participant accounts "as directed by the Company." Dkt. 57-5 (Plan Document) § 10.1.[2] Argent complied with West Monroe's direction to Argent to "release" (i.e., distribute) from the Plan shares allocated to Plaintiff's account (and those of other participants who elected distributions). Compl. ¶ 77. After Argent distributed the shares to Plaintiff as instructed, West Monroe immediately repurchased them at a price of $515.18, consistent with the 12/31/20 Valuation. *Id.*

The Plan provided that the value of West Monroe shares payable to a terminated participant "must be determined as of the most recent Valuation Date under the Plan." *Id.* ¶ 40. The Plan defined the "Valuation Date" as "the last day of the Plan year"—December 31—or any other "date

---

[2] The Court may consider the Plan Document because it is referenced in Plaintiff's complaint and central to Plaintiff's claims. *See Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, at *1 (N.D. Ill. July 14, 2014); *see also Oplchenski v. Parfums Givenchy, Inc.*, 2007 WL 495289, at *1 & n.1 (N.D. Ill. Feb. 12, 2007) ("The Court may consider the ERISA plan documents referenced within Plaintiffs' Third Amended Complaint without converting the Motion to Dismiss to a motion for summary judgment."). The Plan Document is also publicly available on the docket, which Plaintiff cited in the parties' Joint Status Report. *See* Dkt. 73 at 8.

or dates deemed necessary or appropriate by the Administrator for the valuation of Participants' Account during the Plan Year." *Id.* No updated valuation was commissioned. *Id.* ¶ 41.

A few weeks after Plaintiff received his distribution, West Monroe sold 50% of its stock to a third-party, MSD. *Id.* ¶¶ 5, 64, 80. The deal with MSD valued West Monroe at approximately $2.5 billion, which the complaint alleges equated to $2,500 per share. *Id.* ¶¶ 5, 64. To effectuate the sale to MSD, the West Monroe shares held in the Plan were sold to a newly formed corporation; the Plan was terminated; and MSD and West Monroe each became the owner of approximately 50% of the shares previously held in the Plan. *Id.* ¶¶ 65, 80. Argent, as trustee, approved the transaction with MSD on behalf of the Plan and was a party to the October 5, 2021 stock purchase agreement. *Id.* ¶ 65. The cash proceeds from the sale of the West Monroe stock held by the Plan were allocated among Plan participants who, unlike Plaintiff, had not previously elected and received a distribution of the shares in their Plan accounts. *Id.* ¶ 80.

Plaintiff alleges that, in light of the value reflected in the subsequent sale to MSD, he was entitled to a higher per-share price from West Monroe when it repurchased the stock Argent had distributed to him, and that the Plan's administrator (which, by delegation, was the Committee) should have called for an updated valuation based on information that emerged in negotiations with MSD. Plaintiff also contends that Argent used a deficient process to arrive at the 12/31/20 Valuation later used by West Monroe to buy back his shares, basing this claim solely on the price that MSD agreed to pay for West Monroe's stock months after completion of the 12/31/20 Valuation in October 2021. Based on these core allegations, Plaintiff brings claims against the West Monroe Defendants and Argent for breach of fiduciary duties under ERISA (Count I) and violation of ERISA's prohibited transaction provisions (Count II). Plaintiff also asserts ERISA derivative co-fiduciary liability and failure to monitor claims, purportedly against all Defendants

(Counts III and IV), a Delaware law fiduciary breach claim against only the Board (Count V), and claims that the Plan's administrator was a few weeks too slow in providing the documents he requested under ERISA (Count VI).

The Plan sets forth a "Claims Procedure," which provides that "[c]laims for benefits under the Plan shall be made in writing to the [Plan] Administrator," who "shall have full discretion to render a decision with respect to ***any claim***." Dkt. 57-5 (Plan Document) § 12.4 (emphasis added). Plaintiff did not file a claim with the Plan prior to filing this lawsuit.

## LEGAL STANDARD

Motions to dismiss are an "important mechanism for weeding out meritless" ERISA suits, and courts accordingly must apply "careful, context-sensitive scrutiny" when evaluating ERISA allegations. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). A Rule 12(b)(6) motion to dismiss tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks omitted).

## ARGUMENT

**I.    Plaintiff has not exhausted administrative remedies under the Plan as required before he may bring his claims in court.**

The complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies under the Plan before filing suit. "As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies." *Zhou*, 295 F.3d at 679. "This requirement

furthers the 'goals of minimizing the number of frivolous lawsuits'", *id.*, and "enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies." *Powell*, 938 F.2d at 826.

In *Powell*, the Seventh Circuit reaffirmed that "the strong federal policy encouraging private resolution of ERISA-related disputes mandates the application of the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA." *Id.* at 825. For two decades, this Court has uniformly applied *Powell* in holding that the administrative exhaustion requirement applies to claims for ERISA breach of fiduciary duty. *See Tuhey v. Illinois Tool Works, Inc.*, 2017 WL 3278941, at *8 (N.D. Ill. Aug. 2, 2017); *Reilly v. Cont'l Cas. Co.*, 2013 WL 12448095, at *3 & n.6 (N.D. Ill. Dec. 17, 2013); *Ahr v. Commonwealth Edison Co.*, 2005 WL 6115023, at *9 (N.D. Ill. Feb. 24, 2005); *Schultz v. Quaker Oats Co.*, 1999 WL 90629, at *6 (N.D. Ill. Feb. 9, 1999). In his portion of the Rule 26(f) report, Plaintiff identifies only one case that discusses *Powell,* in which the district court claims that *Powell* is "unpersuasive." *See Korchek v. Nichols-Homeshield, Inc.*, 1997 WL 619869, at *6 (N.D. Ill. Sept. 30, 1997); Dkt. 73 at 7-8. *Korcheck*, however, is an outlier as every other opinion of this Court that discusses *Powell* follows the rule laid down by the Seventh Circuit in that case. *See supra* at 7 (collecting cases). None of the other cases cited by Plaintiff even mention *Powell*. *See* Dkt. 73 at 9 n.2.[3]

---

[3] Plaintiff's suggestion that Chief Justice John Roberts wrote in a concurring opinion that exhaustion was not required for breach of fiduciary duty claims is wrong. *See* Dkt. 73 at 7-8; *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 259 at n.* (2008) (Roberts, C. J., concurring) ("Sensibly, the Court leaves open the question whether exhaustion may be required of a claimant who seeks recovery for a breach of fiduciary duty under § 502(a)(2)."). While there is a circuit split on this issue, this Court remains bound by Seventh Circuit precedent. *See, e.g., Mason v. Cont'l Grp., Inc.*, 474 U.S. 1087 (1986) (White, J., dissenting from denial of certiorari) ("[T]he Eleventh Circuit ruled that beneficiaries . . . must exhaust internal plan remedies before

"Generally, a failure to exhaust administrative remedies will be excused in few limited circumstances—when resort to administrative remedies would be futile, when the remedy provided is inadequate, or where there is a lack of access to meaningful review procedures." *Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 602 (7th Cir. 2015) (citations omitted). None of those circumstances are present here.

*First*, Plaintiff argues that under both the Plan's Claims Procedure and ERISA—each of which use the phrase "claim[s] for benefits under the plan"—his claim cannot be subject to exhaustion because it is "based on a breach of ERISA's statutory requirements rather than the terms of the Plan." Dkt. 73 at 10. Not so. To begin with, Plaintiff's complaint alleges that, by relying on the 12/31/20 Valuation, Defendants "violated the terms of the Plan." Compl. ¶¶ 42, 102. The amount of benefits to which Plaintiff is entitled under the terms of the Plan is unquestionably a "claim for benefits under the plan," Dkt. 73 at 8, and requires the Plan's administrator to exercise its "authority and discretion . . . to interpret the provisions of the Plan [and] to determine all questions relating to the eligibility, benefits . . . of Employees, Participants, and beneficiaries under the Plan." Dkt. 57-5 (Plan Document) § 12.3. Moreover, the Seventh Circuit has already rejected the argument that exhaustion should not apply where a "suit involves purported violations of ERISA, rather than the provisions of a particular pension plan." *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1245 (7th Cir. 1983).

*Second*, Plaintiff argues that exhaustion should not apply because the Plan's Summary Plan Description ("SPD") informs participants, as it is required to do under Department of Labor ("DOL") Regulations, that "If ESOP fiduciaries misuses the plan's money . . . you may file suit in

---

suing plan fiduciaries on the basis of an alleged violation of duties imposed by the statute. Although this ruling is consistent with the law of the Seventh Circuit . . . it is at odds with a decision of the Ninth Circuit[.]").

a federal court." *See* Dkt. 73 at 8 (quoting SPD); *see also Spivey v. S. Co.*, 427 F. Supp. 2d 1144, 1153–54 (N.D. Ga. 2006) ("The cited sentence is taken, almost verbatim, from the 'model' language provided by the Department of Labor to inform plan participants of their general rights under ERISA. *See* 29 C.F.R. § 2520.102–3(t)(2) ("If it should happen that plan fiduciaries misuse the plan's money . . . you may file suit in a Federal court.").").  Accordingly, under Plaintiff's theory, exhaustion of breach of fiduciary duty claims would never be required—which directly contradicts Seventh Circuit precedent.  *See supra* at 7.  It is no wonder that the Eleventh Circuit, whose exhaustion precedent most closely mirrors that of the Seventh Circuit, *see supra* at n.3, has described Plaintiff's argument as "frivolous."  *See Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 900 (11th Cir. 1990) (reversing district court decision that had excused exhaustion based on "Plan language . . . [that] merely recites beneficiaries' general rights under ERISA . . . to seek federal court review").  *See also Spivey*, 427 F. Supp. 2d at 1153–54 (applying *Springer* to a fiduciary breach class action).[4]

*Third*, Plaintiff argues that exhaustion is not appropriate for "class-wide" claims.  Dkt. 73 at 9.  But the Seventh Circuit has applied the exhaustion requirement to class-wide claims, *see Kross,* 701 F.2d at 1245, and "[t]he prospect of there being potentially many plaintiffs underscores the benefit of there being a full administrative examination of these issues."  *Williams v. Rohm & Haas Pension Plan*, 2003 WL 22271111, at *4 (S.D. Ind. Sept. 26, 2003).  This Court has similarly required exhaustion for class-wide breach of fiduciary duty claims, and, in doing so, rejected

---

[4] There is no conflict between Eleventh and Seventh Circuit precedent on this issue.  In the cases cited by Plaintiff, the plans made misleading statements to participants and then tried to use the fact that the participants missed an internal appeals deadline to preclude any federal court review of the claims.  *See Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 811 (7th Cir. 2000); *Lauth v. Prudential Ins. Co., of Am.*, 2006 WL 1302355, at *7 (N.D. Ill. May 5, 2006).  By contrast, Plaintiff does not allege that anyone made misleading statements and, in any event, Plaintiff may still seek review in federal court if, after he files a claim, he is dissatisfied with the Plan's decision.

Plaintiff's argument that a purported conflict of interest excuses exhaustion. *See Schultz*, 1999 WL 90629, at *5-*6. *See also Ames v. Am. Nat. Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999) ("Finally, the fact that the individual named defendants would be the people reviewing the plaintiffs' administrative appeals is not enough to relieve plan participants of the duty to exhaust remedies.").

*Finally*, Plaintiff's argument that "[t]here are no procedures to exhaust" because "the Plan no longer exists" is directly contradicted by the amendment to the Plan that Plaintiff cites in support of this argument. *See* Dkt. 73 at 7 (citing Dkt. 54-4). That amendment specifically identifies which "Plan provisions shall no longer be in effect" as a result of the termination, *see* Dkt. 54-4 at § 16.3, and that list does not include the Plan's Claims Procedure. Moreover, the amendment explains that although "the Plan is hereby terminated" such that "[n]o new participants shall become eligible," the Plan "must" retain "$50,000,000" until at least two years after the closing of an agreement signed on October 5, 2021 (*i.e.*, at least until October 2023), and expressly states that "claims pertaining to the administration or operation of the Plan" may still be filed at least up until October 2023. *See id.* at § 16.5(a), (e).[5]

## II. Even assuming administrative exhaustion is not required, Plaintiff fails to plausibly allege that most Defendants were acting as ERISA fiduciaries or breached any fiduciary responsibility with respect to the actions subject to complaint.

The "threshold question" for courts evaluating ERISA breach of fiduciary duty claims is "whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function)

---

[5] Plaintiff's cases do not support his claim that plan termination automatically excuses exhaustion. *See* Dkt. 73 at 8. To the contrary, the cases he cites explain that exhaustion is not appropriate "*if* the entire plan procedure has been dismantled . . . [such that plaintiff] did not have, meaningful access to the plan procedures." *Baker v. Universal Die Casting, Inc.*, 725 F. Supp. 416, 419–20 (W.D. Ark. 1989) (emphasis added). *See also Anselmo v. W. Paces Hotel Grp., LLC*, 2011 WL 1049776, at *5 (D.S.C. Jan. 7, 2011) ("meaningful access to internal procedures *may* be denied where a plan is terminated") (emphasis added). As described in the preceding paragraph, the Plan Document in this case confirms that the relevant plan procedures have ***not*** been dismantled.

when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). To sustain his ERISA claims—all of which challenge alleged fiduciary breaches or actions taken in a fiduciary capacity—Plaintiff must plausibly allege that ***each*** of the Defendants was acting as a fiduciary with respect to the actions subject to complaint.

ERISA distinguishes between *named fiduciaries*, designated in the written instrument governing a plan, *see* 29 U.S.C. § 1102(a)(2), and *functional fiduciaries*, who become fiduciaries by virtue of the actions they take or the authority they assume on behalf of the plan. *See id*. § 1002(21). A person who is not a named fiduciary is a functional fiduciary only "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* The "to the extent" language is critical because it indicates that "fiduciary status under ERISA is not an all-or-nothing concept." *Scott v. Aon Hewitt Fin., Advisors, LLC*, 2018 WL 1384300, at *7 (N.D. Ill. Mar. 19, 2018). Rather, a person can be a fiduciary for one purpose without becoming a fiduciary for all purposes. *See Pegram*, 530 U.S. at 225-26. Additionally, ERISA recognizes that plans may provide for *directed trustees*, who are "subject to the direction of a named fiduciary who is not a trustee." *See* 29 U.S.C. § 1103(a)(1).

### A. Plaintiff fails to plausibly allege that West Monroe was acting as a fiduciary.

Plaintiff alleges that West Monroe was the "Plan's sponsor." Compl. ¶ 13. But "plan sponsorship by itself does not create fiduciary status, because it is merely a corporate or settlor function." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 447 (D. Md. 2005); *see also Lively v. Dynegy, Inc.*, 420 F. Supp. 2d 949, 953 (S.D. Ill. 2006) (holding defendants acting as "plan sponsors or 'settlors' . . . were not acting in a fiducial capacity and therefore could not breach any fiduciary duty").

Plaintiff also makes the conclusory allegation that West Monroe was "the 'administrator'

11

of the Plan under 29 U.S.C. § 1002(16), and a named fiduciary under 29 U.S.C. § 1102(a)." Compl. ¶ 13. But the complaint further alleges that "[t]he Benefits Committee . . . administers the Plan **on behalf of the Company**." *Id*. ¶ 15 (emphasis added). Having allegedly delegated its ERISA fiduciary authority to the Committee, West Monroe retained only a limited duty to monitor the Committee's actions. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011); *see also Acosta v. Chimes D.C., Inc.*, 2019 WL 931710, at *18 (D. Md. Feb. 26, 2019) (holding where "the named fiduciary and plan administrator . . . delegated its duties under ERISA," it retained only a "relatively narrow" "duty to monitor appointees"); Compl. ¶ 30 ("A fiduciary who delegates its fiduciary responsibility to another nonetheless retains a duty to appoint and monitor that delegate's performance of its delegated responsibilities . . . ."). As discussed below, Plaintiff has failed to plausibly allege West Monroe breached any duty to monitor the Committee. *See infra* at 23-24.

## B. Plaintiff fails to plausibly allege that the Board, Individual Board Defendants, or Individual Committee Defendants were acting as fiduciaries.

Plaintiff also asserts claims against the Board, Individual Board Defendants, and Individual Committee Defendants, but likewise fails to plausibly allege that they were acting as fiduciaries with respect to the challenged actions. *See* Compl. ¶¶ 14, 17. As to the Board, the complaint alleges that it was both a named and functional fiduciary with the "authority to exercise all the powers of the Company, including with respect to the Plan"—specifically, the "power to appoint the members of the Benefits Committee; to appoint the Plan's Trustee; and to direct the Trustee and the Company with respect to the purchase, sale, and distribution of Company stock." *Id.* ¶ 14.

At most, Plaintiff alleges that the Board functioned as an appointing fiduciary with respect to the Committee's fiduciary duties regarding plan administration. But an appointing fiduciary retains only a limited duty to monitor its appointees, *see supra* at 12, and Plaintiff has failed to

plausibly allege that the Board breached any duty to monitor the Committee. *See infra* at 23-24.[6]

As to the Individual Board and Committee Defendants, Plaintiff does not plausibly allege that any of them had individual discretionary authority. Rather, the complaint only makes the conclusory allegation that "the Committee and its members were also fiduciaries . . . because they exercised discretionary authority and control respecting management and administration of the Plan." Compl. ¶ 14. Another court recently held a virtually identical allegation failed to state a claim. *See Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 541 F. Supp. 3d 496, 509 (D.N.J. 2021) ("The only apparently relevant allegation in the complaint is the conclusory assertion that 'the Committee and each of its members were fiduciaries of the Plan during the Class Period because each exercised discretionary authority over management or disposition of Plan assets.' This allegation is insufficient to plausibly plead that the individual Committee members were fiduciaries.") (cleaned up). Not even this conclusory allegation is made against the Individual Board Defendants, presumably because West Monroe is a Delaware corporation, Compl. ¶ 13, and Delaware law does not give individual corporate directors authority to act on behalf of a board. *See* Del. Code Ann. tit. 8, § 141 (providing that any "act of the board" requires "[t]he vote of the ***majority of the directors*** present at a meeting at which a quorum is present") (emphasis added).

### C. Plaintiff fails to plausibly allege that Argent, as directed trustee, had the legal authority—much less a fiduciary obligation—to disobey the direction to distribute shares of West Monroe stock from the Plan.

With respect to Plaintiff's distribution in 2021, Argent functioned only as a directed trustee, which had no legal authority—much less a fiduciary obligation—to disobey a direction from the West Monroe Defendants. Under the terms of the Plan, as trustee, Argent was to make

---

[6] The Board is also alleged to have appointed Argent as the Plan's directed trustee, but Plaintiff's theory against Argent in its capacity as directed trustee is simply that it followed the Board's instructions to distribute shares. *See infra* at 14-16. No relevant duty to monitor Argent exists or could have been breached on the facts alleged.

"distribution[s] . . . as *directed by the Company*." *See* Dkt. 57-5 (Plan Document) § 10.1 (emphasis added); *see also* Compl. ¶¶ 13-14 (alleging West Monroe and its Board had authority to direct Argent with respect to distributions), 77 (alleging the Board directed Argent to distribute shares). A directed trustee ordinarily "cannot be liable for obeying the directions of the fiduciary named in the plan." *Summers v. State St. Bank & Tr. Co.*, 453 F.3d, 404, 406 (7th Cir. 2006). Only "when it is plain" that such a fiduciary's instructions "are imprudent" does a directed trustee have the discretion—and duty—not to comply with them. *Id.*; *see also, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 2012 WL 6021097, at *2 (S.D.N.Y. Dec. 4, 2012) ("[L]iability is limited to instances in which [a directed trustee] fails to follow … proper directions or … complies with directions that are improper, or contrary to the Plan or ERISA." (quotation marks omitted)). A directed trustee has no "independent obligation to determine the prudence of every transaction" or "to duplicate or second-guess the work of the plan fiduciaries that have discretionary authority over the management of plan assets." DOL Field Assistance Bulletin No. 2004-03 (Dec. 17, 2004).[7]

Nothing in the complaint plausibly suggests that Argent had any reason to question West Monroe's instruction to distribute to Plaintiff the shares allocated to his Plan account. Plaintiff takes issue with West Monroe's use of the 12/31/20 Valuation of $515.18 per share when it "immediately and automatically repurchased the shares" distributed to him by Argent. Compl. ¶ 77. But he does not plead facts indicating that Argent was responsible for determining the value West Monroe used to repurchase the shares. Nor does the complaint plausibly suggest that Argent had fiduciary responsibility for anything that happened after the shares left the Plan.

Plaintiff contends that Argent's duty of prudence required it to ensure West Monroe used

---

[7] *See* https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2004-03 (last accessed July 29, 2022).

an updated valuation when it repurchased Plaintiff's shares, citing *Donovan v. Cunningham*, 716 F.2d 1455, 1473 (5th Cir. 1983). Compl. ¶ 97. *Donovan*, however, involved an entirely different situation and does not suggest the existence of any such duty in the circumstances here. At issue in *Donovan* was an ESOP committee's discretionary fiduciary decision to purchase company stock from an employer. Such a transaction is "prohibited" under 29 U.S.C. § 1106 unless the conditions set forth in 29 U.S.C. § 1108(e) are satisfied, and the court accordingly held that the discretionary fiduciaries who authorized the purchase were obligated to conduct a prudent inquiry to ensure the 29 U.S.C. § 1108(e) conditions were satisfied. Argent, by contrast, merely distributed Plaintiff's shares to him in accordance with Plaintiff's own election and West Monroe's direction. *Donovan* has no application to Plaintiff's claim against Argent, both because distributions to participants are not prohibited transactions under ERISA § 406, *see infra* at 17-18—to the contrary, distributing shares to participants is the Plan's raison d'etre—and because Argent was a directed trustee carrying out a direction it had no discretion to reject in the circumstances, *infra* at 19-20.[8]

Unable to allege plausibly that Argent had an obligation as directed trustee to disobey a direction regarding the distribution, Plaintiff attempts to repackage his failed theory by alleging Argent had a duty to inform Plaintiff of West Monroe's **possible** sale to MSD before Plaintiff elected a distribution of the shares in his Plan account. *See* Compl. ¶¶ 80-84, 98. But Argent's fiduciary duties as directed trustee were "extremely narrow." *F.W. Webb Co. v. State St. Bank & Tr. Co.*, 2010 WL 3219284, at *13 (S.D.N.Y. Aug. 12, 2010). A directed trustee does not have an

---

[8] Plaintiff's claim that Defendants violated the Plan Document (*see* Compl. ¶ 102) fails for the same basic reason. The cited Plan provisions requiring that fair market value be determined as of the date of the transaction apply specifically to sales of Company stock by the Plan, *see* Dkt. 57-5 (Plan Document) § 5.2, and to transactions "between the Plan and a disqualified person," *id.* § 5.4. Neither applies to West Monroe's repurchase of Company stock after it was distributed from the Plan to a former employee like Plaintiff.

affirmative obligation to disclose to participants possible but uncertain business decisions by an independent company like West Monroe. *See Harley v. Bank of N.Y. Mellon*, 2017 WL 78901, at *24 (S.D.N.Y. Jan. 9, 2017) (rejecting argument that directed trustee had an "affirmative duty to disclose" information affecting aspects of transaction beyond the scope of the transfer directed trustee was instructed to execute). And Plaintiff alleges nothing to suggest that Argent made an "intentionally misleading statement, or a material omission" that could "be construed as misleading" with respect to his distribution decision. *See Howell*, 633 F.3d at 571. Indeed, the duty does not even require disclosure of "all information about … business decisions in real time" simply because those decisions could affect the value of company stock. *Id.* at 572. The only role Plaintiff alleges Argent had in the distribution of shares from his Plan account was following West Monroe's direction to release shares from the Plan to him. *See* Compl. ¶ 77.

The complaint, moreover, does not allege facts supporting an inference that Argent knew about a prospective sale to MSD or its possible impact on the Plan before Plaintiff elected a distribution of his account (which the complaint alleges occurred between June 11 and August 9, 2021). *See id.* ¶ 76. To the contrary, the complaint only alleges that "as early as July 2021, *news leaked to certain employees inside the Company* that the Company was considering terminating the ESOP," *id.* ¶ 83 (emphasis added), not that news leaked to Argent. And while the complaint speculates that unspecified "Defendants" "would have obtained an up-to-date valuation … more than one month before they entered the sale agreements on October 7, 2021," *id.* ¶ 70, such speculation does not support a plausible inference that *Argent* had relevant knowledge when Plaintiff elected a distribution by no later than August 9, 2021. *Id.* ¶ 76.

## III.    Plaintiff fails to state a prohibited transaction claim.

Subject to statutory and regulatory exemptions, 29 U.S.C. § 1106(a)(1)(A) and (D) generally prohibit fiduciaries from "caus[ing] the plan to engage in a transaction" that they "know[]

16

or should know" "constitutes a direct or indirect": "sale or exchange of property between the plan and a party in interest," 29 U.S.C. § 1106(a)(1)(A), or "transfer of plan assets to a party in interest or use of plan assets by or for the benefit of a party in interest." *Id.* § 1106(a)(1)(D). In Count II, the complaint alleges that Defendants violated these provisions "[b]y causing the direct or indirect transfer of Company stock held by the Plan to Defendant West Monroe," "causing the Company to purchase such stock for less than fair market value," and "otherwise using Company stock for the benefit of Defendant West Monroe and certain of its senior employees." Compl. ¶ 111. The complaint also alleges that the West Monroe Defendants "[d]ealt with assets of the Plan in their own interest," "[a]cted in a transaction involving the Plan on behalf of a party whose interests were adverse to the Plan," and "[r]eceived consideration for their own personal account from a party dealing with the Plan," purportedly in violation of 29 U.S.C. § 1106(b). *See* Compl. ¶ 112. The complaint does not state a claim with respect to any of these theories.

### A. The complaint does not plausibly allege transactions prohibited under 29 U.S.C. § 1106.

Plaintiff's prohibited transaction claims fail because the complaint does not allege facts establishing a direct or indirect sale of West Monroe stock from the Plan to West Monroe (or any other party in interest) or a direct or indirect transfer of Plan assets from the Plan to West Monroe. Rather, the complaint alleges that Argent distributed shares of West Monroe stock from the Plan to Plaintiff, and that West Monroe then repurchased the shares from Plaintiff, with Plaintiff receiving the proceeds. *See* Compl. ¶ 77; *see also id.* ¶ 36 (Plan provides that balances may be distributed as "Company stock subject to the requirement that the Company stock be immediately sold back to the Company[.]" ).

The distribution of West Monroe stock from the Plan to Plaintiff was not a prohibited transaction. First, 29 U.S.C. § 1106(a) by its terms applies only to transactions between a plan and

a party in interest, and Plaintiff was not a party in interest. *See Chao v. Hagemeyer N. Am., Inc.*, 2006 WL 8443663, at *7 (D.S.C. Oct. 20, 2006) (recognizing that former employees are not "parties in interest"). Second, the Supreme Court has held that "the payment of benefits . . . is not a 'transaction' in the sense that Congress used that term in § 406(a) [29 U.S.C. § 1106(a)]." *See also Chao*, 2006 WL 8443663, at *9 (dismissing claim that ESOP fiduciaries violated 29 U.S.C. § 1106(a)(1)(A) and (D) by "order[ing] a distribution of benefits at an incorrect valuation").

Nor does the fact that Plaintiff entered into a *different* transaction with West Monroe after receiving his shares of stock from the Plan transform the routine distribution to a former employee into a prohibited "indirect" transaction between the Plan and West Monroe. 29 U.S.C. § 1106(a) (covering both "direct" and "indirect" transactions). That the "sale" or "exchange" of Plaintiff's shares of West Monroe stock occurred between Plaintiff and West Monroe, rather than the Plan and West Monroe, is evident because Plaintiff, not the Plan, received the cash West Monroe paid to purchase those shares. *See* Compl. ¶¶ 12, 77. Similarly, when Argent distributed Plaintiff's shares to him, the shares ceased to be "assets of the plan" to which 29 U.S.C. § 1106(a)(1)(D) applied, confirming that no "assets of the plan" were transferred, directly or indirect, from the Plan to West Monroe. "[T]he assets of a plan generally are to be identified on the basis of ordinary notions of property rights." *In re Fid. ERISA Float Litig.*, 829 F.3d 55, 60 (1st Cir. 2016). And under "ordinary notions of property rights," the owner of shares of stock is the person who has a legal right to exchange them for cash, as Plaintiff (not the Plan) did here.

Further, Plaintiff's claim under 29 U.S.C. § 1106(a)(1)(D)—including the vague, factually unsupported allegation that Defendants "us[ed] Company stock for the benefit of … West Monroe and certain of its senior employees," Compl. ¶ 111—also fails because the complaint does not plead facts plausibly suggesting that any of the Defendants "had [a] subjective intent to benefit" a

party in interest, as required to state a claim under that provision.  *See Sweda v. Univ. of Pa.*, 923 F.3d 320, 339 (3d Cir. 2019); *see also Tracey v. MIT*, 2017 WL 4478239, at *3 (D. Mass. Oct. 4, 2017).  And the complaint's conclusory allegation as to Argent is especially deficient because Argent is not even alleged to have been the recipient of *any* benefit.

Finally, Plaintiff's 29 U.S.C. § 1106(b) claims against the West Monroe Defendants fail for similar reasons.  Given that West Monroe repurchased shares from *Plaintiff*, none of the West Monroe Defendants "deal[t] with assets of the plan in his own interest," "act[ed] in a[] transaction involving the plan . . . [with] interests . . . adverse to the plan," or "received[] . . . consideration for his own personal account from any party dealing with such plan."  *See* 29 U.S.C. § 1108(b).

### B.  The complaint does not plausibly allege that Argent or the Individual Board or Committee Defendants "caused" the challenged transactions.

In addition to the threshold fact that, as described above, there was no prohibited transaction, the complaint does not plausibly allege that any Defendant other than the Committee "caused" the Plan to engage in any allegedly prohibited transactions, as expressly required to state a claim under 29 U.S.C. § 1106(a).  *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000) ("§ 406(a) [29 U.S.C. § 1106(a)] imposes a duty only on the fiduciary that causes the plan to engage in the transaction").  As mentioned previously, there are no plausible allegations that the Individual Board or Committee Defendants were ERISA fiduciaries and they could not cause anything.  *See supra* at 12-13.  While Plaintiff alleges that the Board directed Argent to distribute Plaintiff's shares, causation aside, the distribution of benefits is not a prohibited transaction, *see Chao*, 2006 WL 8443663, at *9, and the alleged discretion to commission an updated valuation that purportedly would have affected the price at which West Monroe repurchased Plaintiff's shares belonged only to the Plan's administrator (i.e., the Committee).

And a directed trustee like Argent "causes" a plan to engage in a transaction only if the trustee has discretion to disregard the named fiduciary's directions—i.e., if the trustee knew or should have known the instruction was contrary to the plan or ERISA. There is no causation where a directed trustee has "received a proper direction" that it was "obligated by the plan and by ERISA to follow." *Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007, 1047 (W.D. Wis. 2012), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). As explained above, the complaint does not plausibly allege that the direction to Argent to distribute shares to Plaintiff was contrary to the Plan or ERISA, that Argent controlled the valuation West Monroe used in repurchasing shares from Plaintiff, or that Argent would have had any reason to doubt the propriety of using the 12/30/20 Valuation in that transaction. *See supra* at 15-16. Argent therefore did not "cause" the challenged transactions, defeating Plaintiff's claim under 29 U.S.C. § 1106(a).

## IV.  The complaint does not plausibly allege that Argent's process for rendering the 12/31/20 Valuation was flawed.

Although the complaint's central premise is that, after Argent distributed Plaintiff's stock, West Monroe should have purchased it using an updated valuation rather than the 12/31/20 Valuation price, Plaintiff also seeks to achieve the same end—a higher pay-out—by alleging that Argent failed to conduct "a careful, diligent, and prudent investigation" when it issued the 12/31/20 Valuation. Compl. ¶¶ 96, 101. Plaintiff's challenge to Argent's process rests on the hindsight observation that, ten months after the 12/31/20 Valuation, third-party MSD agreed to buy West Monroe stock at a substantially higher price. *See id.* ¶¶ 82-83. However, it is well-established that ERISA does not countenance such hindsight-based assaults on fiduciary judgments. *See DiFelice v. US Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) ("First and foremost, whether a fiduciary's actions are prudent cannot be measured in hindsight[.]"). The complaint does not allege a single fact that Argent knew or should have known when it completed the 12/31/20 Valuation *in April*

20

*2021* that West Monroe's actual value *as of December 31, 2020* was substantially higher than $515.18 per share. *See Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 10 (1st Cir. 2009) (courts assessing allegations of breach must focus on whether "based on the facts *then known*, [the fiduciary] made an assessment after appropriate and thorough investigation"). Plaintiff's allegations therefore fail to state a claim for breach of the duty of prudence.[9]

The prudence standard demands that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a). Whether Argent acted prudently in rendering the 12/31/20 Valuation does not depend at all on the price at which West Monroe agreed to sell its stock to MSD in October 2021, but rather on "whether [Argent] engaged in a reasoned decision-making process, consistent with that of a prudent man acting in like capacity." *DiFelice*, 497 F.3d at 420; *see also Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) ("[T]he prudence standard is processed-based, not outcome-based.").

Here, the complaint does not identify any purported flaw in Argent's process for conducting the 12/31/20 Valuation. Instead, Plaintiff asks the court to infer that Argent's process must have been flawed based solely on the price that MSD later paid for West Monroe's stock in October 2021 and the relatively lower performance of other companies.[10] Compl. ¶¶ 53-63. But

---

[9] Indeed, as Plaintiff Ulery himself aptly explained, this 12/31/20 Valuation claim (among other claims) is "spurious" and not an independent claim for relief because "Fair Market Value is determined as of the transaction date, here the September 21, 2021 Redemption Date, over nine months after [the] December 31, 2020 valuation." Dkt. No. 57 at 3 (citations omitted).

[10] Again, Plaintiff Ulery has rightly criticized the complaint's attempt to compare West Monroe's stock performance to industry-wide benchmarks, because the well-accepted practice for using a "guideline public company" to value a private company is "based on a comparison of select financial metrics of the subject company . . . to the same metrics of . . . specific comparable

Plaintiff cannot state a claim for fiduciary breach based on hindsight allegations that ignore West Monroe's actual circumstances. ERISA fiduciaries are judged by the information available at the time and cannot be judged by hindsight. *See In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011) (courts cannot "rely, after the fact, on the magnitude of the [change] in the [relevant investment's] price; rather, [they] must consider the extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed"). ERISA requires "prudence, not prescience." *DeBruyne v. Equitable Life Assur. Soc. of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990). And for that very reason, courts have repeatedly held that outcomes alone are insufficient to infer that a fiduciary's process was flawed. *See Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (subsequent shifts in stock prices "are not proof that [a fiduciary] violated his duty of care"); *DeBruyne*, 920 F.2d at 465 ("The ultimate outcome of an investment is not proof of imprudence."); *Chao v. Merino*, 425 F.3d 174, 182 (2d Cir. 2006) (fiduciary's "actions are not to be judged from the vantage point of hindsight"). The complaint's exclusively hindsight-focused allegations accordingly do not state a plausible claim that Argent's process was imprudent.

## V.     The complaint does not state a disloyalty claim against Argent.

Alongside the duty of prudence, ERISA imposes an obligation for fiduciaries to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A). For purposes of this duty of loyalty, "what matters is *why* the defendant acted as he did." *In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 875 (D. Minn. 2018) (emphasis in original). To state a claim of disloyalty, "a plaintiff must allege plausible facts supporting an inference that the defendant

---

companies." *See* Dkt. No. 50 at 6 (citing Compl. ¶¶ 54-63). This Court gave Plaintiff Daly and his counsel the opportunity "to consider and incorporate, to the extent they deem necessary, the comments, suggestions, and purported corrections by Ulery's counsel when filing the amended consolidated complaint." *See* Dkt. No. 61. Despite this opportunity to correct and improve his allegations, Plaintiff Daly has refused it and persists in his original, fatally flawed complaint.

acted *for the purpose* of providing benefits to itself or someone else." *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019) (quotation marks omitted).

Although the complaint references the duty of loyalty, *see* Compl. ¶¶ 7-8, 21, 23, 99-101, it pleads no facts plausibly suggesting even a hint of a disloyal motive behind Argent's conduct. The complaint does not identify any benefit to Argent from the conduct described in the complaint, or otherwise plausibly suggest that Argent's "operative motive" in performing the 12/31/20 Valuation, or carrying out West Monroe's distribution instructions, was to serve the interests of anyone other than the Plan and its participants. Any loyalty claim against Argent therefore must be dismissed, because the complaint "includes no separate allegations to support" such a claim. *See White v. Chevron Corp.*, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016).

## VI. Plaintiff's unsupported, derivative failure to monitor claim also fails.

Count IV alleges that Defendants failed prudently to monitor their appointees. But Plaintiff has only alleged, at most, that West Monroe and the Board had a limited duty to monitor the Committee. No other Defendant—specifically, Argent, the Committee, and the Individual Board and Committee Defendants—is alleged to have made any relevant appointment or delegation, and therefore Argent, the Committee, and the Individual Board and Committee Defendants cannot possibly be liable of a derivative breach by an unidentified appointee or delegee. *See Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010).

As to West Monroe and the Board, the Seventh Circuit has recognized that the duty to monitor has "clear limits." *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 881 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011). Namely, it does not "require every appointing [fiduciary] to review all business decisions of Plan administrators" because "that standard would defeat the purpose of having trustees appointed to run a benefits plan in the first place." *Howell*, 633 F.3d at 573. Instead, "courts have properly taken a restrictive view of the

scope of this duty and its attendant potential for liability," requiring only that, "[a]t reasonable intervals, the performance of trustees and other fiduciaries should be reviewed . . . in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." *See Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465–66 (4th Cir. 1996).

Plaintiff does not "present any specific facts regarding [any Defendant's] monitoring process or how it was deficient." *Romero v. Nokia, Inc*., 2013 WL 5692324, at \*5 (N.D. Cal. Oct. 15, 2013) (dismissing plaintiff's claim for failure to monitor plan fiduciaries). To the contrary, Plaintiff's allegations with respect to the monitoring of other fiduciaries are entirely conclusory, such that he does not even bother to allege which appointed fiduciaries were deficiently monitored by whom. *See, e.g.* Compl. ¶ 120 (alleging that unidentified "Defendants breached their fiduciary monitoring duties by, among other things[,] . . . [f]ailing to monitor their [unidentified] appointees" and their "appointees' fiduciary process"). "Without more, Plaintiffs' allegations that [any Defendant] breached its duty to monitor . . . fails *Twombly's* plausibility requirement." *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) (dismissing monitoring claim where Plaintiffs alleged "only in the most general terms that [appointing fiduciaries] breached their duty to monitor").

## VII. The complaint does not state a claim for co-fiduciary liability.

Count III alleges that Defendants are liable as co-fiduciaries under 29 U.S.C. § 1105 "because they participated knowingly in their co-fiduciaries' breaches; imprudently and disloyally enabled other fiduciaries to breach their duties under ERISA; and enabled their co-fiduciaries to commit the breaches and failed to make any reasonable efforts to remedy the breaches." Compl. ¶ 117. This wholly conclusory allegation, which simply tracks the statutory language for co-fiduciary liability, and is not specific to any Defendant, is plainly insufficient to state a claim under

*Twombly.  See In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 2009 WL 3246994, at *10 (W.D. Wash. Oct. 5, 2009) (dismissing Plaintiffs' co-fiduciary claim where "[t]his section of the Complaint, however, treats all Defendants as an undifferentiated mass of wrongdoers" and "presents the type of conclusory allegations that are expressly prohibited by Rule 8, *Twombly*, and *Iqbal*"); *Atwood v. Burlington Indus. Equity, Inc.*, 1994 WL 698314, at *15 (M.D.N.C. Aug. 3, 1994) (dismissing claim for co-fiduciary liability where "Plaintiffs merely track the language of § 1105 in alleging their claim").  Accordingly, Count III should be dismissed against all Defendants.

Moreover, as to Argent, a directed trustee that follows "proper" directions that "are in accordance with the terms of the plan and not contrary to ERISA . . . is not liable for a co-fiduciary's (the named fiduciary's) breaches."  *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 735, 757 (E.D. Va. 2005) (internal quotations omitted).  The complaint has not identified any basis for finding that the distribution instructions directed to Argent were contrary to ERISA or otherwise improper.  *See supra* at 14-16.  Here, as in every other portion of the complaint, Plaintiff ignores the distinct and limited role of Argent as a directed trustee.[11]

## CONCLUSION

For the reasons set forth above, the complaint should be dismissed.

Dated:  July 29, 2022                              Respectfully Submitted,

                                                                  */s/ Lars C. Golumbic*

---

[11] Furthermore, the complaint does not plead facts plausibly suggesting that Argent had "actual knowledge" of any breach of fiduciary duty by any of the West Monroe Defendants, as required to establish co-fiduciary liability under 29 U.S.C. § 1105(a)(1) and (3).  *See Keach v. U.S. Tr. Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002).  And Plaintiff's failure to plausibly allege that Argent breached its *own* fiduciary duties precludes liability under 29 U.S.C. § 1105(a)(2), which applies only where a defendant's own failure to comply with 29 U.S.C. § 1104(a)(1) "has enabled … [an]other fiduciary to commit a breach."  *See Chi. Hous. Auth. v. J.A. Hannah Inv. Advisory Serv., Inc.*, 1996 WL 328033, at *5 (N.D. Ill. May 9, 1996).

Lars C. Golumbic (admitted *pro hac vice*)
Samuel I. Levin (admitted *pro hac vice*)
Elizabeth L. Woods (admitted *pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, DC 20006
Tel: (202) 861-6615; Fax: (202) 659-4503
Email: lgolumbic@groom.com
      slevin@groom.com
      ewoods@groom.com

Brendan R. Youngblood ARDC No. 6317038
**CASSIDAY SCHADE LLP**
222 West Adams Street, Suite 2900
Chicago, IL 60606
Tel: (312) 641-3100; Fax: (312) 444-1669
Email: byoungblood@cassiday.com

*Attorneys for the West Monroe Defendants*

*/s/ Brenton T. Vincent*
Brenton T. Vincent
Kristopher Fernandez
**BRYAN CAVE LEIGHTON PAISNER LLP**
161 North Clark St., Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000
Email: brent.vincent@bclplaw.com
      kristopher.fernandez@bclplaw.com

Jeffrey S. Russell
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, Missouri 63102
(314) 259-2725
Email: JSRussell@bclplaw.com

Robert M. Lewis, Jr.
**BRYAN CAVE LEIGHTON PAISNER LLP**
1201 W. Peachtree St., N.W.
14th Floor
Atlanta, Georgia 30309
(404) 572-6605
robert.lewis@bclplaw.com

26

*Attorneys for Defendant Argent Trust Company*

**<u>CERTIFICATE OF SERVICE</u>**

      I, Lars C. Golumbic, hereby certify that on July 29, 2022, I caused the foregoing to be filed using the CM/ECF system for the United States District Court for the Northern District of Illinois, which will send notification of such filing to all registered participants.

                          */s/ Lars C. Golumbic*
                          Lars C. Golumbic