**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW DALY, on behalf of himself and all others similarly situated, *Plaintiff*, <br><br> v. <br><br> WEST MONROE PARTNERS, INC., et al. *Defendants*. | ) ) ) ) ) Case No. 1:21-cv-6805 (RAG/SMF) ) ) ) **LEAVE TO FILE GRANTED** ) **NOVEMBER 14, 2022** ) ) ) ) |

**<u>PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

This Surreply addresses certain arguments raised in Defendants' Reply. None are availing.

## I. The Court Should Not Require Exhaustion

### A. Seventh Circuit Caselaw Does Not Require Exhaustion for Breach of Fiduciary Duty

Defendants' exhaustion argument rests on a soundbite from *Powell v. A.T.& T. Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991), dictum that Defendants mischaracterize as the court's "holding." Reply 1. As several courts in this district have explained, however, neither *Powell* nor *Kross* (the case *Powell* purported to summarize) involved a breach of fiduciary duty claim. *See* Plf.'s Opp. 21. The language Defendants cite is thus textbook dictum: it was "not addressed to the question before the court or necessary for its decision." *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988). Dictum is "not grounded in the facts," "presented as an issue," nor "refined [by] adversary presentation," and is thus not "fully considered" by the authoring court. *Id.* at 292-93 (declining to follow dictum in prior Seventh Circuit decision). Courts may thus reject it.

Just so here. Because *Powell* did not involve a claim for breach of fiduciary duty, it did not consider distinctions between claims for breach of fiduciary duty (the "crucible of Congressional concern" behind ERISA) and the claim in *Powell*. *See* Plf.'s Opp. 20-22 & nn.12-13. Both the House and the Senate Reports state Congress's intent "to remove jurisdictional and procedural obstacles" to the "enforcement of fiduciary responsibilities." Plf's Opp. 21-22. Nothing in the legislative history suggests that Congress was exclusively concerned with in-state process service, nor that this was the only "procedural obstacle" Congress desired to remove. *Contra* Reply 1 n.1.

None of the cases Defendants cite address these distinctions between claims for breach of fiduciary duty under § 1109(a) and the individual § 510 claim at issue in *Powell*. Indeed, none of them involved a claim under § 1109(a) (*i.e.*, a claim on behalf of the plan) at all. Plfs' Opp. 20 n.12. In contrast, the better reasoned cases—including at least ***four*** decided after *Powell* and ***eight***

1

decided after *Kross* (the case *Powell* applied) have held that exhaustion is not appropriate for claims of breach of fiduciary duty. *Id.* at 20-21 & n.12 (collecting cases).

### B. Seventh Circuit Precedent Excuses Exhaustion of Claims Under ERISA When the Plan's Claims Procedures Apply Only to "Claims for Benefits Under the Plan"

Even if courts could require exhaustion of claims for breach of fiduciary duty "where a plan document requires such administrative exhaustion" (Defs.' Br. 1), Defendants still fail to show that the Plan Document here requires such exhaustion. Plf.'s Opp. 22-24. Seventh Circuit precedent aligns with the consensus that claims based on violations of ERISA (as opposed to terms of the plan) are *not* "claims for benefits under the plan" as that term of art is used in § 1133 and the Plan. *Id.* Both the Seventh Circuit and this Court have excused plaintiffs from exhausting ERISA-based claims because such claims are not "claims for [] benefits" within the plans at issue. *Id.* at 22 (discussing *Salus* and *Gaylor*). Defendants ignore these precedents. Reply 2-3. Contrary to Defendants' implication, the Seventh Circuit has never held that a claim for damages under ERISA is a "claim for benefits under the plan." Reply 2-3.[1] In fact, Defendants cite **no case** holding that a claim for breach of fiduciary duty is a "claim for benefits under the plan." *See id.*

### C. The Summary Plan Description Supports Plaintiff's Position

Seventh *and* Eleventh Circuit precedents also confirm that the Summary Plan Description allowed Plaintiff to file this case in federal court. Plf.'s Opp. 24; *contra* Reply 3. In *Watts*, the

---

[1] In *Smith* and *Stephens*, the Fourth and D.C. Circuits "disagree[d]" with the Seventh and Eleventh Circuits' holdings that courts can require plaintiffs to exhaust remedies for ERISA-based claims when the plan's procedures cover such claims. Reply 2-3. But the Seventh and Eleventh Circuits' position on this point does not rest on a construction of the term "claim for benefits under the plan." Rather, both courts acknowledged "[t]he administrative exhaustion requirement is not found in the ERISA statute itself. Instead, it is a court-imposed, policy-based requirement." *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003); *see Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000) (characterizing exhaustion requirement as "a policy of judicial administration"). While *Kross* cited § 1133 as "evidence" that "Congress intended fund trustees to have primary responsibility for claim processing," the court did not hold that claims for breach of fiduciary duty (or other statutory claims) are "claims for benefits under the plan" within the meaning of that provision. 701 F.2d 1238, 1244 (1983). Nor was this issue presented. *Id.*

2

Eleventh Circuit applied Seventh Circuit precedent to hold that a participant may sue without exhausting remedies where (as here) the summary plan description (1) states that participants "may file suit in a state or federal court" for the claims at issue and (2) "fail[s] . . . to disclose that pursuing . . . internal remedies is necessary." 316 F.3d at 1208-09 ( "[T]he Seventh Circuit reached the same conclusion" in *Gallegos*.). Plf.'s Opp. 24. *Watts* distinguished *Springer*, on which Defendants rely, by noting that in *Springer*, the "summary plan description" made clear that "no action . . . shall be brought" for the claim the plaintiff asserted (there, a claim for benefits under the plan) unless the participant exhausted administrative remedies. *Watts*, 316 F.3d at 1208 n.2.[2]

Defendants are wrong that "exhaustion of breach of fiduciary duty claims would never be required" if the Court were to follow *Watts*. Reply 3. *Watts* explains how companies can comply with the DOL's regulations by "disclos[ing] that pursuing [plan] remedies is necessary before the claim can be taken to court." *Watts*, 316 F.3d at 1208 & n.2. West Monroe, however, did not tell participants that they must exhaust claims for fiduciary breach before they "may file suit in a federal court." Dkt. 54-6 at 16. West Monroe must be held to its own drafting choices.

**D. Defendants' Suggestion that They Will Use Plan Funds to Pay Claims for Breach of Fiduciary Duty Confirms the Court Should Not Require Exhaustion**

Requiring exhaustion would also be futile. Plf.'s Opp. 24-25. Defendants now say that they will use the former Plan's cash reserves—which "belong[ ] to Plan participants or former Plan participants"—to pay Plaintiff's claims if the administrative process finds them meritorious. Reply 4. This admission is yet another reason ***not*** to require exhaustion. Plaintiff's Complaint seeks compensation from *Defendants*—not the Plan. Am. Compl. ¶ 114, 119 & pp. 45-46; Plf.'s Opp.

---

[2] Defendants now suggest that the Eleventh Circuit misread its own precedent because "this language [quoted from *Springer*] was in the Plan document itself." Reply 3 n.4. But Defendants do not explain why that would matter here. In this case, neither the SPD nor the Plan made clear that a participant must exhaust internal remedies for claims for breach of fiduciary duty. *Watts* is directly on point.

23 (noting that this is another distinction between claims for breach of fiduciary duty and "claims for benefits under the plan"). ERISA §§ 502(a)(2) and 409(a) hold Defendants "personally liable" to "make good" the losses incurred and disgorge the profits West Monroe gained from the breaches of fiduciary duties and prohibited transaction. 29 U.S.C. § 1109(a); *see Leigh v. Engle*, 727 F.2d 113, 139 (7th Cir. 1984) (explaining that fiduciaries are liable to disgorge profits); s*ee also CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011) (explaining that courts may order the *fiduciaries* to pay restitution to participants under § 502(a)(3)). Defendants cannot use Plan funds to cover these liabilities. *See* 29 C.F.R. § 2509.75-4 (voiding "indemnification of a fiduciary . . . by the plan").

Here, therefore, where the "alleged goal of the fiduciaries" was to short-change "participant[s] for the fiduciaries' own economic benefit," ERISA requires that *Defendants* (not the Plan) compensate the Class; permitting them to adjudicate their own liability to the Class would "merely delay rather than prevent litigation." *Healy v. Axelrod Const. Co. Defined Ben. Pension Plan & Tr.*, 787 F. Supp. 838, 843 (N.D. Ill. 1992). The Reply confirms as much.

**II.      The Complaint States a Claim Against West Monroe**

   **A. West Monroe Is Liable for Breaching its Fiduciary Duties**

Defendants' argument that the Company is not liable under § 1104(a) because it "delegated its authority as Plan administrator to the [Benefits] Committee" (Reply 6) still fails.

*First*, as noted in the Opposition, the Seventh Circuit treats a company's board of directors as synonymous with the corporation itself—meaning that the Company is liable for the Board's breaches of its fiduciary duties. Defendants do not dispute that *Eyler v. Commissoner*, 88 F.3d 445, 454-55 (7th Cir. 1996) held that a company engaged in a prohibited transaction "acting through its board." And they do not dispute that *Howell v. Motorola, Inc.*, 633 F.3d 552, 562 (7th Cir. 2011) treated Motorola and its board as one and the same. *See* Reply 7. Faced with these precedents,

4

Defendants can cite no case holding that a corporate fiduciary can escape liability for the official actions of its board. *Eyler,* 88 F.3d at 454-55.[3] And Defendants do not dispute that the Complaint plausibly alleges the Board—which controlled the challenged transaction—breached its fiduciary duties. Am. Compl. ¶¶ 85-86; *Leigh*, 727 F.2d at 135 n.33 (holding that those who exercise "de facto control" over the transaction are fiduciaries). The claims against the Company thus survive.

***Second***, West Monroe did not "delegate" its duties as Plan Administrator; it performed them through agents. *See* Plf.'s Opp. 8 & nn. 3, 4 (collecting cases). The Complaint alleges (and West Monroe now admits) that West Monroe was the Plan Administrator and that the Board and the Committee performed West Monroe's fiduciary functions "**on behalf of the Company**." Am. Compl. ¶¶ 13-15 ("The Company acted through the Board and the Committee") (emphasis added); Ex. A at 3. And the alleged facts show the Committee acted to benefit the Company in approving the challenged below-market redemption. Plf.'s Opp. 14-15; *see Cosgrove v. Circle K Corp.*, 884 F. Supp. 350, 352-53 (D. Ariz. 1995) (when company officers "approved the sale of Plan assets in order to benefit [the company] at the expense of the Plan, they acted as agents" of the company).

The Board's direct involvement in the challenged transaction and West Monroe's status as named Administrator distinguishes this case from *Marshall v. Northrop Grumman Corp.*, No. 16-06794, 2018 WL 1406703, at *4 (C.D. Cal. Feb. 15, 2018). There, the board was not involved in the challenged decision, and plaintiffs "concede[d] that Northrup [was] not a named fiduciary under the Plan," because the plan explicitly named committees as fiduciaries. *Id.* at *1-2, 4. In the passage Defendants cite (Reply 6), the court rejected the plaintiff's argument that the company

---

[3] Defendants are incorrect to suggest that a company may be liable *only* for its board's failure to monitor appointees. No case they cite held anything of the sort. *Howell* analyzed whether the company breached a fiduciary duty to monitor because, treating "the Board and Motorola as the same," there was "no evidence … that Motorola [i.e., the Board] did anything more than appoint Committee members to administer the Plan." 633 F. 3d at 562-563. Here, in contrast, as in *Eyler* and other cases cited in Plaintiff's Opposition, the Board itself *directed* the challenged transaction. Am. Compl. ¶ 85.

was nonetheless a fiduciary "merely because it appoints its own employees to serve on fiduciary committees." *Marshall*, 2018 WL 1406703, at *4. *Marshall* thus does not undermine that, as here, a *named* corporate fiduciary is liable for its agents' acts on its behalf. *See* Plf.'s Opp. 8 & nn.3-4.

### B. West Monroe Is Liable for Its Knowing Participation in the Breach

Plaintiff's claim for co-fiduciary liability is far from "conclusory." *Contra* Reply 14. By September 2021, when West Monroe redeemed the Class's stock, West Monroe "had received proposals to purchase the Company for … a per-share equity value of close to three times the 2020 Valuation," the Board "was considering" those proposals, and Committee members "knew" about them. Am. Compl. ¶¶ 79-83. Thus, "[b]y the time they approved that stock buy-back from the Plan, the West Monroe Defendants *knew* that the Company's share value far exceeded the 2020 Valuation used to pay the Class." *Id.* ¶ 5 (emphasis added).[4] These pleadings state a claim.

### III. The Complaint States a Claim Against Argent

The Complaint also states a claim against Argent. The Reply doubles down on the false assertion that Plaintiff relies solely on the higher 2021 valuation to show that Argent's far lower 2020 Valuation was imprudent. Reply 11-12. Not so. Among other things, Plaintiff pleads specific factors that a prudent fiduciary would have used to reach a higher 2020 valuation, including higher valuation multiples, a lower discount rate, and a higher terminal growth rate. Am. Compl. ¶¶ 61-69, 72. As of the filing of the Amended Complaint, Plaintiff did not have more detail as to "how Argent went about approving" Stout's valuation. Reply 12-13. And the law did not require Plaintiff to allege such detail. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

The Complaint also alleges that Argent's undervaluation was the "proximate cause" of

---

[4] Knowledge of West Monroe's Board and the executives who served on the Committee is obviously imputed to the corporation. *See United States v. One Parcel of Land at 7326 Highway 45 N., Three Lakes*, 965 F.2d 311, 316 (7th Cir. 1992) ("Where a corporate agent obtains knowledge while acting in the scope of his agency…the court imputes such knowledge to [the] corporation.").

loss. Reply 10. Defendants' cases only confirm that "liability may attach for acts or omissions that are a 'substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence.'" *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992). Argent's undervaluation meets that standard. A trustee must "exercise prudence in stock valuation for purposes of setting a redemption price." *Allen*, 835 F.3d at 678. Here, Argent should have foreseen that West Monroe would use its valuation for the redemptions set to occur (as they normally did) only months after it issued the valuation. Am. Compl. ¶¶ 4, 36. Argent cannot evade liability for the foreseeable results of its breach simply because its co-fiduciary failed to correct Argent's mistakes. *See* Restatement (2d) of Torts § 452 (1965) (Ordinarily, even the negligent "failure of [a] third person to act to prevent harm to the [plaintiff] threatened by the original actor's negligent conduct[ ] is not a superseding cause of such harm, and so does not relieve the actor of liability for the harm which he has in fact caused.").

Finally, Argent is also liable as a co-fiduciary. Argent cites no authority holding that it "must have had actual knowledge of an alleged breach by the West Monroe Defendants as they discharged their fiduciary duties." Reply 15. ERISA plainly states that a trustee is liable if he *either* "enable[s]" a breach "**or**" learns of a co-fiduciary's breach and fails to take "reasonable efforts . . . to remedy" the breach after the fact. 29 U.S.C. § 1105(a). By October 5, 2021, Argent knew West Monroe directed distributions based on its stale 2020 Valuation and knew West Monroe had agreed to sell equity for three times the 2020 Valuation, and Argent itself determined that West Monroe stock was worth three times the 2020 Valuation within weeks of the redemption. *See* Am. Compl. ¶¶ 4, 85, 123. These facts "suffic[ed] to give [Argent] knowledge that a fiduciary duty ha[d] been breached or an ERISA provision violated" by West Monroe. *Chao v. Wheeler*, No. 05-763, 2007 WL 4233464, at *6 (N.D. Ind. Nov. 28, 2007). Argent failed to act. It is liable under § 1105(a)(3).

7

| | |
|---|---|
| Dated: November 21, 2022 | */s/ Charles Field*<br>Charles Field*<br>**SANFORD HEISLER SHARP, LLP**<br>2550 Fifth Avenue, 11th Floor<br>San Diego, CA 92101<br>Telephone: (619) 577-4242<br>Facsimile: (619) 577-4250<br>cfield@sanfordheisler.com |

David Sanford*
Russell Kornblith*
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Fl.
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
rkornblith@sanfordheisler.com

Kevin Sharp*
**SANFORD HEISLER SHARP, LLP**
611 Commerce St., Suite 3100
Nashville, TN 37203
Phone: (615) 434-7001
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com

Sean Ouellette*
James Hannaway*
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, D.C. 20003
Phone: (646) 402-5644
Facsimile: (202) 499-5199
souellette@sanfordheisler.com
jhannaway@sanfordheisler.com

Matthew J. Singer
**MATT SINGER LAW, LLC**
77 W. Wacker Dr., Suite 4500
Chicago, IL 60601
Phone: (312) 248-9123
matt@mattsingerlaw.com

8

*Attorneys for Plaintiff and the Proposed Class*

*\* Admitted Pro Hac Vice*