IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW DALY, on behalf of himself and all others similarly situated, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WEST MONROE PARTNERS, INC.; THE BENEFITS COMMITTEE OF WEST MONROE PARTNERS, INC. and its members; THE BOARD OF DIRECTORS OF WEST MONROE PARTNERS, INC. and its members; ARGENT TRUST COMPANY; and DOES 1-3, )<br>    Defendants. ) | No. 21 C 6805<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' joint motion to dismiss [94] is granted in part and denied in part. Plaintiff's claims against the individual Board or Committee members are dismissed without prejudice. Defendants' motion is denied with respect to the remaining claims.

## STATEMENT

**A.  Facts**

Matthew Daly ("Plaintiff") worked for West Monroe Partners, Inc. ("West Monroe" or "Company") between 2015 and 2020, during which time 313 shares of West Monroe stock were allocated to his account in the West Monroe Partners Employee Stock Ownership Plan ("the Plan").[1] Plaintiff voluntarily terminated his employment with West Monroe on November 9, 2020. Around September 21, 2021, West Monroe bought almost 28,000 shares of Company stock from the Plan accounts of former employees, including Plaintiff's, at a price of $515.18 per share. This share price was based on the then-most recent annual valuation by Argent Trust Company ("Argent") as of December 31, 2020 (the "2020 Valuation"), which Plaintiff contends "was neither careful, skillful, prudent, nor diligent, and it grossly undervalued the Company stock held in the Plan." (Am. Compl., Dkt. # 88, ¶ 4.)

Approximately three weeks later, West Monroe sold a 50% stake in the Company to a third-party investor, MSD, at a share price over three times higher than the price West Monroe

---

[1] West Monroe, the Board of Directors, and the Benefits Committee are referred to as the "West Monroe Defendants."

paid to Plaintiff and the putative class members. According to Plaintiff, the share price paid to MSD "did not come out of thin air" and "[l]ong before the sale [to MSD], the West Monroe Defendants had received bids from potential buyers and reviewed more recent valuations" but did not disclose them to Plaintiff or the putative class members prior to buying their shares in September 2021. (Pl.'s Opp'n, Dkt. # 103, at 1.) Plaintiff further alleges that the West Monroe Defendants "allowed senior leaders to buy in at the artificially deflated valuation just before it ballooned" with the sale to MSD. (Am. Comp., Dkt. # 88, ¶ 7.)

Plaintiff brings this suit against the West Monroe Defendants and Argent under the Employee Retirement Income Security Act ("ERISA") and Delaware state law on behalf of himself, the Plan, and a proposed class of terminated Plan participants ("putative class members" pr "participants"). Plaintiff alleges breach of fiduciary duty under ERISA against all Defendants (Count I), prohibited transactions under ERISA against the West Monroe Defendants (Count II), breach of co-fiduciary liability against all Defendants (Count III), a failure to monitor under ERISA against all Defendants (Count IV), a Delaware state-law claim for breach of fiduciary duty against the West Monroe Board of Directors (Count V), and a failure to produce plan documents under ERISA (Count VI). Defendants move to dismiss the ERISA claims (except the failure-to-produce claim) for failure to exhaust and for failure to state a claim.

**B.    Analysis**

   1.    *Exhaustion*

Defendants first contend that Plaintiff's claim should be dismissed for failure to exhaust his administrative remedies pursuant to the terms of the Plan.[2] "While ERISA's text contains no such requirement, a 'strong federal policy encouraging private resolution of ERISA-related disputes mandates the application of the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA.'" *Cutrone v. Allstate Corp.*, No. 20 CV 6463, 2021 WL 4439415, at *6 (N.D. Ill. Sept. 28, 2021) (quoting *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991)). Plaintiff's contention that exhaustion does not apply to a statutory breach-of-fiduciary-duty claim is contrary to the express language of *Powell*. See *Tuhey v. Ill. Tool Works, Inc.,* No. 17 C 3313, 2017 WL 3278941, at *8 (N.D. Ill. Aug. 2, 2017) ("District courts may properly require exhaustion of administrative remedies prior to filing of a claim involving alleged violation of an ERISA statutory provision."); *Ahr v. Commonwealth Edison Co.*, No. 03 C 6645, 2005 WL 6115023, at *9 (N.D. Ill. Feb. 24, 2005) ("Plaintiffs argue that perhaps the exhaustion requirement is not applicable in the instant action because . . . the exhaustion requirement does not apply to a breach of fiduciary duty claim that involves an alleged violation of the statute . . . . However . . . the Seventh Circuit has ruled on the issue and we are bound by that precedent . . . .").[3] "[T]he decision to require exhaustion as a prerequisite to bringing suit is a matter within the sound discretion of the trial court." *Orr v. Assurant Emp. Benefits*, 786 F.3d

---

[2] The Plan is now terminated.

[3] Plaintiff claims that the statement in *Powell* is non-binding dicta because *Powell* did not involve a breach-of-fiduciary-duty claim. Given the lack of any other indication from the Seventh Circuit that exhaustion does not apply to breach-of-fiduciary-duty claims, the Court is unwilling to disregard *Powell*'s explicit statement.

2

596, 601-02 (7th Cir. 2015) (citation omitted). "Generally, a plaintiff's failure to exhaust administrative remedies will be excused when exhaustion would be futile, the remedy provided is inadequate, or when there is a lack of access to meaningful review procedures." *Cutrone*, 2021 WL 4439415, at *6.

Plaintiff asserts that he cannot exhaust his remedies because the Plan is terminated. On the contrary, the Plan provides that although "the Plan is hereby terminated" such that "[n]o new participants shall become eligible," the Plan "must" retain $50,000,000.00 until at least two years after the closing of the stock sale agreement signed in or around October 5, 2021 (i.e., at least until October 2023), and expressly states that "claims pertaining to the administration or operation of the Plan" may be filed at least up until October 2023. (Plan, Dkt. # 54-4, at 13, § 16.5(a), (e)). Moreover, contrary to Plaintiff's contention, the exhaustion requirement is not necessarily nullified by the language in the Summary Plan Description, which states that a lawsuit *may* be filed in federal court. A plaintiff may still bring suit after having pursued the administrative claim process detailed in the Plan. *See Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 900 (11th Cir. 1990) (rejecting as frivolous the argument for excusing exhaustion on the ground that "both the Plan and ERISA itself give [the plaintiff] the right to sue in federal court if []he has a claim for benefits under the Plan which is denied or ignored in whole or in part"). Nor is the Court persuaded by Plaintiff's contention that exhaustion does not apply to class-wide claims. As Defendants note, the Seventh Circuit has applied exhaustion to class claims. *See Kross v. W. Elec. Co.,* 701 F.2d 1238, 1245 (7th Cir. 1983). Indeed, "[t]he prospect of there being potentially many plaintiffs underscores the benefit of there being a full administrative examination of these issues." *Williams v. Rohm & Haas Pension Plan*, No. No. NA02–C–0123–B/H, 2003 WL 22271111, at *4 (S.D. Ind. Sept. 26, 2003).

Plaintiff next argues that exhaustion is unnecessary because "[t]o require that the plaintiffs in this case ask the trustees to personally repay large sums of money and concede their own self-dealing would be futile, create needless delay, and would not fulfill the policies underlying exhaustion." (Pl.'s Opp'n, Dkt. # 103, at 24-25) (internal citation and quotation marks omitted). While this argument might have traction under certain circumstances, the Court finds that resolution of the exhaustion issue is inappropriate at the motion-to-dismiss stage. Factual issues exist regarding futility (including whether the $50 million set-aside can be used to satisfy any finding of liability against Defendants), delay, and whether requiring exhaustion in this case would further its policies. *See Cutrone*, 2021 WL 4439415, at *7 (noting that "courts regularly resolve the exhaustion issue at summary judgment" and denying motion to dismiss on exhaustion grounds where "plaintiffs have not conceded that they failed to exhaust, and they contend that exhaustion would've been futile.").

      2.    *Does the Amended Complaint State a Claim?*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true

and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018) (citing *Deppe v. NCAA*, 893 F.3d 498, 499 (7th Cir. 2018)).

ERISA is a "comprehensive [federal] statute" that "sets various uniform standards, including rules concerning . . . fiduciary responsibility, for both pension and welfare plans." *Placht on behalf of Symbria Inc. Employee Stock Ownership Plan v. Argent Tr. Co.*, No. 21 C 5783, 2022 WL 3226809, at *4 (N.D. Ill. Aug. 10, 2022) (citation omitted) [hereinafter *Placht*]. Specifically,

> ERISA: (1) imposes duties of loyalty and prudence upon any person acting as a "fiduciary" to an employee retirement plan and liability for breaches of those duties; (2) forbids fiduciaries from "causing" their plan to enter into "insider" transactions that are "presumably not at arm's length;" (3) subjects plan fiduciaries to liability if they "knowingly participate in," "enable," or "have knowledge of" a breach by another plan fiduciary; and (4) even provides for liability (limited to equitable relief) as to certain non-fiduciaries related to ERISA breaches, 29 U.S.C. § 1132(a)(3).

*Id*. (internal citations omitted). "Because ERISA plaintiffs generally have no access to inside information regarding a fiduciary's decision-making process, they need not plead minute details, as long as the facts alleged tell a plausible story." *Id.* at *5.

  a.  Breach of Fiduciary Duty

Defendants assert that Plaintiff has failed to allege that Defendants were acting as fiduciaries. "The threshold question in all cases charging breach of fiduciary duty is whether the defendant was 'acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *3 (N.D. Ill. Mar. 19, 2018) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). ERISA fiduciaries are "persons named as fiduciaries by a benefit plan" or "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993); *see* 29 U.S.C. § 1002(21)(A). The former are often referred to as "named fiduciaries," while the latter are frequently labeled "functional fiduciaries." *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1206 (10th Cir. 2019). A party "exercising discretionary control over a plan's management or administration . . . is to that extent behaving as a fiduciary," as is a party "to the extent that it exercises de facto control over plan decisions through the plan administrators it selects." *Howell v. Motorola, Inc.*, 633 F.3d 552, 562–63 (7th Cir. 2011).[4] A person can be a fiduciary for one purpose without becoming a fiduciary for all purposes. *Pegram*, 530 U.S. at 225-26.

---

[4] ERISA provides that a person is a fiduciary

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other

4

The amended complaint alleges as follows:

> At all relevant times, West Monroe was the Plan's sponsor, as well as the administrator of the Plan under ERISA § 2(16), 29 U.S.C. § 1002(16), and a named fiduciary under ERISA § 402, 29 U.S.C. § 1102(a). The Company was also a fiduciary of the Plan under 29 U.S.C. § 1002(21)(A) because it exercised discretionary authority and control respecting the management and administration of the Plan. Both the Plan Document and the Plan's Summary Plan Description named West Monroe as the Administrator of the Plan. These documents also expressly empowered the Company to determine the "Valuation Date" under the Plan—the date as of when the value of Company stock held within the Plan was to be determined—and to direct the Trustee with respect to the purchase, sale, and distribution of Company stock. See Plan §§ 1.28, 12.1; Plan Amend. 13 (amending § 1.28). The Company acted through the Board and the Committee.

(Am. Compl., Dkt. # 87, ¶ 13.) The amended complaint also alleges as follows:

> The Board of Directors of West Monroe Partners, Inc. was also a named fiduciary of the Plan under 29 U.S.C. § 1102(a) as well as a fiduciary under 29 U.S.C. § 1002(21)(A). The Board has the authority to exercise all the powers of the Company, including with respect to the Plan. The Plan Document expressly named the Board as a fiduciary and empowered the Board to appoint and direct the Plan's Trustee, including with respect to the purchase, sale, and distribution of Company stock. Specifically, the Board had the authority to direct the Trustee to sell, and the Company to repurchase, stock from the Plan, as it did in this case. The Board also had the authority and discretion to change the Valuation Date under the Plan. The Board includes management directors who are executive

---

compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, No. 18-CV-1861-WCG, 2022 WL 4088166, at *11 (E.D. Wis. Mar. 17, 2022), *report and recommendation adopted,* No. 18-C-1861, 2022 WL 4080528 (E.D. Wis. Sept. 6, 2022) (citation omitted) [hereinafter *Appvion*].

>employees of the Company and who (on information and belief) hold equity in the Company.

(*Id*. ¶ 14.) The amended complaint further alleges that the "The Benefits Committee, appointed by the Board of Directors of West Monroe, also administers the Plan on behalf of the Company," and "at all relevant times, the Committee and its members were also fiduciaries under 29 U.S.C. § 1002(21)(A) because, along with the Board and its members, they exercised discretionary authority and control respecting management and administration of the Plan." (*Id*. ¶ 15.)

Defendants contend that Plaintiff fails to plausibly allege that West Monroe was acting as a fiduciary because the amended complaint refers to West Monroe as the "Plan's sponsor," and "'plan sponsorship by itself does not create fiduciary status, because it is merely a corporate or settlor function.'" (Defs.' Mem. Supp. Mot. Dismiss, Dkt. # 95, at 12) (citing *In re Mut. Fund Inv. Litig*., 403 F. Supp. 2d 434, 447 (D. Md. 2005)). But Plaintiff relies on more than plan sponsorship to establish West Monroe's role as a fiduciary, so this basis for dismissal is rejected. Defendants also contend that while Plaintiff makes a conclusory allegation that West Monroe was the "administrator" of the Plan, it then alleges that the "Benefits Committee . . . administers the Plan on behalf of the Company." (*Id*.) (citing Am Compl., Dkt. # 88, ¶ 15.) According to Defendants, "[h]aving allegedly delegated its ERISA fiduciary authority to the Committee, West Monroe retained only a limited duty to monitor the Committee's actions," (*id*.), and "Plaintiff has failed to plausibly allege [that] West Monroe breached any duty to monitor the Committee." *Id*. at 13.

It is not clear, however, that Plaintiff alleges that West Monroe fully delegated all its fiduciary duty to the Benefits Committee. As Plaintiff notes, the amended complaint alleges that acting through the Board and the Committee, West Monroe failed to update the purportedly "stale" 2020 valuation, even after its directors and officers learned that the stock's fair market value was triple what Argent had assessed and directed Argent to transfer the stock to the Company at a deep discount. (Am. Compl., Dkt. # 88, ¶¶ 13, 15, 41, 83.) According to the amended complaint, "[l]ong before the 2021 sale to MSD Partners, West Monroe took steps to drive up the Company's value, position it for a sale, and enable high-ranking employees to reap the profits," (*Id*. ¶ 43), including laying off highly compensated employees, making acquisitions to increase West Monroe's value, and implementing a retention initiative to prevent defections of key employees. (*Id*. ¶¶ 44-51.)

In sum, Plaintiff alleges that West Monroe Defendants breached the duty of prudence and loyalty when they:

>(a) failed to monitor, review, and otherwise act with respect to the 2020 Valuation with the care, skill, prudence, and diligence of a prudent fiduciary; (b) failed to direct, conduct, obtain, or use an up-to-date valuation of Company stock to redeem Plan participants' Company stock and make distributions to participants in September 2021; (c) failed to timely disclose information material to participants' distribution decision; (d)

> caused the Plan to sell Company stock to West Monroe for less than fair market value; and therefore (e) caused the Plan to pay Plaintiff and the Class substantially less than fair market value for the vested shares of Company stock in their accounts; and (f) inequitably deprived Plaintiff and the Class of proceeds and other value from the Stock Sale.

(*Id*. ¶ 110.) The amended complaint thus alleges that West Monroe, the Board, and the Benefits Committee were all administrators of the Plan and engaged in the aforementioned failures regarding their fiduciary duties. Assuming the truth of these allegations for purposes of this motion and viewing them in a light most favorable to Plaintiff, the Court concludes that he has alleged breach of fiduciary duty as to West Monroe, the Board and the Benefit Committee.[5]

Similarly, Defendants assert that Plaintiff has not alleged that individual Board defendants or individual Committee defendants were acting as fiduciaries. *See Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 541 F. Supp. 3d 496, 509 (D.N.J. 2021) (dismissing a fiduciary-duty claim against individual board members because the complaint was "devoid of plausible allegations that any individual member of the Board possessed or exercised discretionary authority over the appointment of Plan fiduciaries"). In the amended complaint, Plaintiff fails to make any allegations as to specific Board or Committee members, so none are currently implicated in the breach-of-fiduciary-duty claim. Accordingly, the motion to dismiss the breach-of-fiduciary-duty claim as to individual Board and Committee members is granted.

Plaintiff next alleges that Argent, as Trustee, imprudently undervalued the Plan's stock in the December 2020 valuation. In support, the amended complaint alleges that within nine months of the December 2020 valuation, "arms-length buyers valued the stock at three times the value Argent appraised." (Pl.'s Resp., Dkt. # 103, at 16) (citing Am. Compl., Dkt. # 88, ¶¶ 4-5, 52-54.) Moreover, "despite reports of 'explosive growth' in 2020, Argent assigned a stock value [in December 2020] that reflected the lowest annual appreciation in the Plan's history." (*Id*.) (citing Am. Compl., Dkt. # 88, ¶¶ 52-53.) According to the amended complaint, Argent had access to the relevant financial information to properly assess the stock's value in December 2020. (Am. Compl., Dkt. # 88, ¶ 70.) Defendants assert, however, that Plaintiff fails to plausibly allege causation against Argent "because he does not and cannot explain how it was foreseeable to Argent that the West Monroe Defendants would, in [a] purported breach of their fiduciary duties, intentionally fail to obtain a new and timely valuation report [before repurchasing Plaintiff's stock in September 2021] knowing the stock was more highly valued." (Defs.' Sur-Response, Dkt. # 118, at 5.) Defendants assert that "even if the purported errors in

---

[5] Defendants point to *Howell v. Motorola*, 633 F.3d 552 (7th Cir. 2011), in which the Seventh Circuit held that "there [was] no evidence in this record that Motorola did anything more than appoint Committee members to administer the Plan. . . ." *Id*. at 563. At this stage of the litigation, however, the Court has no record to review, only Plaintiff's allegation that the directors and officers exercised discretionary authority and control respecting management and administration of the Plan, and they knew that West Monroe stock had been undervalued at the time West Monroe bought almost 28,000 shares of Company stock from the Plan accounts of former employees, including Plaintiff's, at a discounted price.

7

the 2020 valuation were corrected, Plaintiff's claim would still be that the West Monroe Defendants failed to obtain an updated valuation in the midst of a corporate sale." (*Id*. at 5-6.) The Court is not convinced. It is plausible that if Argent had corrected the alleged errors, then the amount Plaintiff received for his shares would be the same as or close to the amount paid to MSD, and no updated valuation would have been necessary. In any event, causation and superseding causes are generally issues of fact not appropriate for resolution on a motion to dismiss. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840-41 (1996) ("The issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder, subject to limited review."); *Loomis v. Exelon*, No. 06 C 4900, 2007 WL 953827, at *2 (N.D. Ill. Feb. 21, 2007) ("Typically, 'issues of loss causation are factual matters not proper to resolve on a motion to dismiss . . . .'") (citation omitted).

Defendants assert that the allegations against Argent are based solely on hindsight (i.e., that the December 2020 valuation can only be deemed deficient in relation to the valuation of the stock when West Monroe sold to MSD October 2021), which is improper. *See DeBruyne v. Equitable Life Assur. Soc. of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) (ERISA requires "prudence, not prescience"). But, as discussed above, Plaintiff has alleged specific deficiencies in the December 2020 valuation that raise the claim against Argent above the speculative level. The Court further is unpersuaded by Defendants' contention that Plaintiff's allegation that he received a lower value for the shares was caused by the West Monroe Defendants' decisions and directions, not Argent's.[6] If discovery reveals that Argent's role does not meet the level necessary for liability to attach, *see Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992) ("[L]iability may attach for acts or omissions that are a 'substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence'") (citation omitted), then it can move for summary judgment on that ground. Viewing Plaintiff's allegations in a light most favorable to him, the Court finds that the amended complaint plausibly alleges a claim that Argent breached its duty of prudence by undervaluing the Plan's stock in the December 2020 valuation. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (a trustee must "exercise prudence in stock valuation for purposes of setting a redemption price"); *Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006) ("A trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.").

While Plaintiff alleges a separate failure-to-monitor claim (Count IV), Defendants refer to it as a "derivative" claim and the parties discuss it in the context of the alleged breach of fiduciary duty, so the Court addresses it here. "The Department of Labor has explained that the duty [to monitor] requires reviewing 'the performance of trustees and other fiduciaries' at 'reasonable intervals' and 'in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan.'" *Placht,* 2022 WL 3226809, at *9 (citations and internal quotation marks omitted). Defendants assert that the duty to monitor is limited, and "'courts have properly taken a restrictive view of the scope of this duty and its attendant potential for liability.'" (Defs.' Mem. Supp. Mot. Dismiss, Dkt. # 95, at 22) (citation omitted). According to Defendants, the amended complaint fails to allege any delegation of fiduciary responsibility and

---

[6] Defendants frame this issue as one of standing.

8

Plaintiff's allegations regarding the monitoring of fiduciaries by other fiduciaries are conclusory and lack plausibility.

The amended complaint alleges that Board appointed Argent and the Committee members on behalf of the Company but failed to adequately monitor its appointees. *See Placht,* 2022 WL 3226809, at *9 (fiduciaries who delegate their duties to others have "an ongoing fiduciary duty under ERISA to monitor the activities of their appointees" to ensure they comply with the Plan and ERISA) (citations omitted). According to Plaintiff, "[t]he Board knew or should have known from the Company's own records—the Company's business and financial information, statements of interest received in early 2021, and red flags in the valuation itself— that Argent's 2020 Valuation undervalued the Company," and "the Board certainly knew by September 2021 that Argent's 2020 Valuation undervalued the Company's stock—but it failed to correct the undervaluation and instead used it to cash out the [c]lass." (Pl.'s Opp'n, Dkt. # 103, at 18-19.) Plaintiff's allegations and the reasonable inferences that can be made from them sufficiently state a claim for failure to monitor. *See Placht,* 2022 WL 3226809, at *9 ("Plaintiff's allegations that the Management Shareholders caused the appointment of Argent to oversee the ESOP Transaction and knew the company's true valuation but failed reasonably to monitor Argent's ensuing performance suffice for [a 'failure-to-monitor claim] this stage in the case.").

      b.      Prohibited Transactions

ERISA § 1106 "forbids fiduciaries from 'causing' their plan to enter into 'insider' transactions that are 'presumably not at arm's length.'" *Id.*[7] "In general, a fiduciary to an ERISA plan engages in prohibited transactions if he self-deals or receives consideration for his role in a transaction involving plan assets." *Appvion,* 2022 WL 4088166, at *11. Plaintiff contends that the West Monroe Defendants knowingly used their fiduciary discretion to direct the transfer and sale of stock from the Plan for less than its market value, enriching the Company at the participants' expense. Specifically, the amended complaint alleges that "on or about September 21, 2021, West Monroe forced the Plan to transfer . . . 27,960 shares of Company stock [owned by the putative class members] to the Company at the 2020 Valuation ($515.18 per share), and Plaintiff and the Class received the proceeds of the redemption as distributions." (Am. Compl., Dkt. # 88, ¶ 85.); *see also id.* ¶ 8 ("By causing the transfer of thousands of shares

---

[7] As is relevant here, § 1106(a) prohibits a fiduciary from causing "the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--(A) sale or exchange, or leasing, of any property between the plan and a party in interest; [or] . . . (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." *See* 29 U.S.C. §§ 1106(a)(1)(A) & (D). As is further relevant, § 1106(b) states that a "fiduciary with respect to a plan shall not--(1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b).

of Company stock from the Plan to West Monroe for a small fraction of their fair value (which increased the value of equity held by Company management), the West Monroe Defendants violated ERISA § 406.").

Defendants assert that the amended complaint fails to allege a prohibited-transaction claim--specifically, no direct or indirect sale of West Monroe stock or Plan assets from the Plan to West Monroe (or any other party in interest). Rather, Defendants contend that the amended complaint alleges only that Argent distributed shares of West Monroe stock from the Plan to Plaintiff, and that West Monroe then repurchased the shares from Plaintiff, with Plaintiff receiving the proceeds. The Court understands Defendants to be focusing on the identity of the transferor (i.e., Argent versus the West Monroe Defendants) and the assets that were transferred. As to the latter, the amended complaint expressly alleges that Plaintiff never received shares of stock; rather, the Board directed Argent, as Trustee, to release or "push out" 27,960 shares from the Plan, which were "immediately and automatically" sold back to West Monroe at $515.18 per share. (*Id*. ¶ 85.) According to the amended complaint, Plaintiff and the other participants then received the cash proceeds of that sale and "never held Company stock or exercised any control" over it. (*Id*. ¶ 87.) Thus, Defendants' contention that Plaintiff fails to allege the sale of stock from the Plan to West Monroe is unpersuasive. Even assuming ownership of the shares was transferred first to Plaintiff and the other participants before being transferred to West Monroe, Section 1106 "specifically includes indirect transactions in order to prevent parties from avoiding its restrictions through 'the interjection of a third party into an otherwise prohibited transaction.'" *Neil v. Zell*, 677 F. Supp. 2d 1010, 1027 (N.D. Ill. 2009), as amended (Mar. 11, 2010). The same is true with respect to Defendant's first argument noted above that Argent, not West Monroe, transferred the shares.

Defendants further contend that the amended complaint alleges that Argent distributed shares of West Monroe from the Plan to Plaintiff, but Plaintiff was not a party in interest, as required by 1106(a). *See Chao v. Hagemeyer N. Am. Inc*., No. 2:06-01173-PMD, 2006 WL 8443663, at *7 (D.S.C. Oct. 20, 2006) (stating that former employees are not parties in interest). However, as noted, Plaintiff alleges that neither he nor any other participants were legal owners of the shares; rather, ownership of the shares transferred "immediately and automatically" to West Monroe while Plaintiff received the cash proceeds of his ownership interest. Defendants also assert that when Argent "distributed Plaintiff's shares to him," they ceased to be "assets of the Plan," thus taking them out of the purview of the 1106(a)(1)(D). As already stated, however, Plaintiff alleges that the shares were never actually distributed to him.

With respect to West Monroe's contention that the amended complaint fails to allege that they had a subjective intent to benefit a party in interest, the Court is unpersuaded. As an initial matter, the amended complaint alleges that despite the West Monroe Defendants' knowing by mid-September 2021 that the value of the putative class members' stock was higher than the December 2020 valuation, the West Monroe Defendants directed that Plaintiff's and the putative class members' stock be redeemed at the lower price, thus benefitting the West Monroe Defendants. (Am. Compl., Dkt. # 88, ¶¶ 5-6, 14, 79-83, 111.) The amended complaint thus sufficiently alleges that the West Monroe Defendants acted in their own interests when they "used" an "asset of the [P]lan" by directing its undervalued redemption and the immediate and automatic repurchase by West Monroe.

Thus, Defendants' motion to dismiss the claim under § 1106(a)(1)(A) and (D) and § 1106(b) is denied.

### c. Co-Fiduciary Liability

"To state a claim for co-fiduciary liability a plaintiff must plausibly allege that a fiduciary (1) participated knowingly in, or undertook knowingly to conceal, an act or omission that he knows is a breach; (2) failed to follow his fiduciary duties, thereby enabling another fiduciary to commit a breach; or (3) had knowledge of the breach committed by another fiduciary and made no reasonable efforts to remedy that breach." *Appvion*, 2022 WL 4088166, at *8. Defendants assert that Plaintiff's co-fiduciary allegations are conclusory. According to the amended complaint, West Monroe "had received proposals to purchase the Company for . . . a per-share equity value of close to three times the 2020 Valuation," the Board "was considering" these proposals, and Committee members "knew" about them. (Am. Compl., Dkt. # 88, ¶¶ 79-83.) The amended complaint further alleges that "[b]y the time they approved th[e] stock buy-back [of Plaintiff's shares] . . . , the West Monroe Defendants knew that the Company's share value far exceeded the 2020 Valuation used to pay the Class." (*Id.* ¶ 5.) Plaintiff plausibly alleges a claim for co-fiduciary liability as to the West Monroe Defendants.

The same is true for Argent, which can be liable if it had knowledge of the breach committed by another fiduciary and made no reasonable efforts to remedy that breach. According to the amended complaint, "Argent therefore knew by October 5, 2021 that the West Monroe Defendants redeemed the Class's shares for less than fair market value, but it failed to take steps to remedy the violation, for example, by reporting the West Monroe Defendants to the Department of Labor." (*Id.* ¶ 124.) Plaintiff plausibly alleges a claim for co-fiduciary liability against Argent.

**Conclusion**

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part.

**Date**: March 15, 2023

**Ronald A. Guzmán**
**United States District Judge**