**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MATTHEW DALY, on behalf of himself
and all others similarly situated,

        Plaintiff,

                Case No. 21 CV 6805

        v.

                Judge John Robert Blakey

WEST MONROE PARTNERNS INC.
et. al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(1) or, in the alternative, (b)(2). [148], [188]. Defendants, in a joint brief, oppose the motion. [192]. For the reasons explained below, the Court grants Plaintiff's motion under Rule 23(b)(1).

## I.    Background

Plaintiff Matthew Daly was a consultant and employee of West Monroe Partners, Inc. from June 2015 to November 2020. [87] ¶ 12. West Monroe Partners, Inc. ("West Monroe" or "Company") is a "digital consulting firm" incorporated in Delaware and headquartered in Chicago, Illinois. *Id.* ¶ 13. Plaintiff Daly participated in the West Monroe Employee Stock Ownership Plan (the "Plan"), a defined contribution plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2) and governed Act under ERISA § 4(a), 29 U.S.C. § 1003(a). *Id.* ¶ 33. The Plan was designed to invest primarily in Company stock and hold that stock in a trust for the

1

benefit of Plan participants—current and former employees. *Id.* ¶¶ 1, 33. West Monroe administered the Plan through the Board and the Committee (West Monroe, the Board, and the Committee, collectively referred to as the "West Monroe Defendants"). *Id.* ¶ 15. Argent Trust Company (a Tennessee corporation headquartered in Nashville, Tennessee and a defendant in this case) was the Plan's Trustee. *Id.* ¶ 16.

In April 2021, the Trustee completed an annual valuation of the Company stock held by the Plan ("2020 Valuation"). *Id.* ¶ 42. Plaintiff alleges this valuation constituted a breach of Defendants' fiduciary duties, because the valuation was too low. [148] at 3. Defendants announced the same month that, based upon the 2020 Valuation, the value of Company stock as of December 31, 2020, was $515.18 per share. [87] ¶ 42.

Plaintiff left his employment at the Company on November 9, 2020. *Id.* ¶ 12. Between June 11, 2021, and August 9, 2021, Plaintiff elected to take a distribution of his account balance from the Plan, to be executed in late September or October of 2021. *Id.* ¶ 84. Other members of the class did so as well, and, collectively, these participants in the Plan "held a vested beneficial interest in approximately 27,960 shares of Company stock." *Id.* Around September 21, 2021, the Company purchased those shares at a price of $515.18 per share "based on the 2020 Valuation," for "a total value of approximately $14,404,808." *Id.* ¶¶ 84, 85.

On October 5, 2021, about three weeks later, West Monroe sold 50% of the Company to MSD Partners, L.P. (the "MSD Transaction"), a private equity firm, at a

price of $1,616 per share. *Id.* ¶¶ 73, 88. In November 2021, West Monroe finalized the sale and terminated the Plan. *Id.* ¶¶ 74, 89. The remaining Plan participants received a price of $1,616 per share for the stock held in their Plan accounts. *Id.* ¶¶ 73, 74, 88, 89. The Plan additionally "'held approximately 564,000 unallocated shares—i.e., shares held in the Plan but not allocated to individual participants' accounts—which were sold as part of the MSD Transaction." [192] at 5 (citing [88] ¶ 89 n.15; [144] ¶ 89). "Most of the proceeds from the sale of the unallocated shares was distributed to the remaining participants in the Plan at the time on a pro rata basis, but $50 million of those proceeds remains in the Plan in an interest-bearing account." *Id.* (citing [54-5] § 16.5(e); [132] at 8). "If not paid in connection with a claim, the $50 million will be distributed to the West Monroe employees who still have accounts in the Plan (a group that does not include Plaintiff or anyone in the putative Class)." *Id.* (citing [54-4] at § 16.5(e)).

The West Monroe Defendants admit that "they did not make disclosures to Plaintiff" regarding the" sale, "nor the results of any valuation that occurred after the 2020 Valuation, nor any offer made by a third party to buy shares of Company stock, nor the fact that the fair market value of Company stock exceeded the 2020 Valuation," nor "if Class members did not elect distributions and remained invested in the Plan, they were likely to receive an amount substantially higher than the $515.18 per share distributed in September 2021." [144] at 52.

Plaintiff's Amended Complaint alleges that Defendants engaged in numerous breaches of their fiduciary duties, including (i) failing to conduct a prudent valuation

3

of the stock in 2020, (ii) failing to ensure that participants received fair market value for the stock held in their accounts, such as by conducting an up-to-date valuation for the 2021 stock redemption, and (iii) failing to timely disclose facts material to beneficiaries' interests. [148] at 6 (citing [87] ¶¶ 100–114).

To remedy these alleged "breaches of fiduciary duties and prohibited transactions, Plaintiff seeks to bring this action individually, as a representative of the affected Class of participants and beneficiaries, and on behalf of the Plan under ERISA § 502, 29 U.S.C. §1132(a)(2) and (3)," and numerous other claims. [87] ¶ 10.[1] Plaintiff now asks the Court to certify the following proposed Class under either Rule 23(b)(1) or (b)(2): "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock." [148] at 8 (citing [87] ¶ 93).

Defendants oppose Plaintiff's motion for class certification. *See* [192].

## II. Legal Standard

To merit certification, a proposed class must first satisfy all four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class

---

[1] Plaintiff is seeking class certification for all Counts alleged in the Amended Complaint ([87]) except for Count VI, Failure to Produce Plan Documents. *See* [148] at 6 n.3.

("adequacy"). *See* Fed. R. Civ. P. 23(a). Additionally, the Seventh Circuit independently instructs that "a class must be sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). The class must also satisfy one of Rule 23(b)'s conditions. *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018). Here, Plaintiff moves for certification under Rules 23(b)(1) and 23(b)(2).[2] *See* [148].

Rule 23's requirements are "more than 'a mere pleading standard,' and the court must satisfy itself with a 'rigorous analysis' that the prerequisites of certification are met, even if that analysis has 'some overlap with the merits of the plaintiff's underlying claim.'" *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1005 (7th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). A plaintiff bears "the burden of showing that a proposed class satisfies the Rule 23 requirements" but "need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). A "decision whether to certify a class is one that depends on a careful assessment of the facts, of potential differences among class members, of management challenges, and of the overall importance of the common issues of law or fact to the ultimate outcome." *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018).

---

[2] In his Motion, "Plaintiff requests the opportunity to move for class certification under Rule 23(b)(3) and Rule 23(c)(4) should the Court deny Rule 23(b)(1) or Rule 23(b)(2) certification." [148] at 8 n.5. Defendants object to this request. *See* [192] at 14 n.7. Because the Court grants Plaintiff's motion under Rule 23 (b)(1), the Court need not reach this issue.

### III.  Discussion & Analysis

#### A.  Certification Under Rule 23(a)

For a class action to proceed, a plaintiff must "first" show that the proposed class satisfies the "four requirements under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Urlaub v. CITGO Petroleum Corp.*, Case No. 21 C 4133, 2024 WL 2209538, \*3 (N.D. Ill May 16, 2024).

#### 1.  Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Though "there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). *See also Anderson v. Weinert Enters. Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) ("While 'impracticable' does not mean 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the members of the class.'") (quoting 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed.)).

Plaintiff's proposed class consists of himself and 145 former Plan participants, easily satisfying the numerosity requirement of Rule 23(a)(1). Defendants do not raise any arguments with respect to numerosity and therefore forfeit any objection regarding Plaintiff's satisfaction of Rule 23(a)(1). *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where

6

those arguments raise constitutional issues).") (internal quotation omitted). The Court finds that the proposed class meets the numerosity requirement.

### 2. Commonality

Under Rule 23(a)(2), a Plaintiff must demonstrate "questions of law or fact common to the class." A common question is one "that is 'capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 598 (7th Cir. 2021) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In instances "where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 756 (7th Cir. 2014) (citations omitted). *See also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2) . . . Common nuclei of fact are typically manifest where . . the defendants have engaged in standardized conduct towards members of the proposed class . . . .") (quotations omitted). "Rule 23(a)(2) does not demand that every member of the class have an identical claim." *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). "It is enough that there be one or more common questions of law or fact; supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Id.*

Here, Plaintiff alleges "that the defendants engaged in a single course of conduct" and that "this conduct affected all class members in the same way." *Urlaub,* 2024 WL 2209538 at\*3. As Plaintiff points out, "Defendants owed the same fiduciary duties to all 146 members of the proposed Class." [148] at 11. Whether Defendants breached those fiduciary duties by purchasing the shares of those 146 participants at the 2020 Valuation, $515.18 per share, in September 2021 will have a common answer with respect to all members of the proposed Class. *See Suchanek,* 764 F,3d at 756–58 (finding that the "district court abused its discretion in failing to recognize that" a proposed class "satisfied the commonality requirement of Rule 23(a)(2)" where the "same legal standards govern[ed] every class member's claim"). Thus, the "common nucleus of operative facts" presented here satisfies Rule 23(a)(2).

Defendants again do not raise any arguments with respect to commonality and therefore forfeit any objection regarding Plaintiff's satisfaction of Rule 23(a)(2). *See Crespo,* 824 F.3d at 674. Accordingly, the Court finds Plaintiff meets his burden with respect to commonality. *See also Neil v. Zell*, 275 F.R.D. 256, 261 (N.D. Ill. 2011) (finding Rule 23(a)(2) satisfied in an ERISA case where the "allegations against Defendants arise from the exact same common nucleus of operative facts, without factual variations between class members, and the legal claims are identical for all class members . . . and Plaintiffs' allegations all unquestionably stem from the same occurrence . . . .").[3]

---

[3] The Court addresses the effect of the class actions waivers signed by 33 members of the proposed Class below.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The "typicality requirement is 'closely related' to the issue of commonality," (*Smith v. Aon Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992))) and "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir.2006) (quotation and citation omitted). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Smith,* 238 F.R.D. at 615 (quotation omitted). In an ERISA case, "typicality is measured by reference to defendants' actions toward the Plan as a whole, not with respect to individual defenses that might be raised with respect to how participants later may share in a recovery by the Plan." *George v. Kraft Foods Global Inc.,* 251 F.R.D. 338, 349 (N.D. Ill. 2008).

Plaintiff and the other potential Class members all have the same legal claims against the same Defendants arising from the same alleged conduct and course of events. The Seventh Circuit requires that, in class action under ERISA, "there must be a congruence between the investments held by the named plaintiff and those held by the members of the class he or she wishes to represent." *Spano*, 633 F.3d at 586. Plaintiff, along with the 145 members of the proposed Class, participated in the Plan and received a distribution in 2021 at the 2020 Valuation. *See* [148] at 14 (citing Ex.

9

1 2020 Termiantion-2021 Distribution List at 2–5). Thus, Plaintiff's claim maintains the "same essential characteristics as the claims of the class at large," satisfying Rule 23(a)(3). *Oshana*, 472 F.3d at 514.[4]

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." The "factors in this analysis are whether the named plaintiffs have (1) claims that do not conflict with those of other class members; (2) sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) competent, qualified, and experienced counsel who are able to conduct the litigation vigorously." *Wachala v. Astellas US LLC*, No. 20 C 3882, 2022 WL 408108, *5 (N.D. Ill. Feb. 10, 2022) (citing *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2020 WL 635972, *4 (N.D. Ill. Feb. 11, 2020)). The Seventh Circuit has "made clear . . . that 'the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses" does not prevent class certification.'" *Howard,* 989 F.3d at 610 (quoting *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013)).

The claims of Plaintiff's proposed Class here all arise from the same alleged conduct. All 146 proposed Class members, including Plaintiff, were Plan participants at all relevant times, elected distributions in September 2021 at the 2020 Valuation price of $515.18 per share, and seek relief from the same alleged breaches of fiduciary

---

[4] As with numerosity and commonality, Defendants raise no specific arguments regarding typicality, thus forfeiting any objection to Plaintiff's satisfaction of the Rule. *See Crespo,* 824 F.3d at 674.

duty. Further, Plaintiff's declaration affirms his willingness and ability to serve as Class representative, along with his understanding of the responsibilities the role entails. *See* [148-18]. The Court concludes that Plaintiff and the proposed Class members share both "the same interest" and the "same injury" for purposes of certification, and that Plaintiff has demonstrated commitment to participating in the suit on behalf of the other Class members. *Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020) (citation omitted). The Court further concludes, and Defendants do not dispute, that counsel for the proposed Class has demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g); [148] at 20–22; [148-1]. Rule 23(a)(4) remains satisfied.

Defendants argue that Plaintiff fails "to demonstrate that he will fairly and adequately protect the interests of the class" because: (1) Plaintiff allegedly gave "false testimony in connection with the putative class action" in his deposition; and (2) Plaintiff remains motivated by animus against Defendants in this case, which they allege may harm the potential class members. [192] at 20, 23.

Defendants claim Plaintiff's deposition testimony is inconsistent with those allegations in his Amended Complaint claiming that he was harmed by an alleged pressure campaign by Defendants to sell his shares. *See* [192] at 23. Defendants argue that plaintiffs who demonstrate a willingness to make false statements during litigation should not be permitted to serve as class representative, and thus Plaintiff cannot meet the requirements of Rule 23(a)(4). *See id.* Defendants cite two cases for this proposition—*Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990), and *In re Northfield Lab., Inc. Sec. Litig.*, 267 F.R.D. 536, 543 (N.D. Ill. 2010).

11

Both cases involved plaintiffs who made false statements in their respective depositions. In those instances, alternative explanations or interpretations of the testimony were "untenable," *Kaplan*, 132 F.R.D. at 510, and it was "obvious from the transcript that" the plaintiff "testified falsely." *In re Northfield Lab,* 267 F.R.D. at 543. Because "credibility problems interfere with" a "plaintiff's satisfaction of the typicality requirement" and the "adequacy of representation requirements," *Kaplan,* 132 F.R.D. at 510, the courts in both cases removed certain plaintiffs as class representatives. *See id.*; *In re Northfield Lab.*, 267 F.R.D. at 544.

This case is different, however, and the Court does not share Defendants' view of Plaintiff's deposition testimony. The Amended Complaint alleges that "the Company repeatedly pressured Plaintiff and Class members to make elections, against the Class's best interests and to the benefit of the Company and its leadership," citing to specific documents distributed to members of the proposed class in 2021, where Company managers encouraged participants to make an election. [87] ¶ 92. Plaintiff alleges that because "of the Company's pressure campaign, Plaintiff and all 146 members of the Class elected distributions." *Id.*

At Plaintiff's deposition, Defendants' counsel asked Plaintiff about several messages, where Plaintiff wrote that he was "leaning toward taking the entire distribution as cash now," [148-4] 62:2–3, because he felt the alternative to taking a cash election, i.e., letting the funds convert to cash and rollover into a mutual fund he could not access until the following year, "would not be a good decision." *Id.* 74:4–5. When asked by defense counsel whether communications from the Company's

12

managers caused him to make an election decision, Plaintiff testified that he "would not say" the Company's urging was the "only" reason he made a distribution election, but he "definitely noted" the managers' language. *Id.* 69:18–23. Plaintiff added that he believed if he "had been given all the information that was available," he "probably would have made a different decision," regarding the election. *Id.* 72:20–73:1.

The testimony and the allegations are not irreconcilable. *See* [87] ¶ 90 (". . . if Plaintiff and the Class were informed that value of Company stock was substantially higher than the 2020 Valuation, and/or of the impending Stock Sale, they could (and likely would) have chosen to defer their distributions and, therefore, would have received many times the $515.18 per share they received in the September 2021 distribution."). To the extent Defendants believe Plaintiff made any admissions in his deposition that affect the merits of his claim, those issues fall outside of today's review of certification. *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("Under the current rule, certification is largely independent of the merits . . . and a certified class can go down in flames on the merits. The possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification." (citing *Pella Corp. v. Saltzman,* 606 F.3d 391 (7th Cir.2010); *Arreola v. Godinez*, 546 F.3d 788 (7th Cir.2008)). *See also id.* at 685, 687 ("A "court may take a peek at the merits before certifying a class," but it must be "limited to those aspects of the merits that affect the decisions essential under Rule 23 . . . The chance, even the certainty, that a class will lose on the merits does not prevent its certification."). The Court declines to deny certification on this basis.

Defendants also argue that Plaintiff remains motivated by personal animus towards Defendants. To be sure, "a proposed representative may be inadequate when motivated by personal animus," and a "'trial court may properly consider the plaintiff's vindictiveness toward the defendant in determining whether the plaintiff is an adequate representative.'" *Neil*, 275 F.R.D. at 262 (quoting *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir.1992)). But the record does not support the claimed disqualifying animus.

Defendants point to comments Plaintiff made in text messages where he claimed that the Company's "executives were 'reliving their Arthur Andersen days'" and "stated that he wanted to 'prove deliberate fraud' in this case rather than settle.'" [192] at 24 (quoting Ex. L, October 9, 2021 Text Messages; Ex. M, October 14, 2021 Text Messages; Ex. N, November 4,2021 Text Messages). Defendants also point to certain portions of Plaintiff's deposition where he stated that he believed there was a "general commonality of dishonesty between the Arthur Andresen fraud cases and the present case." *Id.* (quoting Daly Tr. 93:22–94:6).

Simply put, such comments do not make Plaintiff an inadequate representative for the proposed Class. Cases invalidating a plaintiff's ability to represent a class based upon animus require far more severe expressions of animosity than what Plaintiff's comments exhibit. *See Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir.1992) (holding that a plaintiff was an inadequate representative where he had "an unmistakable personal and professional dispute with" the defendant and "his brief" was "peppered with vituperative epithets, pugilistic metaphors, and

14

descriptions of" the defendant "as 'satanic' and 'evil'" and plaintiff "stated that he is committed to 'ruin ten years of' the defendant's life); *Parrish v. National Football League Players Assoc.*, No. C 07–00943 WHA, 2008 WL 1925208, at *1–2 (N.D. Cal. April 29, 2008) (finding a plaintiff an inadequate representative where, in his deposition, he compared a defendant to "Caesar, Napoleon, Idi Amin, Hitler, Stalin, Milosevic, Saddam" and wanted "to finish this fight no matter how dirty it gets or what it takes or where it goes."). Plaintiff's comments cannot compare to these expressions of disqualifying animus, and the Court finds Rule 23(a)(4) satisfied here.

### B. Certification Under Rule 23(b)(1)

The Court next analyzes whether the proposed class satisfies the requirements of Rule 23(b). "ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan . . . will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole . . . a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs." *Neil*, 275 F.R.D. at 267. Plaintiff argues that certification is appropriate here under both Rule 23(b)(1) and Rule 23(b)(2). Defendants object to certification on either ground.

### 1. Feasibility of Certification of Claims Like Plaintiff's

Before analyzing Plaintiff's motion for certification under Rule 23(b)(1), the Court first addresses Defendants' global arguments regarding the application of

15

ERISA sections § 502(a)(2) and § 409 to this motion.[5]  Defendants contend that class certification is conclusively inappropriate in this case because Plaintiff is "not seeking to represent the Plan as a whole" as required by § 502(a)(2) and is not a suitable representative of the plan under the same section because of "potential conflict with the interests of other participants in the Plan."  [192] at 8 (quotations omitted). According to Defendants, because Plaintiff makes no showing that "he is a suitable representative of the more than 1,350 other individuals who remained as Plan participants—let alone the Plan as a whole"—the Court must deny Plaintiff's motion. *Id.* at 12.

Established Supreme Court and Seventh Circuit precedent, however, forecloses these arguments.  The relevant ERISA provisions at issue are 29 U.S.C. § 1132(a)(2) and § 1109(a). Section 1132(a)(2) "provides that a civil action may be brought 'by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.'"  *Smith v. Bd. of Dirs. of Triad Mfg.*, 13 F.4th 613, 618 (7th Cir. 2021) (quoting 29 U.S.C. § 1132(a)(2)). Section "1109(a) imposes liability for any fiduciary who breaches his duties to the plan and holds him 'personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary,'" and "also authorizes 'other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.'" *Id.* (quoting 29 U.S.C. § 1109(a)).  Thus, considered together, "§ 1109(a)

---

[5] The Court notes that ERISA sections § 502(a)(2) and § 409 are codified at 29 U.S.C. § 1132(a)(2) and § 1109 (a), respectively.  The Court refers to each using the appropriate citation in context.

16

creates fiduciary liability, and § 1132(a)(2) allows for its enforcement" in ERISA actions. *Id.*

The Supreme Court analyzed both statutes in *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 522 U.S. 258 (2008). In that case, "a plan participant alleged that a fiduciary's misconduct—failing to make certain changes to his 401(k) account—had 'depleted his interest in the [defined contribution plan] by approximately $150,000, and amounted to a breach of fiduciary duty under ERISA.'" *Id.* (quoting *LaRue*, 522 U.S. at 250) (alteration in original). The Court distinguished prior precedent interpreting "§§ 502(a)(2) and 409" as designed to "protect 'the financial integrity of the plan'" and thus remedies under those section "'protect the entire plan, rather than . . . the rights of an individual beneficiary.'" *LaRue*, 522 U.S. at 254 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–44 (1985)). The Court held "that the 'entire plan' language" from those cases, "which appears nowhere in § 409 or § 502(a)(2)," reflects the previous domination of defined benefit plans in "the retirement plan scene." *Id.* at 255. But for "defined contribution plans, however," in contrast to defined benefits plans, "fiduciary misconduct need not threaten the solvency of the entire plan reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. Thus, the Court found that its prior "references to the 'entire plan,'" which "accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context," because regardless of "whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts," such breaches

17

still create "the kind of harms that concerned the draftsmen of § 409." *Id.* at 255–56.

Subsequent Seventh Circuit follow suit regarding recovery under § 502(a)(2) and § 409 in the defined contribution context. *See Rogers v. Baxter Intern. Inc.*, 521 F.3d 702, 705 (7th Cir. 2008) (holding "that participants in defined contribution plans may use § 502(a)(2), and thus § 409(a), to obtain relief if losses to *an* account are attributable to a pension plan fiduciary's breach of a duty owed to the plan.") (emphasis added); *Smith*, 13 F.4th at 619 (holding that, under *LaRue,* although § 1132(a) "does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.'") (quoting *LaRue*, 522 U.S. at 256).

Defendants cite two post-*LaRue* Seventh Circuit cases—*Spano* and *Abbott*—to support their theory that the proposed Class cannot be certified because Plaintiff does not seek to recover for a "plan-wide" harm. Defendants contend that, under *Spano*, the Seventh Circuit requires Plaintiffs bringing actions under § 502(a)(2) to seek recovery for harms that diminish plan assets as a whole. *See* [192] at 9. Thus, according to Defendants, because the alleged injury here only affected some Plan participants and thus did not have a "plan-wide effect," *Spano* bars certification. Defendants also argue that *Abbott* imposes a "rule" prohibiting class certification "where some participants would either have their 'Plan assets reduced as a result of the lawsuit' or 'reap a windfall.'" *Id*. at 10 (quoting *Abbott*, 725 F.3d at 814). The Court rejects Defendants' reading of these cases.

18

First, Defendants' argument regarding *Spano* misinterprets the Seventh Circuit's holding in that case; in fact, the rule Defendants urge would run afoul of the Supreme Court's holding in *LaRue*. In *Spano v. Boeing Co.,* the Seventh "confronted for the first time the question whether an action for breach of fiduciary duty under Section 502(a)(2) . . . may be maintained as a class action when a defined-contribution retirement savings plan," and concluded "that the answer was 'maybe.'" *Abbott*, 725 F.3d at 805 (citing *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)). *Spano* does not require that all Plan participants must be harmed by the allegedly unlawful conduct for a class action under § 502(a)(2) to proceed; instead the Seventh Circuit observed that "while *LaRue* leaves no doubt that plan beneficiaries are entitled to resort to section 502(a)(2) after a breach of fiduciary duty reduces the value of plan assets in their defined-contribution accounts," that did not definitively answer "under what circumstances employees resorting to section 502(a)(2) may properly proceed as a class under Federal Rule of Civil Procedure 23." *Spano*, 633 F.3d at 581.

The court went on to hold that "there is a greater potential for intra-class conflict in the defined contribution context," as opposed to the defined benefit context, because "a fund that turns out to be an imprudent investment over a particular time for one participant may be a fine investment for another." *Id.* at 591. Thus, "if both are included in the same class, a conflict will result and class treatment will become untenable." *Id.* at 591. Because the district court's broad certification impaired its ability to sufficiently analyze such intra-class conflicts, the Seventh Circuit reversed; but, in doing so, the court noted that "nothing we have said should be understood as

19

ruling out the possibility of class treatment for one or more better-defined and more targeted classes." *Id.* at 588, 591.

The Seventh Circuit expanded on this comment in *Abbott*. There, the plaintiff appealed the district court's denial of his motion for certification, arguing "that the proposed class, in accordance with . . . *Spano*," and other cases, was "precisely defined and carefully tailored to ensure that no plaintiff who may have actually benefited" from the conduct at issue would "be swept into a class that seeks relief in which he has no interest (or may actively oppose)." *Abbott*, 725 F.3d at 809. The Seventh Circuit agreed, and in reversing the district court's order, admonished plaintiffs and courts to "take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative."

The court noted that the "appropriateness of class treatment in a Section 502(a)(2) case (as in other class actions) depends on the claims for which certification is sought," adding that "in *Spano* . . . we were concerned that intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a) was all but inevitable" due to the breadth of the class definitions at issue. *Id.* at 813. But "the specifics of the . . . claim" in *Abbott* rendered it "unlikely that the sorts of conflicts that concerned us in *Spano* will arise," including that there was "no risk that any . . . investor who benefited" from the alleged unlawful conduct "would have her Plan assets reduced as a result" of the lawsuit, that the alleged conduct was "by nature not" prone to cause "wide swings in value that would enable some investors to reap a windfall" while others were harmed. *Id.* at 814. Because

the specific nature of the alleged harm and the definition of the proposed class eliminated the risk of intra-class conflict Rule 23(a) prohibits, the Seventh Circuit held that the district court abused its discretion in denying certification. *Id.*

Thus, a careful reading of both *Spano* and *Abbott* reveals that neither case requires that all participants of a Plan must suffer harm for a plaintiff to bring a class action under § 502(a) (again, a result which would be in tension with *LaRue*). Instead, these cases provide general guidance to district courts analyzing the appropriateness of class treatment in § 502(a)(2) claims. The Seventh Circuit "has never held . . . that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." *Id.* at 813.

Thus, Defendants' contention that Plaintiff's claim must represent *all* Plan participants remains inapposite and incorrect as a matter of law. That argument finds no basis in *LaRue,* and it misinterprets the holdings of both *Spano* and *Abbott*. *See also In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 595 n.9 (3d Cir. 2009) (*LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized."); *Parker v. Tenneco Inc.*, 114 F.4th 786, 796 (6th Cir. 2024) ("*LaRue* allows an individual plaintiff to bring a § 502(a)(2) representative suit for losses to her individual plan account, even though the injury is to the plan.").

Furthermore, Defendants' reading ignores prior cases in this District certifying qualifying ERISA claims under Rule 23 where only some of the Plan participants are

21

included in the class. *See, e.g., Rogers v. Baxter Intern. Inc.*, No. 04 C 6476, 2006 WL 794734, \*2 (N.D. Ill. Mar. 22, 2006) (certifying a class action suit where the proposed class included a subset of the Plan at issue); *Urlaub*, 2024 WL 2209538 at\*3 (same). *See also Neil*, 275 F.R.D. at 256, 266 (The question "is not whether some might have benefitted from parts of the occurrence now being challenged, but whether, going forward, some members of the Plaintiff class would be harmed by the relief being sought . . . . There are no members of the proposed class who would, for any reason, prefer that Defendants not pay damages."); *Wachala* 2022 WL 408108 at \*7 ("As the Seventh Circuit later explained in *Abbott*, . . . the class definitions in *Spano* were 'extraordinarily broad'—so broad that it appeared that some class members would be harmed by the relief sought—and vague as to what investment options plaintiffs challenged. The same cannot be said of the . . . Class definition; like the definition that passed muster in *Abbott*, it is "considerably narrower" than the definitions in *Spano* and limited to Plan participants who suffered a loss . . . And, as in *Abbott*, there seems to be no risk that any participant who had gains from the alleged breaches would have his Plan assets reduced as a result of this lawsuit.").

Here, Plaintiff (along with the proposed Class members) alleges a reduction in value of his defined contribution accounts resulting from Defendants' alleged breach of their fiduciary duties. Plaintiff has "taken care to limit the class to those Plan participants who invested" in the Plan and received a distribution in September 2021. *Abbott,* 725 F.3d at 814. As the Court explained in its analysis of Rule 23(a)(2), Plaintiff, along with the 145 other members of the proposed Class, participated in the

22

same Plan and received a distribution at the same time for the same compensation ($515.18 per share per the 2020 Valuation). If Defendants breached their fiduciary duties by purchasing the shares of the proposed Class at the 2020 Valuation, all Class members will have been harmed by that breach. In other words, this case presents no risk that any "intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a)" and the proposed Class definition "excludes from the class any persons who did not experience injury,"—the primary concerns animating the decisions in both *Spano* and *Abbott*. *Id.* Thus, the Court finds that class treatment is appropriate for the claims for which certification is sought in this case.

The Court next addresses Defendants' arguments claiming that *Abbott* presents a separate bar to certification here. Defendants contend that the Court must deny Plaintiff's motion under *Abbott* because some Plan participants will have their "Plan assets reduced "or "reap a windfall" because of this lawsuit. [192] at 10 (quoting *Abbott,* 725 F.3d at 814). But Defendants' argument that *Abbott* created a wholesale bar against certification if there is "any risk" that a plan participant who benefited Defendants' conduct "would have her Plan assets reduced" misunderstands *Abbott*'s key holding. *See* [192] at 10 (quoting *Abbott,* 725 F.3d at 814). *Abbott* primarily pertains to concerns regarding intra-class conflict.

Further, "Plaintiff seeks relief from Defendants," and thus would not affect any funds held by Plan participants not in the proposed Class. [194] at 6. The notion that, at some later point in the litigation, the Court could "order recission of the

23

distribution of Plan assets, or that claims be paid from [the] $50 million that currently remains in the Plan" remains completely speculative at this stage. Although "all class definitions allude to the merits, in that they assume either implicitly or explicitly that the defendant's conduct has adversely affected the defined group of people . . . the class definition is a tool of case management" and it "settles the question who the adversaries are, and so it enables the defendant to gauge the extent of its exposure to liability and it alerts excluded parties to consider whether they need to undertake separate actions in order to protect their rights . . . What it does not tell us is who will win the case" nor does it resolve any issues that go to the merits. *Abbott*, 725 F.3d at 810 (citations omitted). Thus, Defendants' arguments concerning the source of any damages payments presents no wholesale bar to certification at this stage. *See Abbott*, 725 F.3d at 813–14 (holding that *Spano* did not prevent certification of plaintiffs' class in that case and if the district court's comments regarding the unlikelihood of substantial intra-class conflicts "turn out to be wrong, the district court can make further adjustments to the class definition later").

Having determined that certification remains feasible for claims like Plaintiff's, the Court considers whether the proposed class satisfies the requirements of Rule 23(b)(1) below.[6]

---

[6] The Court notes that Defendants raise several arguments concerning "procedural safeguards" and "due process rights," all of which pertain to Defendants' claim that Plaintiff maintains conflicts with other Plan participants not in the proposed Class. *See* [192] at 11–13. Because the Court finds, for the reasons explained extensively above, class treatment is appropriate for this case and that any potential for intra-class conflict remains entirely speculative at this stage, the Court does not address these arguments separately.

### 2. Rule 23(b)'s Requirements

Class actions under ERISA "are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan." *Neil*, 275 F.R.D. at 267 (collecting cases). A class action may be maintained under Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."

As with many ERISA cases, here, "because plaintiffs bring their claims on behalf of the Plan, adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007). Additionally, "adjudication of the claims involves the recovery and distribution of Plan assets on behalf of the Plan rather than determination of personal causes of action brought by individuals. As a result, separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context," thus rendering certification proper under Rule 23(b)(1)(A). *Id.*

Defendants claim that because Plaintiff does not seek "to represent the Plan as a whole," this case is distinguishable from the other numerous cases which certify

25

similar ERISA actions. But as the Court already explained, Supreme Court and Seventh Circuit case law permit plaintiffs to bring actions on behalf of subsets of participants in a Plan for a Plan injury. Therefore, because Plaintiff and the proposed Class bring the same claim against Defendants alleging they breached their fiduciary duties in the same course of conduct and "prosecution of separate actions by various Plaintiffs would create a risk of 'inconsistent or varying adjudications with respect to individual members of the class,'" the Court finds certification under Rule 23(b)(1)(A) appropriate. *Smith,* 238 F.R.D. at 615 (quoting Fed. R. Civ. Pro. 23(b)(1)(A)). *See also Urlaub,* 2024 WL 2209538 at*3 ("The defendants are entitled to consistent rulings regarding operation of the plan . . . and have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.") (quotations omitted).

A class action may also be certified under Rule 23(b)(1)(B) if "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Plaintiffs argue that certification under 23(b)(1)(B) is also appropriate here "because the claims at issue here—breach of fiduciary duty and engaging in a prohibited transaction—must be brought in a representative capacity on behalf of the entire plan." *Neil,* 275 F.R.D. at 269. As Plaintiff notes in his Reply brief, "claims for breach of fiduciary duty, like the ones Plaintiff brings here, 'can only be brought on

behalf of plan participants.'" [194] at 10 (quoting *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 WL 794734, \*11 (N.D. Ill. Mar. 22, 2006)). The Court agrees that Rule 23(b)(1)(B) certification is also proper here because "for reasons previously explained, the Court concludes that Plaintiffs' claims are typical of those of other class members and indeed are paradigmatic ERISA claims suitable for certification pursuant to 23(b)(1)(B) because a victory on these claims by one plan member would necessarily be a victory for all plan members." *Neil*, 275 F.R.D. at 268.

In other words, should Plaintiff succeed in showing that Defendants breached their fiduciary duties in cashing out Plan participant shares at the 2020 Valuation in September 2021, that determination "would be dispositive of the interests of the other members not parties to the individual adjudications," and thus Rule 23(b)(1)(B) remains satisfied. *See also Neil,* 275 F.R.D. at 268 ("Defendant does not cite any case in which a court has declined to certify an ERISA class pursuant to 23(b)(1).").[7]

## C.    Effect of Class Action Waivers

The parties both admit that 33 of the 146 participants in the proposed class executed agreements with the Company where they waived "any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party." [192] Ex. O ¶ 4(d). Plaintiff contends that this waiver is unenforceable, citing *Smith v. Board of Directors of Triad Manufacturing.*

---

[7] Because the Court concludes that certification is most appropriate under Rule 23(b)(1), the Court need not reach the parties alternative arguments regarding whether the requirements of Rule 23(b)(2) are also satisfied in this case.

27

For the reasons the Court explains below, *Smith* is distinguishable from the facts presented and thus does not invalidate the class action waivers at issue.

In *Smith*, the Seventh Circuit addressed "an arbitration provision with a class action waiver" included within the retirement plan at issue. 13 F.4th 613, 616 (7th Cir. 2021). The provision directed that "with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under § 409," "all Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis, and each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." *Id.* (quotations omitted). The Seventh Circuit held that the provision was unenforceable under the "effective vindication" exception to the general enforceability of arbitration agreements. *Id.* at 621.

The "effective vindication" exception "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies,'" and applies to "a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236-37 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis in original). Thus, in *Smith,* although the Seventh Circuit acknowledged that "ERISA claims are generally arbitrable," the "plan's arbitration provision, which also contains a class action waiver, precludes a

28

participant from seeking or receiving relief "that . . . would go beyond just" the named plaintiff "and extend to the entire plan." *Id.* at 621. Because "removal of a fiduciary—a remedy expressly contemplated by § 1109(a)," fell "exactly within the ambit of relief forbidden by the plan" and could not "be reconciled" with the "plain text of § 1109(a)," the arbitration provision acted "as a 'prospective waiver of a party's right to pursue statutory remedies,'" and therefore could not be enforced. *Id.* at 622 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).

Plaintiff argues that *Smith* controls the outcome of this issue, because he seeks the same relief as the plaintiff in that case. [194] at 14 (quoting [88] ¶ vi) (Removal of "the fiduciaries who have breached their fiduciary duties" and enjoining "them from future unlawful conduct' and other Plan-wide relief."). Thus, according to Plaintiff, the waivers here remain unenforceable for the same reason the Seventh Circuit invalidated the waivers in *Smith*: they prohibit proposed Class members from obtaining statutory, Plan-wide relief.

As in *Smith*, Plaintiff also "invokes § 1132(a)(2)'s cause of action to seek relief for (alleged) fiduciary breaches under § 1109(a)," including equitable relief. 13 F.4th at 621. Further, just as in *Smith*, the Prayer for Relief in the Amended Complaint requests that the Court "remove the fiduciaries" who allegedly breached their fiduciary duties. [87] ¶ vi. Plaintiff also asks the Cour to "order restitution and disgorgement in favor of the Plan and the Class," "impose a constructive trust for the benefit of the Plan and the Class," and "reform the Plan as appropriate to make the

29

Class whole." *Id.* ¶¶ vi–x. But the Seventh Circuit in *Smith* took care to note that "the problem with the plan's arbitration provision is not that the plan funnels its participants away from class actions . . ." but instead "is its prohibition on certain plan-wide remedies, not plan-wide representation." *Smith*, 13 F.4th at 622.

That is not the case here. The class action waiver at issue in this matter does not mention remedies, is not part of any arbitration agreement, and, in fact, does not arise from the Plan at all but instead is contained within an employment termination agreement signed by the 33 proposed Class members. *See* Ex. O, [192-16]. Thus, the issues presented in *Smith* do not arise here, and as such, that case is not controlling, because the waiver itself does not contain any language restricting statutory remedies. *See id.* (". . . Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party.").

That said, although "the class action waiver in this case is not encased in an arbitration provision," the *Smith* decision and other circuit court decisions on these issues remain "persuasive and relevant to the Court's analysis in this case." *Arnold v. Paredes*, 714 F.Supp.3d 962, 976 (M.D. Tenn. 2024). The Supreme Court "does not hold that a class action waiver alone violates the effective vindication doctrine." *Id.* at 977. In fact, the Court has "declined to apply that doctrine to invalidate a class action waiver." *Id.* (citing *Italian Colors*, 570 U.S. at 236-37) ("The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates

30

those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938 . . . Or, to put it differently, the individual suit that was considered adequate to assure effective vindication of a federal right before adoption of class-action procedures did not suddenly become ineffective vindication upon their adoption.") (internal quotation marks and citations omitted).

Other circuits that have addressed the issue of class-action waivers in ERISA litigation have done so in the context of arbitration agreement enforcement. For example, in *Harrison v. Envision Management Holding, Inc. Board of Directors*, the Tenth Circuit invalidated an arbitration and class action waiver provision of a retirement plan that prevented individuals from seeking plan-wide relief. 59 F.4th 1090 (10th Cir. 2023) *cert. denied*, 144 S.Ct. 280, 217 L.Ed.2d 128. Again, the arbitration provision at issue limited the types of remedies a plaintiff may seek to individual remedies, which the Tenth Circuit observed left unclear "what remedies" the plaintiff "would be left with if . . . enforced as written." *Id.* at 1107. Relying on *Smith*, the court concluded that while the provisions "prohibition on class actions" was not "problematic," the "prohibition of any form of relief that would benefit anyone other than Harrison that directly conflicts with the statutory remedies available under 29 U.S.C. §§ 1109 and 1132(a)(2), (a)(3)," rendering the arbitration agreement unenforceable.[8] *Id.* at 1108–09 (citations omitted).

---

[8] The entire arbitration agreement became unenforceable due to a non-severability clause contained in the Plan Document. *See Harrison*, 59 F.4th at 1112.

The Third Circuit also confronted this issue in *Henry v. Wilmington Trust, N.A.*, invalidating a class action waiver contained within an arbitration agreement that prohibited "ESOP participants from bringing a lawsuit that seek[s] or receive[s] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any third party." 72 F.4th 499, 507 (3rd Cir. 2023). Again relying on *Smith*, the court found that because "the class action waiver purports to prohibit statutorily authorized remedies," namely, seeking plan-wide relief, "the class action waiver and the statute cannot be reconciled," thus rendering the provision unenforceable. The court also noted that even though the plaintiff's complaint did not seek "removal of a fiduciary," the other forms of relief sought "such as restitution" were "both expressly authorized by statute and necessarily plan-wide," and therefore because the waiver required "ESOP participants to waiver their statutory right to pursue" those plan-wide "statutorily authorized remedies," the effective vindication doctrine applied. *Id.* at 508.

In sum, Seventh Circuit precedent (and case law in other circuits) hold that class action waivers that conflict with a plaintiff's ability to pursue a statutory remedy under ERISA remain barred by the effective vindication doctrine. *See Smith*, 13 F.4th at 620; *Harrison*, 59 F.4th at 1111; *Henry*, 72 F.4th at 508; *Italian Colors*, 570 U.S. at 236–37. *See also Arnold*, 714 F. Supp. 3d at 977–78 (holding the same). Because the class action waivers at issue here pose no restriction on what remedies an individual may seek, *see* Ex. O [192-16], the effective vindication exception to the general enforcement of such waivers does not apply. See *Arnold*, 714 F.Supp.3d at

32

976 (noting that the Supreme Court has "declined to apply that doctrine to invalidate a class action waiver" without more) (citing *Italian Colors*, 570 U.S. at 236–37).[9]

Because the Court finds that the class action waivers signed by 33 members of the proposed Class remain valid, those individuals may not be included in the Class the Court now certifies under Rule 23(b)(1).

## IV.    Conclusion

For the reasons explained above, the Court grants Plaintiff's motion for class certification [188] and certifies the following class, excluding the 33 proposed Class members who signed the class action waivers discussed above: "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock who did not sign a class action waiver as part of any employment termination agreement with Company."

Date: March 27, 2026                                    Entered:

John Robert Blakey
United States District Judge

---

[9] Further, there remains no practical limitation on the remedies the 33 proposed Class members may seek. As the Court explained exhaustively above, under *LaRue*, these individuals may seek remedies for their individualized harms resulting from the alleged injury to the Plan. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009) (*LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized."); *Parker v. Tenneco Inc.*, 114 F.4th 786, 796 (6th Cir. 2024) ("LaRue allows an individual plaintiff to bring a § 502(a)(2) representative suit for losses to her individual plan account, even though the injury is to the plan."). Accordingly, nothing prevents these potential plaintiffs from vindicating any potential statutory rights they may be entitled to under § 502(a) or § 409.